1    Justin Bernick (Admitted *Pro Hac Vice*)
2    **HOGAN LOVELLS US LLP**
     555 Thirteenth Street, N.W.
3    Washington, DC 20004-1109
     Telephone: (202) 637-5600
4    justin.bernick@hoganlovells.com

5
     Joshua Grabel (AZ State Bar No. 018373)
6    **DICKINSON WRIGHT PLLC**
     1850 North Central Avenue
7    Suite 1400
     Phoenix, Arizona 85004
8    Telephone: (602) 285-5046
     jgrabel@dickinsonwright.com
9

10   ***Attorneys for Defendant American***
11   ***Arbitration Association, Inc.,***

12                    **UNITED STATES DISTRICT COURT**
13                       **DISTRICT OF ARIZONA**

14   Stephanie Stephens; Joelle Nole;            Case No.: 2:25-CV-01650-PHX-JJT
     William Hilton; and Eugenie Balogun,
15   *Individually and on behalf of all*
     *others similarly situated,*
16                                                **MOTION TO DISMISS**

17                    Plaintiffs,                 **(Oral Argument Requested)**

18              v.

19
     American Arbitration Association, Inc.,
20
                     Defendant.
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ............................................................................................ **- 1 -**

**BACKGROUND** ............................................................................................... **- 2 -**

**ARGUMENT** .................................................................................................... **- 3 -**

   I.    Plaintiffs Fail to State an Antitrust Claim for Predatory Pricing. ...................... - 3 -

   II.   Plaintiffs Fail to State a Claim for Unfair or Deceptive Acts or Practices. ....... - 8 -

     A.   West Virginia Consumer Credit and Protection Act. ................................. - 9 -

     B.   Washington Consumer Protection Act. ..................................................... - 9 -

     C.   North Carolina Unfair and Deceptive Trade Practices Act. ..................... - 11 -

   III.   Arbitral Immunity Bars Plaintiffs' Claims. ..................................................... - 12 -

   IV.   Plaintiffs Lack Article III Standing. ................................................................ - 14 -

   V.   The Court Should Reject Plaintiffs Stephanie Stephens' and William Hilton's Attempts to Relitigate the Arbitrability of Their Claims. ...................................................... - 16 -

**CONCLUSION** ............................................................................................... **- 17 -**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-World Trade, Inc. v. Apmex, Inc.*,
No. 20-1032, 2020 WL 5947613 (C.D. Cal. July 11, 2020)........................................... 6, 7

*Alexander v. Am. Arb. Ass'n*,
No. C 01–1461, 2001 WL 868823 (N.D. Cal. July 27, 2001) .................................. 12, 13

*Asby v. Medtronic, Inc.*,
673 F. Supp. 3d 787 (E.D.N.C. 2023)............................................................................ 10

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990)................................................................................... 1, 4, 6, 8

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)................................................................................... 1, 4, 5, 7

*Cancer Ctr. Assocs. for Rsch. and Excellence, Inc. v. Philadelphia Ins. Cos*,
No. 15–CV–00084, 2015 WL 2235347 (E.D. Cal. May 12, 2015)...................................... 12, 13

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986)............................................................................................ 5

*CitiMortgage, Inc. v. Davis*,
20 F.4th 352 (7th Cir. 2021) .............................................................................. 16

*Cort v. Am. Arb. Ass'n*,
795 F. Supp. 970 (N.D. Cal. 1992) ........................................................................ 12

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ............................................................................. 9

*DeSoto Cab Co. v. Uber Technologies, Inc.*,
No. 16-cv-06385, 2018 WL 10247483 (N.D. Cal. Sept. 24, 2018).................................... 7

*EcoShield Pest Sols. Portland, LLC v. Grit Mktg.*,
No. 24-CV-00887, 2025 WL 844259 (D. Or. Mar. 18, 2025)........................................ 6

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*,
No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) ........................................ 10

*Greenberg v. Amazon.com, Inc.*,
553 P.3d 626 (Wash. 2024)................................................................................. 9

*Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*,
328 S.E.2d 144 (W. Va. 1984) ............................................................................. 5

MOTION TO DISMISS

*Heckman v. Live Nation Ent., Inc.*,
    120 F.4th 670 (9th Cir. 2024) ................................................................. 5

*Hilton v. The Bank of Mo.*,
    3:24-cv-000300 (S.D. W.Va. Sept. 10, 2024) ................................. 2, 16

*Hilton v. First Elec. Bank*,
    3:24-cv-00299 (S.D. W.Va. Sept. 10, 2024) .................................. 2, 16

*Hurst Int'l, LLC v. Sinclair Sys Int'l*,
    No. 17-8070, 2018 WL 4959808 (C.D. Cal. Mar. 9, 2018) .................... 7

*Klem v. Wash. Mut. Bank*,
    295 P.3d 1179 (Wash. 2013) ................................................................. 9

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................... 14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................. 13, 14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................... 6

*MiniFrame Ltd. v. Microsoft Corp.*,
    551 Fed. Appx. 1 (2d Cir. 2013) ............................................................ 5

*Montes v. Sparc Grp., LLC*,
    136 F.4th 1168 (9th Cir. 2025) .............................................................. 9

*Mullis v. U.S. Bankr. Ct., Dist. of Nev.*,
    828 F.2d 1385 (9th Cir. 1987) ............................................................. 16

*Murphy Tugboat Co. v. Crowley*,
    658 F.2d 1256 (9th Cir. 1981) ............................................................... 7

*N.W.S. Michigan, Inc. v. Gen. Wine & Liquor Co.*,
    58 F. App'x 127 (6th Cir. 2003) ............................................................ 8

*Pinnacle Minerals Corp. v. Whitehead*,
    357 F. Supp. 3d 1053 (D. Nev. 2019) .................................................. 12

*Sabry Lee, Inc. v. Genera Corp.*,
    No. 08-5758, 2009 WL 10674318 (C.D. Cal. Feb. 12, 2009) ................ 7

*Sacks v. Dietrich*,
    663 F.3d 1065 (9th Cir. 2011) ....................................................... 11, 12

*SciGrip, Inc. v. Osae*,
    838 S.E.2d 334, 337 (N.C. 2020) ........................................................ 10

- iii -

*Sheehan v. State Farm Gen. Ins. Co.*,
    394 F. Supp. 3d 997 (N.D. Cal. 2019) ...................................................................... 6

*Shields v. Fred Meyer Stores*,
    741 F. Supp. 3d 915 (W.D. Wash. 2024) ................................................................. 9

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976) .................................................................................................. 14

*S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*,
    284 F.3d 518 (4th Cir. 2002) .................................................................................. 11

*Stephens v. Experian Info. Sols., Inc.*,
    2:24-cv-01576 (D. Ariz. Feb. 6, 2025) .............................................................. 2, 15

*Transamerica Comput. Co. v. IBM*,
    698 F.2d 1377 (9th Cir.1983) ................................................................................... 7

*Verizon Commc'ns Inc. v. L. Off. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ............................................................................................. 3, 4

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
    129 F. Supp. 3d 1012 (D. Or. 2015) ......................................................................... 6

*Vogt v. Am. Arb. Ass'n*,
    19-CV-156, 2020 WL 1548066 (N.D.W.V. March 17, 2020) ........................... 12, 13

*Vogt v. Am. Arb. Ass'n*,
    No. CC-02-2019-C-94, 2019 WL 2618065 (W. Va. Cir. Ct. June 22, 2019) ............ 9

*Walker v. Fleetwood Homes of N.C., Inc.*,
    653 S.E.2d 393 (2007) ....................................................................................... 10, 11

*Wallace v. IBM*,
    467 F.3d 1104 (7th Cir. 2006) ................................................................................... 6

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................... 14

*Waysl, Inc. v. First Boston Corp.*,
    813 F.2d 1579 (9th Cir. 1987) ........................................................................ *passim*

*Wedgewood Inv. Corp. v. Int'l Harvester Co.*,
    613 P.2d 620 (Ariz. Ct. App. 1979) ......................................................................... 5

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
    549 U.S. 312 (2007) ............................................................................................. 5, 7

*White v. Chase Bank USA, N.A.*,
    No. 16-CV-00176, 2017 WL 1131898 (E.D.N.C. March 24, 2017) ....................... 11

MOTION TO DISMISS

**Statutes**

Ariz. Rev. Stat. § 12-3014(A) ............................................................................ 11

Ariz. Rev. Stat. § 12-3014(E) ...................................................................... 13, 16

N.C. Gen. Stat. § 75-1.1(a) ................................................................................ 10

N.C. Gen. Stat. Ann. § 1-569.14(a) ................................................................... 11

N.C. Gen. Stat. Ann. § 1-569.14(e) ............................................................. 13, 16

W. Va. Code § 46A-6-104 .................................................................................. 8

W. Va. Code § 55-10-16(a) ................................................................................ 11

W. Va. Code § 55-10-16(e) .......................................................................... 13, 16

Wash. Rev. Code § 7.04A.140(1) ....................................................................... 11

Wash. Rev. Code § 7.04A.140(5) .................................................................. 13, 16

Wash. Rev. Code § 19.86.020 ............................................................................. 9

Wash. Rev. Code § 19.86.040 ............................................................................. 5

**INTRODUCTION**

The Court should reject Plaintiffs' request to override arbitration clauses in contracts with third-parties who are not before the Court in their challenge to practices that have *lowered* costs in consumer arbitrations.

***First***, Plaintiffs allege that the American Arbitration Association, Inc. ("AAA") violates the antitrust laws by charging arbitrator compensation fees in consumer arbitrations that are "so low that no other forum can compete against them." First Am. Compl., ECF No. 11 ¶ 225. But this flips the antitrust laws on their head. "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990); *see also Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) ("[D]iscouraging a price cut and forcing firms to maintain supracompetitive prices . . . does not constitute sound antitrust policy"). Plaintiffs' antitrust claims (Counts I, II, III, IV, and VI) fail because they have not—and cannot—plead either of the two "prerequisites" for a predatory pricing claim: (1) that AAA set prices below its costs; and (2) that AAA could recoup its "investment" in below-cost prices once competitors are excluded. ECF No. 11 ¶ 104 (*quoting Brooke Grp.*, 509 U.S. at 223-24).

***Second***, Plaintiffs' attempt to repackage AAA's conduct as "unfair and deceptive" under state law also fails (Counts V, VII, VIII). The AAA's method of selecting and compensating arbitrators is transparent in publicly available rules, and the mere fact that Plaintiffs prefer other entities' rules does not mean that AAA's rules are illegal.

***Third***, Plaintiffs claim that AAA's low prices—and its supposedly restrictive rules for consumer arbitrations—have resulted in arbitration outcomes they do not like. But arbitral immunity "protect[s] the decision-making process from reprisals by dissatisfied litigants." *Waysl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987). All of Plaintiffs' claims also fail because AAA's conduct is afforded immunity as a matter of law.

***Fourth***, Plaintiffs lack standing because, among other reasons, their asserted "injury"—"no choice of arbitrator," ECF No. 11 ¶ 128—is the result of Plaintiffs' separate

agreements with various companies that designate AAA as the arbitral forum, and not caused by AAA, which is not a party to those agreements.

**Finally**, Plaintiffs Stephanie Stephens' and William Hilton's claims should be dismissed because courts already have acknowledged arbitrability of their claims.

Since Plaintiffs' have already amended their Complaint and further amendment would be futile, Plaintiffs' claims should be dismissed with prejudice.

<strong>BACKGROUND</strong>

The AAA is a not-for-profit provider of alternative dispute resolution services, including arbitration services for commercial, construction, employment, and consumer cases, among others. ECF No. 11 ¶¶ 12, 37-38. Since its founding in 1926, the AAA has been committed to transparency, fairness, and efficiency in conflict resolution, upholding 15 key principles for consumer arbitrations in its Consumer Due Process Protocol. *Id*. ¶ 40. The AAA publishes all of its arbitration rules and procedures for the general public, including for consumer arbitrations. *Id*. ¶ 109. Those rules outline filing, case management, and hearing fees, as well as arbitrator compensation, which is currently $300 per hour for consumer cases. *Id*. ¶¶ 139-155. Other than the $225 filing fee, the business, not the consumer, pays the administrative fees and arbitrator compensation. *Id*. Other entities that provide consumer arbitration services include Judicial Arbitration and Mediation Services ("JAMS") and National Arbitration and Mediation ("NAM"). *Id*. ¶ 70.

Plaintiffs are four consumers who agreed to contracts with various credit reporting, banking, and credit card companies that contain arbitration clauses—clauses that designate AAA as the arbitration service provider. *Id*. ¶¶ 94, 272, 280, 287, 291. This Court already has found that Plaintiff Stephanie Stephens' claims are "subject to arbitration pursuant to the 2016 Terms of Use" she agreed upon. *Stephens v. Experian Info. Sols., Inc*., 2:24-cv-01576, ECF No. 56 at 8 (D. Ariz. Feb. 6, 2025). Plaintiff William Hilton stipulated to the arbitrability of his claims. *Hilton v. The Bank of Mo.*, 3:24-cv-000300, ECF No. 10 (S.D. W.Va. Sept. 10, 2024); *Hilton v. First Elec. Bank*, 3:24-cv-00299, ECF No. 11 (S.D. W.Va. Sept. 10, 2024).

Plaintiffs complain that "AAA sets consumer arbitration rates so low that no other

forum can compete against them." *Id*. ¶ 225. In particular, Plaintiffs allege that AAA's "reduced rate of $300 [for arbitrators' hourly compensation] forces competitors . . . to lower their rate from the current market rate . . . to be competitive." *Id*. ¶ 151. In addition to complaining about AAA's low prices, Plaintiffs complain that AAA rules do not allow consumers a choice of arbitrators or sufficient discovery and that businesses supposedly prevail in AAA arbitration more frequently than consumers. *Id*. ¶¶ 111, 132, 187. Plaintiffs bring both antitrust and unfair and deceptive acts and practices claims under state and federal law claiming that they were "harmed by having no choice of forum and no choice of arbitrator." *Id*. ¶ 128. Plaintiffs are "only alleging damages related to Plaintiffs' lack of choice in the marketplace," *id*. ¶ 270, and "seek to forbid exclusivity" in arbitration clauses like those they agreed upon. *Id*. ¶ 96.

**ARGUMENT**

Plaintiffs' complaint fails to state a claim. *First*, Plaintiffs fail to allege the essential elements of a predatory pricing claim. *Second*, Plaintiffs fail to allege an unfair or deceptive act or practice under the asserted state laws. *Third*, Plaintiffs' claims are barred by the arbitral immunity statutes in all four states where Plaintiffs reside. *Fourth*, Plaintiffs fail to allege injury, causation, and redressability necessary for Article III standing. *Finally*, Plaintiffs Stephanie Stephens' and William Hilton's claims should be dismissed because courts already have acknowledged arbitrability of their claims.

## I.    Plaintiffs Fail to State an Antitrust Claim for Predatory Pricing.

Plaintiffs' antitrust claims should be dismissed because Plaintiffs have not—and cannot—plead the essential elements of a predatory pricing claim. Counts I, II, III, IV and VI allege that the AAA has unlawfully maintained a monopoly in violation of state and federal antitrust law. ECF No. 11 ¶¶ 375, 379, 387, 395, 416. Monopolization requires proof that the defendant (1) possesses monopoly power in a relevant market and (2) has acquired, enhanced, or maintained that power by exclusionary conduct "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."

*Verizon Commc'ns Inc. v. L. Off. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (quotations and citation omitted). As the Supreme Court has explained:

> The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system. The opportunity to charge monopoly prices—at least for a short period—is what attracts "business acumen" in the first place; it induces risk taking that produces innovation and economic growth. To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*.

*Id.* at 407 (emphasis in original). The AAA disputes Plaintiffs' position that it somehow possesses monopoly power in a purported consumer arbitration market (to the extent that such a market even exists), given the wide variety of formal and informal dispute resolution procedures available to consumers. But Plaintiffs' antitrust claims fail at the pleading stage because they have not pleaded anticompetitive *conduct*.

Plaintiffs' complaint purports to allege predatory pricing—that "AAA sets consumer arbitration rates so low that no other forum can compete against them." ECF No. 11 ¶ 225; *see also, e.g., id.* ¶¶ 18 (alleging "predatory pricing"); 26 (same); 105 (same); 372 (same). However, "[l]ow prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Atl. Richfield*, 495 U.S. at 340. As the Supreme Court has explained, "the exclusionary effect of prices above a relevant measure of cost either reflects the lower cost structure of the alleged predator, and so represents competition on the merits, or is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate price-cutting." *Brooke Grp.*, 509 U.S. at 223-24 (citation omitted) ("To hold that the antitrust laws protect competitors from the loss of profits due to such price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. The antitrust laws require no such perverse result." (quotations and citation omitted)). Thus, to the extent that Plaintiffs challenge "pricing practices, only predatory pricing has the requisite anticompetitive effect." *Atl. Richfield*, 495 U.S. at 339 (citation omitted).

Courts uniformly impose two "prerequisites to recovery" for predatory pricing: (1) the "rival's low prices are below an appropriate measure of the rival's costs"; and (2) the rival had a "dangerous probability of recouping its investment in below-cost prices" with the ability to raise prices "above a competitive level" after competitors are excluded.[1] *Brooke Grp.*, 509 U.S. at 224-26; *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 117 (1986) (Predatory pricing requires "pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run."). Plaintiffs' Complaint repeatedly concedes the two pleading requirements for predatory pricing but fails to allege facts satisfying those requirements. *See, e.g.*, ECF No. 11 ¶¶ 25 (predatory pricing requires "selling below cost"); 30-31 ("prices below the cost thereof"); 104 ("prerequisites to recovery" include below cost pricing and recoupment). As Plaintiffs acknowledge, this legal standard is the same whether the low cost prices are evaluated under the Sherman or Robinson-Patman Act. *Id.* ¶¶ 19, 105 (citing *Brooke Grp.,* 509 U.S. at 222 (the "two prerequisites to recovery remain the same")).[2] Plaintiffs do not identify *any* competitor that has been excluded as a result of the AAA's arbitrator rates for consumer

---

[1]    The legal standard is the same if the Court construes Plaintiffs' complaint as alleging predatory "bidding" for arbitrator services, except that such claims require the alleged predator to *raise* prices for inputs to the point that it results in "below-cost pricing of the predator's outputs." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 325 (2007). No such facts are alleged here.

[2]    The antitrust analysis is no different under Arizona, Washington, and West Virginia law. *See, e.g., Wedgewood Inv. Corp. v. Int'l Harvester Co.*, 613 P.2d 620, 623 (Ariz. Ct. App. 1979)] ("[T]he Arizona Legislature clearly intended to strive for uniformity between federal and state antitrust laws."); *MiniFrame Ltd. v. Microsoft Corp.*, 551 Fed. Appx. 1 (2d Cir. 2013) ("[S]tate antitrust law claims under Washington Revised Code § 19.86.040 . . . fail for the same reasons its Sherman Act claims fail."); *Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 328 S.E.2d 144, 156 (W. Va. 1984) (finding no conflict between West Virginia law and the Sherman Act since "both acts prohibit sales below cost for the purpose of injuring or destroying competition").

arbitrations.[3] Nor have Plaintiffs alleged either essential element of predatory pricing. Plaintiffs' antitrust claims (Counts I, II, III, IV and VI) should be dismissed.

*First*, Plaintiffs allege no facts showing that the AAA charged prices for consumer arbitration services that were below the cost the AAA incurred in providing those services. Courts routinely dismiss predatory pricing claims where Plaintiffs fail to allege below-cost pricing. *See, e.g.*, *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1033 (D. Or. 2015) (dismissing predatory pricing claim where the complaint "lacks factual support for the inference that Defendants priced their payment processing solutions below *their* own costs") (emphasis in original); *Sheehan v. State Farm Gen. Ins. Co.*, 394 F. Supp. 3d 997, 1010-11 (N.D. Cal. 2019) (same); *EcoShield Pest Sols. Portland, LLC v. Grit Mktg.*, No. 24-CV-00887, 2025 WL 844259, at *7 (D. Or. Mar. 18, 2025) (same); *A-World Trade, Inc. v. Apmex, Inc.*, No. 20-1032, 2020 WL 5947613, at *1 (C.D. Cal. July 11, 2020) (same). Plaintiffs allege that the AAA's $300 per hour rate for arbitrators is "so low that no other forum can compete," *id.* ¶ 225, and that the "reduced rate of $300 forces competitors . . . to lower their rate from the current market rate . . . to be competitive," *id.* ¶ 151. But nowhere does the complaint allege that the AAA incurs a greater *cost* for these arbitrator services than the $300 per hour *price* it is charging for them. In fact, the complaint suggests the opposite—that arbitrators are *not* making more than the $300 per hour that the AAA charges. *Id.* at 6 ($300 per hour rate requires arbitrators to "lower their rates to approximately half the market rate to be competitive"). The complaint also does not identify any competitor who has reduced its rate to $300 or gone out of business because it could not do so.

"[P]rices that are below market price or even below the costs of a firm's rivals is not activity forbidden by the antitrust laws"—yet that is all Plaintiffs allege. *Atl. Richfield*, 495 U.S. at 340 (quotations and citation omitted). Penalizing the AAA for offering low-cost consumer arbitration services would "chill the very conduct the antitrust laws were designed

---

[3]    Indeed, new arbitration providers have entered the market, such as New Era ADR, founded in 2020 (*see Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 676 (9th Cir. 2024)), and NAM (*see* ECF No. 11 ¶ 79 ("NAM appears to have entered the market in 2019…")).

to protect" because "cutting prices in order to increase business often is the very essence of competition." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986)). Indeed, Plaintiffs allege that the AAA's low prices have forced its competitors to lower their own prices. ECF No. 11 ¶ 151. Using the antitrust laws to protect the AAA's competitors from these low prices "would turn the Sherman Act on its head." *Wallace v. IBM*, 467 F.3d 1104, 1107 (7th Cir. 2006) ("[T]he goal of antitrust law is to use rivalry to keep prices low for consumers' benefit."); *see also Murphy Tugboat Co. v. Crowley,* 658 F.2d 1256, 1259 (9th Cir. 1981) ("The antitrust laws do not require the erection of a price umbrella for the benefit of inefficient competitors."). Plaintiffs' failure to allege below-cost pricing is grounds for dismissal.

**Second**, Plaintiffs' failure to allege a dangerous probability of recoupment also is grounds for dismissal. For a predatory pricing "scheme to make economic sense, the losses suffered from pricing goods below cost must be recouped (with interest) during the supracompetitive-pricing stage of the scheme." *Weyerhaeuser*, 549 U.S. at 318 (2007) (citation omitted). "Recoupment is the ultimate object of an unlawful predatory pricing scheme; it is the means by which a predator profits from predation." *Brooke Grp.,* 509 U.S. at 224. "Without it, predatory pricing produces lower aggregate prices in the market, and consumer welfare is enhanced." *Id*. Indeed, whether prices are predatory depends "not on their effectiveness in minimizing losses, but on their tendency to eliminate rivals and create a market structure enabling the seller to recoup his losses." *Transamerica Comput. Co. v. IBM*, 698 F.2d 1377, 1386 (9th Cir.1983) (quotations and citation omitted). Courts routinely dismiss predatory pricing claims where Plaintiffs fail to allege recoupment. *See, e.g., DeSoto Cab Co. v. Uber Technologies, Inc.*, No. 16-cv-06385, 2018 WL 10247483, at *10 (N.D. Cal. Sept. 24, 2018) (dismissing predatory pricing claims for failure to allege "dangerous probability of recoupment"); *A-World Trade*, 2020 WL 5947613, at *1 (same); *Hurst Int'l, LLC v. Sinclair Sys Int'l*, No. 17-8070, 2018 WL 4959808, at *3 (C.D. Cal. Mar. 9, 2018) (same); *Sabry Lee, Inc. v. Genera Corp.*, No. 08-5758, 2009 WL 10674318, at *4 (C.D. Cal. Feb. 12, 2009) (same).

1      Here, because the AAA's prices were at least as great as its costs, the AAA never

2 suffered any "losses" in the first place as a result of arbitrator compensation in consumer

3 arbitrations. Thus, Plaintiffs cannot possibly allege that the AAA could "recoup" such losses

4 by driving its competitors out of the market and subsequently increasing arbitrator

5 compensation. In fact, Plaintiffs allege the opposite—that the AAA has managed "an

6 astounding 94% of all consumer arbitrations" over several years, ECF No. 11 5:1-3, and yet

7 AAA allegedly continues to *reduce* its arbitrator fees—not recoup losses by increasing them,

8 *id*. ¶¶ 147-51, 162. Plaintiffs' predatory pricing claims must be dismissed because they cannot

9 allege facts showing that the AAA has a dangerous probability of recouping its "investment

10 in below-cost prices" by excluding rivals and increasing arbitrator fees to supracompetitive

11 levels—the legal standard that Plaintiffs concede controls here. *Id*. ¶ 104.[4]

12 **II.    Plaintiffs Fail to State a Claim for Unfair or Deceptive Acts or Practices.**

13      Plaintiffs allege that the AAA's rules regarding arbitrator compensation, arbitrator

14 selection, and discovery constitute unfair or deceptive acts or practices under North Carolina,

15 Washington, and West Virginia law (Counts V, VII, VIII). Plaintiffs fail to allege facts

16 showing how the AAA's publicly available rules governing consumer arbitrations are

17 somehow unfair or deceptive under state law. Instead, Plaintiffs simply complain that they do

18 not like the outcome of arbitrations before the AAA, *id*. ¶ 187, and would prefer different

---

25    [4]    Plaintiffs' failure to plead the essential elements of predatory pricing also means that
26 Plaintiffs lack antitrust standing and cannot satisfy their threshold pleading burden of
establishing antitrust injury, or injury of the type the antitrust laws were designed to prevent.
*See, e.g., N.W.S. Michigan, Inc. v. Gen. Wine & Liquor Co.*, 58 F. App'x 127, 129 (6th Cir.
27 2003) ("When a private plaintiff complains about a defendant's prices, 'only predatory pricing
28 has the requisite anticompetitive effect' to establish antitrust injury.") (quoting *Atl. Richfield*,
495 U.S. at 339).

rules, such as the rules employed by JAMS, *id*. ¶¶ 113, 135, 159. Such allegations are not sufficient to state a claim under any standard.

### A.   West Virginia Consumer Credit and Protection Act.

The West Virginia Consumer Credit and Protection Act ("WVCCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104. The WVCCPA defines an unfair or deceptive act or practice as one or more of sixteen specific types of prohibited conduct, such as "passing off goods or services as those of another" or misrepresenting that "goods or services are of a particular standard, quality or grade." *Id*. § 46A-6-102(7). The AAA's consumer rules regarding arbitrator compensation, arbitrator selection, and discovery fit nowhere within the WVCCPA's definition of unfair or deceptive acts or practices, and Plaintiffs allege no facts to the contrary. Moreover, the WVCCPA applies only to situations where: (1) a creditor; (2) induces a consumer; (3) to enter into a consumer credit sale, a consumer loan, or a consumer lease. *See Vogt v. Am. Arb. Ass'n*, No. CC-02-2019-C-94, 2019 WL 2618065, at *5 (W. Va. Cir. Ct. June 22, 2019). Failure to satisfy these elements is grounds for dismissal. *Id.* Plaintiffs do not (and cannot) allege that the AAA is a "creditor" for purposes of the WVCCPA. Nor can Plaintiffs allege that the AAA—a non-party to the arbitration clauses that Plaintiffs agreed upon—somehow "induced" Plaintiffs to enter into any credit sale, loan, or lease. Plaintiffs' WVCCPA claim (Count V) should be dismissed.

### B.   Washington Consumer Protection Act.

Under the Washington Consumer Protection Act ("WCPA"), "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Wash. Rev. Code § 19.86.020. To state a claim under the WCPA, a plaintiff must allege: "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to [a person's] business or property; and (5) causation." *Montes v. Sparc Grp., LLC*, 136 F.4th 1168, 1070 n.3 (9th Cir. 2025) (*citing Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 637 (Wash. 2024)). The Washington Supreme Court has recently assessed unfairness based on whether: (1) the act or practice

causes or is likely to cause substantial injury to consumers; (2) that substantial injury is not reasonably avoidable by consumers themselves; and (3) that substantial injury is not outweighed by countervailing benefits to consumers or to competition. *Greenberg*, 553 P.3d at 641; *see also Shields v. Fred Meyer Stores*, 741 F. Supp. 3d 915, 931–32 (W.D. Wash. 2024) (citing *Klem v. Wash. Mut. Bank*, 295 P.3d 1179 (Wash. 2013)). An injury is "reasonably avoidable" for purposes of the "Substantial Injury" test when consumers "have reason to anticipate the impending harm and the means to avoid it," or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012) (quotations and citation omitted). Where, as here, Plaintiffs may avoid the alleged harm by reading the applicable terms and deciding not to enter into the agreement, courts dismiss WCPA claims. *See Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 859 (W.D. Wash. 2023) ("[C]onsumers would have reason to anticipate their injury and [therefore] the means to avoid it … by reviewing the [] Terms.") (cleaned up), *aff'd*, No. 23-35377, 2024 WL 2206454, at *1 (9th Cir. May 16, 2024).

Plaintiffs fail to plausibly allege that the AAA's consumer rules regarding arbitrator compensation, arbitrator selection, and discovery are unfair under the WCPA. The mere fact that Plaintiffs prefer the rules of the other ADR organizations is not sufficient to state a claim under the WCPA. Nor have Plaintiffs alleged facts showing that their injury was not "reasonably avoidable." The AAA's consumer arbitration rules and fee schedule are publicly available, and Plaintiffs voluntarily entered contracts that made those rules applicable to them. As in *Gray*, Plaintiffs had "reason to anticipate" that they would be subject to the AAA's rules when they signed contracts designating the AAA as the arbitration administrator for any disputes and had the "means to avoid" those rules by not entering into such a contract. *See* 653 F. Supp. 3d at 859. As discussed below, Plaintiffs also have failed to plead injury caused by the AAA's consumer rules—rather than caused by the arbitration contract they agreed upon. Accordingly, Plaintiffs WCPA claim (Count VII) should be dismissed.

### C.      North Carolina Unfair and Deceptive Trade Practices Act.

The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" N.C. Gen. Stat. § 75-1.1(a). To state a claim under the NCUDTPA, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. *Asby v. Medtronic, Inc*., 673 F. Supp. 3d 787, 797 (E.D.N.C. 2023); *SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 337 (N.C. 2020); *Walker v. Fleetwood Homes of N.C., Inc*., 653 S.E.2d 393, 399 (2007). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker*, 653 S.E.2d at 399 (quotations and citation omitted). "'Only practices that involve some type of egregious or aggravating circumstances are sufficient to violate the [NC]UDTPA.'" *White v. Chase Bank USA, N.A*., No. 16-CV-00176, 2017 WL 1131898, at *6 (E.D.N.C. March 24, 2017) (quoting *S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002). Where, as here, parties merely perform contractual obligations, courts dismiss NCUDTPA claims. *See S. Atl. Ltd.*, 284 F.3d at 536 ("It is clear, however, that conduct carried out pursuant to contractual relations rarely violates the UTPA.").

Plaintiffs fail to plausibly allege that the AAA's consumer rules regarding arbitrator compensation, arbitrator selection, and discovery are unfair under the NCUDTPA. Plaintiffs identify no public policy violated by the AAA's rules, or otherwise allege how AAA's practices are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. The mere fact that another ADR organization, JAMS, has different rules and arbitration compensation that Plaintiffs might prefer—and that Plaintiffs agreed with a third party to arbitrate disputes using the AAA—does not mean that the AAA rules have caused Plaintiffs' alleged injury in violation of the NCUDTPA. Plaintiffs' NCUDTPA claim (Count VIII) should be dismissed.

### III.    Arbitral Immunity Bars Plaintiffs' Claims.

The legislatures of each of the states in which Plaintiffs reside—Arizona, Washington, West Virginia, and North Carolina—have adopted statutes conferring broad immunity on both arbitrators and arbitration providers like the AAA. *See* Ariz. Rev. Stat. § 12-3014(A) ("An arbitrator or an arbitration organization acting in that capacity is immune from civil liability to the same extent as a judge of a court of this state acting in a judicial capacity."); N.C. Gen. Stat. Ann. § 1-569.14(a) (same); Wash. Rev. Code § 7.04A.140(1) (same); W. Va. Code § 55-10-16(a) (same). These statutes arise out of the common law doctrine that "arbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings." *Sacks v. Dietrich*, 663 F.3d 1065, 1069-70 (9th Cir. 2011) (quotations and citation omitted).

Courts recognize two goals of arbitral immunity: (1) to "protect arbitrators from suit" and (2) "to ensure that there is a body of individuals willing to perform the service." *Cort v. Am. Arb. Ass'n*, 795 F. Supp. 970, 973 (N.D. Cal. 1992); *see also Waysl, Inc.*, 813 F.2d 1579, 1582 (9th Cir. 1987) ("[A]rbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants."). Courts apply arbitral immunity broadly to any conduct that relates to a "decisional act" of the arbitration. *Sacks*, 663 F.3d at 1070 ("If the claim, regardless of its nominal title, effectively seeks to challenge the decisional act of an arbitrator or arbitration panel . . . then the doctrine of arbitral immunity should apply. If not, the doctrine would not apply.") (ellipsis in original) (quotations and citation omitted).

The doctrine applies to organizations like the AAA as well as individual arbitrators. *Pinnacle Minerals Corp. v. Whitehead*, 357 F. Supp. 3d 1053, 1058 (D. Nev. 2019); *Cort*, 795 F. Supp. at 971 ("It has been uniformly accepted that such immunity extends to arbitration associations such as the AAA as well."). The immunity extended to arbitration providers includes "instances where the organization has engaged in tasks such as selecting an arbitrator, scheduling a hearing, giving notice of a hearing, and billing for services." *Cancer Ctr. Assocs. for Rsch. and Excellence, Inc. v. Philadelphia Ins. Cos*, No. 15–CV–00084, 2015

WL 2235347 at *1-3 (E.D. Cal. May 12, 2015) (quotations and citations omitted). "The scope of immunity is so wide that this remains true even if the sponsoring organization has violated its own internal rules." *Id.* (citation omitted) (denying "leave to amend to add a claim against the AAA" because "any claim against the AAA would be futile"). Courts routinely dismiss claims against the AAA on arbitral immunity grounds. *See, e.g.*, *Cort*, 795 F. Supp. at 972 (dismissing claims against AAA because immunity extends to "activities in choosing arbitrators"); *Alexander v. Am. Arb. Ass'n*, No. C 01–1461, 2001 WL 868823 at *4 (N.D. Cal. July 27, 2001) (dismissing claims because "immunity protects any violations made by the AAA of its own internal rules."); *Vogt v. Am. Arb. Ass'n*, 19-CV-156, 2020 WL 1548066, at *3 (N.D.W.V. March 17, 2020) ("It is well-established that arbitration associations are granted absolute immunity for acts performed during the course of an arbitration proceeding.") (citation omitted).

Plaintiffs here challenge the AAA's arbitration rules and fee schedules for consumer cases. In particular, Plaintiffs allege that the AAA's compensation of arbitrators is too low and that the rules do not allow consumers a choice of arbitrators or sufficient discovery. ECF No. 11 ¶¶ 111, 132, 187, 225. Plaintiffs seek relief under state and federal law, complaining that these rules result in "shockingly abysmal outcomes for consumers" like Plaintiffs. *Id*. at 2. The AAA's rules fall within the scope of arbitral immunity because they are clearly related to the AAA's role in administering arbitration proceedings. *Cf. Cancer Ctr. Assocs.*, 2015 WL 2235347, at *1-3.[5] A contrary rule would open the floodgates to "reprisals by dissatisfied litigants" in federal courts and defeat the very purpose of arbitration proceedings. *Waysl,* 813 F.2d at 1582. Moreover, AAA also is entitled to attorneys' fees and expenses incurred in defending Plaintiffs' claims. *See* Ariz. Rev. Stat. § 12-3014(E) ("[T]he court *shall* award to the arbitrator, organization or representative reasonable attorney fees and other reasonable

---

[5]    The fact that arbitral immunity applies here does not mean that Plaintiffs lack recourse. Plaintiffs are free to challenge the result of their arbitration in court. *See, e.g*., *Alexander*, 2001 WL 868823, at *4 (noting that plaintiff filed a Motion to Vacate in state court and dismissing claims against the AAA on arbitral immunity grounds). Plaintiffs may also bring an action against the other party before the case proceeds to challenge the arbitration agreement.

1    expenses of litigation" if it finds that arbitral immunity applies.) (emphasis added); N.C. Gen.

2    Stat. Ann. § 1-569.14(e) (same); Wash. Rev. Code § 7.04A.140(5) (same); W. Va. Code § 55-

3    10-16(e) (same).

4    **IV.    Plaintiffs Lack Article III Standing.**

5          Plaintiffs must have Article III standing to pursue claims in federal court, which

6    requires: (1) *injury-in-fact*, or an actual or imminent injury to Plaintiffs; (2) *causation*, that

7    the AAA's allegedly illegal conduct caused the Plaintiffs' actual or imminent injury; and (3)

8    *redressability*, or that it is likely, as opposed to merely speculative, that Plaintiffs' claims will

9    remedy the alleged violation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

10   Plaintiffs meet none of these requirements and therefore their claims should be dismissed.

11         ***First***, injury-in-fact must be (a) concrete and particularized and (b) "actual or

12   imminent, not 'conjectural' or 'hypothetical.'" *Id.*; *Warth v. Seldin*, 422 U.S. 490, 508 (1975);

13   *Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Plaintiffs' alleged injury here is ambiguous

14   and highly speculative. Plaintiffs allege that they were harmed "by having no choice of forum

15   and no choice of arbitrator," ECF No. 11 ¶ 128, and that they are "only alleging damages

16   related to Plaintiffs' lack of choice in the marketplace"—*not* damages from "the AAA's

17   handling of their individual cases." *Id.* ¶ 270. Such injury from lack of "choice" is highly

18   speculative, especially where Plaintiffs allege no facts showing how lack of "choice" of

19   arbitration provider (as opposed to a different *outcome* in their "individual case") caused any

20   "concrete and particularized" harm whatsoever. While Plaintiffs make the conclusory

21   assertion that they suffered "damages in the form of lost opportunities in defending their

22   rights," *id.* ¶ 410, they allege no facts showing how, for example, the outcome with JAMS or

23   any other tribunal would be different than the outcome with the AAA in their "individual

24   case." Nor can Plaintiffs assert damages related to arbitrator compensation because the

25   business—not the consumer—pays that compensation. *Id.* ¶¶ 139-155. Plaintiffs' alleged

26   injury is highly speculative and an insufficient basis for standing.

27         ***Second***, Plaintiffs' alleged injury must be "fairly ... trace[able] to the challenged action

28   of the defendant, and not ... th[e] results [of] the independent action of some third party not

- 14 -

MOTION TO DISMISS

1    before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42, (1976). Again,

2    Plaintiffs allege that they were harmed "by having no choice of forum and no choice of

3    arbitrator," ECF No. 11 ¶ 128, and that they are "only alleging damages related to Plaintiffs'

4    lack of choice in the marketplace"—*not* damages from "the AAA's handling of their

5    individual cases." *Id*. ¶ 270. But the AAA is *not a party* to the contracts between Plaintiffs

6    and the credit reporting, banking, and credit card companies that contained provisions

7    allegedly designating the AAA as the arbitration provider. *Id*. ¶¶ 94, 272, 280, 287, 291. Any

8    injury due to "lack of choice" of arbitration provider is the result of Plaintiffs' agreement to

9    be bound by the arbitration provisions in contracts with companies who are not before the

10   Court—not the result of the AAA or its consumer arbitration rules. Nothing in those rules

11   prevents Plaintiffs or companies from choosing a different arbitration provider, as others have

12   done, based on Plaintiffs' allegations regarding consumer cases administered by JAMS and

13   NAM. *See, e.g.*, ECF No. ¶¶ 74-78.

14        ***Third***, it must be "likely," as opposed to merely "speculative," that Plaintiffs' alleged

15   injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (citation

16   omitted). Again, Plaintiffs allege that they were harmed "by having no choice of forum and

17   no choice of arbitrator," ECF No. 11 ¶ 128, and that they are "only alleging damages related

18   to Plaintiffs' lack of choice in the marketplace"—*not* damages from "the AAA's handling of

19   their individual cases." *Id*. ¶ 270. Plaintiffs seek injunctive relief, presumably "to forbid

20   exclusivity" in arbitration clauses like those they agreed upon when they entered their

21   contracts. *Id*. ¶ 96. Even if the Court were to find the arbitration provisions in Plaintiffs'

22   contracts with credit reporting, banking, and credit card companies were invalid—a

23   conclusion that, as discussed below, this Court already has *rejected* with respect to Plaintiff

24   Stephanie Stephens—the Court could not address those arbitration provisions by issuing an

25   injunction against the AAA because the AAA is not a party to those contracts. Even if the

26   Court were to order some sort of other relief by regulating the AAA's arbitrator compensation

27   or consumer arbitration rules, such relief would not remedy Plaintiffs' alleged harm due to

28   "lack of choice" because there is no reason to believe that the third-party companies not before

the Court would cease designating the AAA as the arbitration provider—the source of Plaintiffs' alleged harm. Plaintiffs' claims should be dismissed for lack of standing.

## V.    The Court Should Reject Plaintiffs Stephanie Stephens' and William Hilton's Attempts to Relitigate the Arbitrability of Their Claims.

Earlier this year, Plaintiff Stephanie Stephens filed a lawsuit in this Court alleging, among other things, Fair Credit Reporting Act claims against an Experian affiliate. Judge McNamee found, over Stephens' objections, that her claims are "subject to arbitration pursuant to the 2016 Terms of Use" she agreed upon and granted Experian's motion to compel arbitration. *Stephens v. Experian Info. Sols., Inc.*, 2:24-cv-01576, ECF No. 56 at 8 (D. Ariz. Feb. 6, 2025). Stephens filed the instant action effectively seeking to reverse Judge McNamee's determination and have this Court instead conclude that her arbitration pending before the AAA is unlawful. The Court should not permit Stephens to collaterally attack and relitigate Judge McNamee's determination. *Mullis v. U.S. Bankr. Ct., Dist. of Nev.*, 828 F.2d 1385 (9th Cir. 1987) (finding "collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper") (citation omitted); *CitiMortgage, Inc. v. Davis*, 20 F.4th 352, 358 (7th Cir. 2021) (Plaintiff's attempt to challenge bankruptcy court's ruling after district court's dismissal, which he did not appeal, found to be an impermissible collateral attack.). Moreover, to the extent Stephens asserts new arguments she did not raise before Judge McNamee, such arguments have been waived. *Id.* at 358 (argument waived in collateral attack where Plaintiff previously did not raise before the district court). Stephens should have presented any antitrust or unfair and deceptive trade practices arguments as a bar to the AAA's administration of her arbitration claims before Judge McNamee and failed to do so.

Similarly, Plaintiff William Hilton filed two lawsuits last year in the Southern District of West Virginia alleging that the Bank of Missouri and First Electronic Bank violated West Virginia Consumer Protection laws. Hilton thereafter stipulated that he would proceed with arbitration in accordance with the arbitration agreement between the parties. *Hilton v. The Bank of Mo.*, 3:24-cv-000300, ECF No. 10 (S.D. W. Va. Sept. 10, 2024); *Hilton v. First Elec. Bank*, 3:24-cv-00299, ECF No. 11 (S.D. W. Va. Sept. 10, 2024). The Court should not permit

Hilton to now challenge the arbitrability of his claims before the AAA when he stipulated to such arbitrability before another court.

## CONCLUSION

For the foregoing reasons, the AAA respectfully requests that the Court dismiss all of Plaintiffs' claims. Plaintiffs' claims should be dismissed with prejudice because further amendment of the pleadings would be futile. Finally, the AAA requests the fees and costs incurred in defending Plaintiffs' claims pursuant to Ariz. Rev. Stat. § 12-3014(E); N.C. Gen. Stat. Ann. § 1-569.14(e); Wash. Rev. Code § 7.04A.140(5); and W. Va. Code § 55-10-16(e). AAA further certifies that it has complied with L.R. 12.1(c), as noted in the Certificate of Conferral filed concurrently with this Motion.

RESPECTFULLY SUBMITTED this 22nd day of July, 2025.

**DICKINSON WRIGHT PLLC**

By: */s/ Joshua Grabel*
Joshua Grabel (AZ Bar No. 018373)
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004
(602) 285-5000
(844) 670-6099
jgrabel@dickinsonwright.com

**HOGAN LOVELLS US LLP**
Justin Bernick (Admitted *Pro Hac Vice*)
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-5600
justin.bernick@hoganlovells.com

***Attorney for Defendant American***
***Arbitration Association, Inc.***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I certify that on the 22nd day of July, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

*/s/ Joshua Grabel*

MOTION TO DISMISS