1
Justin Bernick (Admitted *Pro Hac Vice*)
**HOGAN LOVELLS US LLP**
2
555 Thirteenth Street, N.W.
3
Washington, DC 20004-1109
Telephone: (202) 637-5600
4
justin.bernick@hoganlovells.com

5
Joshua Grabel (AZ State Bar No. 018373)
6
Eric Bryce Kessler (AZ State Bar No. 032182)
**DICKINSON WRIGHT PLLC**
7
1850 North Central Avenue
Suite 1400
8
Phoenix, Arizona 85004
9
Telephone: (602) 285-5000
jgrabel@dickinsonwright.com
10
bkessler@dickinsonwright.com
11

12
*Attorneys for Defendant American*
*Arbitration Association, Inc.*

13
**UNITED STATES DISTRICT COURT**
14
**DISTRICT OF ARIZONA**

15
Stephanie Stephens; Joelle Nole;      Case No.: 2:25-CV-01650-PHX-JJT
16
William Hilton; and Eugenie Balogun,
*Individually and on behalf of all*
17
*others similarly situated,*
**REPLY MEMORANDUM IN SUPPORT**
18
                                       **OF MOTION TO DISMISS**
                  Plaintiffs,
19
                                       **(Oral Argument Requested)**
20
              v.

21
American Arbitration Association, Inc.,

22
                  Defendant.
23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................. - 1 -

LEGAL STANDARD ....................................................................................... - 2 -

ARGUMENT .................................................................................................... - 3 -

    I.    Plaintiffs Fail to State any Antitrust Claim.................................... - 3 -

        A.    Predatory Pricing ................................................................ - 3 -

        B.    Exclusive Dealing .............................................................. - 6 -

        C.    Harm to Competition .......................................................... - 8 -

    II.    Plaintiffs Fail to State a Claim for Unfair or Deceptive Acts or Practices... - 9 -

        A.    West Virginia Consumer Credit and Protection Act. ...................... - 10 -

        B.    Washington Consumer Protection Act. ............................... - 11 -

        C.    North Carolina Unfair and Deceptive Trade Practices Act. ............ - 13 -

    III.    Arbitral Immunity Bars Plaintiffs' Claims. ................................. - 13 -

    IV.    Plaintiffs Lack Article III Standing. .......................................... - 16 -

    V.    The Court Should Reject Plaintiffs Stephanie Stephens' and William Hilton's Attempts to Relitigate the Arbitrability of Their Claims............................ - 19 -

CONCLUSION ................................................................................................. - 19 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) ...................................................................................6

*Alexander v. Am. Arb. Ass'n*,
No. C 01-1461, 2001 WL 868823 (N.D. Cal. July 27, 2001) ..................................14

*Apple Inc. v. Pepper*,
587 U.S. 273 (2019) ...............................................................................................18

*Arizona v. Maricopa Cnty. Med. Soc'y*,
457 U.S. 332 (1982) .................................................................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................2, 3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) .................................................................................................5

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) ..............................................................................................4, 9

*Becker v. Graber Builders, Inc.*,
561 S.E.2d 905 (N.C. Ct. App. 2002) ....................................................................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................2, 3

*Brooke Grp. Ltd., v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) .................................................................................................4

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) .................................................................................................9

*Bumpers v. Cmty. Bank of N. Virginia*,
747 S.E.2d 220 (N.C. 2013) ..................................................................................13

*California v. Texas*,
593 U.S. 659 (2021) ...............................................................................................18

*Cancer Ctr. Assocs. for Rsch. and Excellence, Inc. v. Phila. Ins. Cos*,
No. 15-cv-00084, 2015 WL 2235347 (E.D. Cal. May 12, 2015) ...........................14

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986) .................................................................................................3

*Cherdak v. Am. Arb. Ass'n*,
    443 F. Supp. 3d 134 (D.D.C. 2020) .................................................................16

*Conwood Co., L.P. v. U.S. Tobacco Co.*,
    290 F.3d 768 (6th Cir. 2002) .........................................................................5

*Cort v. Am. Arb. Ass'n*,
    795 F. Supp. 970 (N.D. Cal. 1992) ..............................................................14

*Dalton v. Camp*,
    548 S.E.2d 704 (N.C. 2001) ..........................................................................13

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*,
    869 S.E.2d 34 (N.C. Ct. App. 2022) ............................................................13

*Daniel v. American Board of Emergency Medicine*,
    428 F.3d 408 (2d Cir. 2005)..........................................................................18

*Eastman v. Quest Diagnostics Inc.*,
    2015 WL 7566805 (N.D. Cal. Nov. 25, 2015) ...........................................6, 8

*Eastman v. Quest Diagnostics Inc.*,
    724 F. App'x 556 (9th Cir. 2018) ..............................................................7, 8

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
    504 U.S. 451 (1992)........................................................................................7

*F.T.C. v. Neovi, Inc.*,
    598 F. Supp. 2d 1104 (S.D. Cal. 2008)........................................................12

*Gray v. Amazon.com, Inc.*,
    653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*,
    No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024)........................12

*Gray v. North Carolina Insurance Underwriting Association*,
    529 S.E.2d 676 (N.C. 2000)..........................................................................13

*Greenberg v. Amazon.com, Inc.*,
    553 P.3d 626 (Wash. 2024)......................................................................11, 12

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    719 P.2d 531 (Wash. 1986)............................................................................12

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
    733 F. App'x 380 (9th Cir. 2018) ..................................................................8

*Hopper v. American Arbitration Association*,
    No. CV 16-01124, 2016 WL 7443240 (C.D. Cal. March 22, 2016) .......11, 15

*Hopper v. American Arbitration Association*,
    708 F. App'x 373 (9th Cir. 2017) .....................................................11, 15, 16

REPLY TO MOTION TO DISMISS

*In re Facebook, Inc. Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020) .................................................................18

*Interpipe Contracting, Inc. v. Becerra,*
    898 F.3d 879 (9th Cir. 2018) ....................................................................3

*Lorain Journal Co. v. United States,*
    342 U.S. 143 (1951).................................................................................7

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)......................................................................... *passim*

*N.W.S. Mich., Inc. v. Gen. Wine & Liquor Co.,*
    58 F. App'x 127 (6th Cir. 2003) ...............................................................4

*Panag v. Farmers Ins. Co. of Wash.,*
    204 P.3d 885 (Wash. 2009)......................................................................12

*Pinnacle Mins. Corp. v. Whitehead,*
    357 F. Supp. 3d 1053 (D. Nev. 2019) .......................................................14

*Reiter v. Sonotone Corp.,*
    442 U.S. 330 (1979).................................................................................18

*Sacks v. Dietrich,*
    663 F.3d 1065 (9th Cir. 2011) .................................................................14

*Simon v. E. Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976)..............................................................................7, 17

*Stephens v. Experian Information Solutions, Inc. et al.,*
    24-cv-1576 (D. Ariz.) ..............................................................................10

*Tampa Elec. Co. v. Nash. Coal Co.,*
    365 U.S. 320 (1961)...............................................................................6, 8

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021).................................................................................18

*United States v. Dentsply Int'l, Inc.,*
    399 F.3d 181 (3d Cir. 2005)....................................................................5, 7

*United States v. Microsoft Corp.,*
    253 F.3d 34 (D.C. Cir. 2001)...................................................................5, 9

*United States v. Socony-Vacuum Oil Co.,*
    310 U.S. 150 (1940)..................................................................................3

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004).................................................................................19

- iv -

*Vogt v. Am. Arb. Ass'n, Inc.*,
    No. 19-cv-156, 2020 WL 1548066 (N.D. W. Va. Mar. 17, 2020) ...........................................14

*Vogt v. Am. Arb. Ass'n*,
    No. CC-02-2019-C-94, 2019 WL 2618065 (W. Va. Cir. Ct. June 22, 2019)....................10, 11

*Waysl, Inc. v. First Bos. Corp.*,
    813 F.2d 1579 (9th Cir. 1987) ......................................................................................1, 2, 17

**Statutes**

Ariz. Rev. Stat. § 12-3014(E) ...............................................................................................19

N.C. Gen. Stat. Ann. § 1-569.14(e) .......................................................................................19

N.C. Unfair and Deceptive Trade Practices Act .....................................................................13

Robinson-Patman Act ..............................................................................................................5

Sherman Act..................................................................................................................3, 4, 6

Washington Consumer Protection Act...............................................................................11, 12

Wash. Rev. Code § 7.04A.140(5) ..........................................................................................19

W. Va. Code § 46A-1-104 .....................................................................................................10

W. Va. Code § 55-10-16(e).....................................................................................................19

W. Va. Consumer Credit and Protection Act.....................................................................10, 11

**Other Authorities**

American Arbitration Association, *Consumer Arbitration Rules and Mediation
    Procedures*
    https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf...........................9

# INTRODUCTION

Plaintiffs' Opposition makes clear that they dislike the alleged "win rates" for consumer arbitrations before the American Arbitration Association ("AAA") and are therefore asking the Court to enjoin the arbitration provisions in their contracts with various non-party businesses. But Plaintiffs cannot use this lawsuit to rewrite their contracts with businesses that are not before the Court. The AAA's Motion to Dismiss explains why Plaintiffs have failed to state any claims and lack standing to bring this lawsuit. Instead of attempting to refute the Motion, Plaintiffs' Opposition re-writes their First Amended Complaint ("FAC"), mischaracterizes or ignores arguments made in the Motion, and asserts sweeping claims without any citation to authority. Plaintiffs also ask the Court for unprecedented relief: an injunction against Plaintiffs' arbitration agreements with non-party businesses and a rewrite of the AAA's arbitration procedures—relief that would not remedy Plaintiffs' purported harm and that Plaintiffs do not have standing to seek. Opp. at 15–16. The Court should grant the AAA's motion to dismiss for the reasons set forth below.

***First***, Plaintiffs run from their FAC and now argue that they are *not* alleging predatory pricing, just "artificially low" prices. But the law is clear—including the case law Plaintiffs cite in the FAC—that the *only* basis to challenge *low* prices under the antitrust laws is to satisfy the elements of a predatory pricing claim. Plaintiffs do not even attempt to do so. Recognizing this fatal defect in their antitrust claims, Plaintiffs pivot and argue (contrary to the FAC) that they are actually claiming exclusive dealing, challenging the arbitration provisions in their contracts with non-party businesses. But Plaintiffs do not allege the essential elements for exclusive dealing either, and cannot do so against the AAA, which is not a party to those contracts.

***Second***, Plaintiffs cite no authority supporting their claim that the AAA's conduct is "unfair" or "deceptive" under state consumer protection laws. Those laws are not a vehicle for Plaintiffs to rewrite publicly available AAA rules and procedures they dislike.

***Third***, Plaintiffs' Opposition makes clear that their grievance is consumer "win rates" and "outcomes" in AAA arbitrations. Opp. at 3, 12, 14. But the challenged AAA rules for

arbitrations that purportedly led to these outcomes are squarely part of the "decisional act" and immune under the doctrine of arbitral immunity as a matter of law. *See Waysl, Inc. v. First Bos. Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987).

**Fourth**, Plaintiffs' Opposition does nothing to rehabilitate their standing to bring this suit. Plaintiffs seek an injunction against their arbitration agreements with non-party businesses, despite the fact that: (1) the AAA is not even a party to those arbitration agreements; (2) Plaintiffs allege no facts showing that they will be harmed by the AAA's rules in the future or that any such harm would be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

**Fifth**, the arbitrability of Plaintiffs Stephens and Hilton's claims already has been determined by courts, and therefore their claims should be dismissed.

The Court should grant AAA's motion to dismiss, and do so with prejudice because Plaintiffs' claims cannot be cured by amendment.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To the extent that Plaintiffs suggest a complaint that fails this test may nevertheless survive dismissal because "factual development is necessary to assess the merits of the claims," Opp. at 4, Plaintiffs are wrong. The Supreme Court has cautioned that non-meritorious claims should be "weeded out" at the pleading stage, particularly in antitrust cases, where the burdens of discovery can be massive.[1] *Twombly*, 550 U.S. at 546 ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.").

---

[1]    Plaintiffs have made it clear that they intend to attempt to move forward with expensive and improper discovery despite a pending motion to dismiss that will resolve all of their claims, forcing AAA to file a Motion for Stay. *See* Dkt. 19.

# ARGUMENT

## I.    Plaintiffs Fail to State any Antitrust Claim.

Plaintiffs do not and cannot dispute that anticompetitive conduct is an essential element of their antitrust claims. Opp. at 7. Plaintiffs' FAC alleged the anticompetitive conduct at issue here was "predatory pricing," and even outlined the legal standard for such a claim.[2] *See* FAC ¶¶ 18–19, 25–26, 30–31, 104–105, 372. Now, recognizing that they cannot meet the legal standard for the claim that they brought, Plaintiffs pivot and argue they are challenging "artificially low" prices as well as "mandatory forced arbitration agreements" with non-party businesses. Opp. at 8–11. But the law is clear that there is no difference in what Plaintiffs must prove in claiming "predatory" pricing or "artificially low" pricing, and, setting aside (for a moment) the fact that the AAA is not even a party to Plaintiffs' arbitration agreements, Plaintiffs fail to allege the essential elements of exclusive dealing as well. Plaintiffs' federal and state[3] antitrust claims cannot survive dismissal because they have failed to state a "cognizable legal theory" and lack "sufficient facts alleged to support a cognizable legal theory." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886 (9th Cir. 2018) (citation and quotations omitted); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555–56.

### A.    Predatory Pricing

Nowhere in their 25-page Opposition do Plaintiffs argue that they can plead the essential elements of a predatory pricing claim. This is because they cannot. Predatory pricing requires "pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 117 (1986). As the AAA explained in its motion, Motion at 3–8,

---

[2]    Plaintiffs attempt to confuse the Court by incorrectly referring to predatory pricing as "price fixing." Opp. at 2, 4, 8. Price fixing is an "[a]greement[] for price maintenance," often between competitors, and violates Section 1 of the Sherman Act, which addresses restraints on trade, not monopolies. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940); *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 347 (1982). Contrary to Plaintiffs' assertions, the AAA has never characterized Plaintiffs' claims as price fixing claims.

[3]    As the Motion sets forth, the antitrust analysis under Arizona, Washington, and West Virginia law mirrors the federal analysis. *See* Motion at fn.2.

Plaintiffs failed to plead the essential elements of a predatory pricing claim: that (1) "the rival's low prices are below an appropriate measure of the rival's costs"; and (2) the rival had a "dangerous probability of recouping its investment in below-cost prices" with the ability to raise prices "above a competitive level" after competitors are excluded. *Brooke Grp. Ltd.*, *v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222, 224–26 (1993) (citations omitted).

Because Plaintiffs cannot prove predatory pricing, they now contend they never made such a claim. Opp. at 2, 5. Plaintiffs instead argue that the AAA set "artificially low" arbitrator compensation. Opp. at 5–9. But this is a semantic distinction without a legal difference. It has been black letter law from the Supreme Court for decades that mere low prices do not constitute anticompetitive conduct *unless* those prices are set at predatory (or below cost) levels. *See, e.g.*, *N.W.S. Mich., Inc. v. Gen. Wine & Liquor Co.*, 58 F. App'x 127, 129 (6th Cir. 2003) ("When a private plaintiff complains about a defendant's prices, 'only predatory pricing has the requisite anticompetitive effect' to establish antitrust injury." (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 (1990)). Indeed, "[l]ow prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Atl. Richfield*, 495 U.S. at 340; *see also Brooke Grp.*, 509 U.S. at 223–24 ("[T]he exclusionary effect of prices above a relevant measure of cost either reflects the lower cost structure of the alleged predator, and so represents competition on the merits, or is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate price-cutting.") (citation omitted).

In addition to proving that the arbitrator prices were below cost, Plaintiffs must prove the AAA could "recoup" losses from below-cost pricing once competitors are excluded. *Brooke Grp.*, 509 U.S. at 224 ("The second prerequisite to holding a competitor liable under the antitrust laws for charging low prices is a demonstration that the competitor had a reasonable prospect, or, under § 2 of the Sherman Act, a dangerous probability, of recouping its investment in below-cost prices."). Plaintiffs cannot plead either element of its "arbitrarily low" price antitrust claims, and, therefore, those claims should be dismissed with prejudice.

1    None of Plaintiffs' cited cases disagree with this bedrock antitrust principle, or even

2    address the issue. Most notably, none of those cases countenance an antitrust claim based on

3    low prices that do not satisfy the Supreme Court's predatory pricing test. *See* Opp. at 5–6

4    (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) (antitrust

5    claim challenging refusal to sell competitor ski lift tickets—not low prices); *Conwood Co.,*

6    *L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) (antitrust claim challenging exclusivity

7    restrictions on retail shelf space—not low prices); *United States v. Microsoft Corp.*, 253 F.3d

8    34 (D.C. Cir. 2001) (antitrust claim challenging exclusivity provisions in licensing

9    agreements—not low prices); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191 (3d Cir.

10    2005) (antitrust claim challenging exclusivity policy with dealers—not low prices)).

11    Plaintiffs' claim that they never claimed predatory pricing—and are not bound to the

12    precedent governing such a claim—is also belied by Plaintiffs' FAC, which states in the very

13    first sentence that the case is about "predatorial behavior." FAC ¶ 1. Plaintiffs' FAC

14    repeatedly states that it is asserting predatory pricing, and even explicitly sets forth the

15    antitrust test for such a claim—a test which, as AAA's Motion shows, Plaintiffs do not (and

16    cannot) satisfy. *See e.g.*, *id.* ¶¶ 18 (alleging "predatory pricing"); 26 (same); 105 (same); 372

17    (same); *see also id.* ¶¶ 25 (predatory pricing requires "selling below cost"); 30–31 ("prices

18    below the cost thereof"); 104 ("prerequisites to recovery" include below cost pricing and

19    recoupment); 19, 105 (noting the legal standard is the same whether the low cost prices are

20    evaluated under the Sherman or Robinson-Patman Act).[4] Plaintiffs "predatory pricing" or

21    "arbitrarily low pricing" claim fails at the threshold because Plaintiffs cannot satisfy their own

22    alleged test—the test required by the Supreme Court.

23

24

25

---

26    [4]    Plaintiffs cite FAC Paragraph 372 in support of their argument that "Plaintiffs'
    allegations focus on the AAA's exclusionary conduct, not predatory pricing." Opp. at 5. But

27    even Paragraph 372 alleges that "other businesses that may want to provide neutral ADR

28    services are unable to because of the Defendant's *predatory pricing* of consumer arbitrations
    and its restrictive consumer arbitration rules." (emphasis added).

### B.    Exclusive Dealing

Because Plaintiffs cannot state a predatory pricing claim, they now pivot and argue that they are bringing an exclusive dealing claim. Opp. at 9. But the FAC does not allege exclusive dealing. Plaintiffs' arguments regarding exclusive dealing cannot rehabilitate their antitrust claims for this reason alone.

Even if the Court were to consider the "merits" of this unpled claim, the factual allegations in Plaintiffs' FAC do not sufficiently plead exclusive dealing, which is an "agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor," thereby foreclosing competition. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1180 (9th Cir. 2016).[5] The nub of Plaintiffs' theory is that they are harmed by the "mandatory forced arbitration agreements" in their contracts with businesses that are not parties to this lawsuit that specify arbitration before the AAA because they would prefer a different arbitration forum. Opp. at 9. But contracts with exclusivity provisions are extremely common and only violate antitrust laws under narrow circumstances not present here, particularly since the AAA is not even a party to those exclusive contracts. *Tampa Elec. Co. v. Nash. Coal Co.*, 365 U.S. 320, 329, 334 (1961) (noting potential procompetitive benefits of exclusive contracts).

Plaintiffs here allege no facts showing exclusive dealing by the AAA. *See, e.g.*, *Aerotec Int'l, Inc.*, 836 F.3d at 1180 (rejecting an exclusive dealing claim because the plaintiff only "offer[ed] broad allegations and complaints that are unhinged from any specific agreement"). The AAA does not have an exclusive agreement—or any agreement at all, for that matter—with Plaintiffs or the non-party businesses. Plaintiffs argue that their "adhesion contracts" with those non-party businesses constitute exclusive dealing, but the AAA is not a party to those contracts. Therefore, Plaintiffs' alleged injury from the exclusivity provisions (if any)

---

[5]    While *Aerotec* involved a claim under Section 1 of the Sherman Act, "whether bringing claims under section 1 or section 2, a plaintiff still must plead facts that support a plausible inference that the exclusive dealing arrangement forecloses a substantial share of the relevant market – it is just that the definition of 'substantial share' varies*." Eastman v. Quest Diagnostics Inc.*, No. 15-cv-00415, 2015 WL 7566805, at *11 (N.D. Cal. Nov. 25, 2015).

- 6 -

is not "trace[able] to the challenged actions of the defendant" and are instead "th[e] results [of] the independent action of some third party not before the court," foreclosing Plaintiffs' standing to sue the AAA. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42, (1976). Plaintiffs also fail to satisfy the redressability element of standing because no injunction against the AAA would remedy Plaintiffs' harm from the exclusivity provisions since the AAA is not a party to those contracts—only non-party businesses that are not before the Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. at 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (citations and quotations omitted). Plaintiffs cite no authority for their implicit proposition that they can use the antitrust laws to amend contracts to which the defendant is not even a party.

The only actual facts that Plaintiffs allege with respect to the AAA is that it includes template arbitration provisions on its website. Opp. at 9–10. But Plaintiffs cite no cases even remotely suggesting that including template language on a website somehow constitutes exclusive dealing. Instead, each of the cases Plaintiffs cite involve the defendant using an *actual* exclusivity arrangement to forcibly prevent a customer or supplier from doing business with a competitor. *See* Opp. at 9–13. In *Lorain Journal Co. v. United States*, the Supreme Court held that a publisher's forcing advertisers to boycott a competing publisher was anticompetitive conduct. 342 U.S. 143, 152 (1951). In *Denstply International*, the Third Circuit held that an artificial teeth manufacturer's policy that prevented dealers from carrying competitors' products was anticompetitive conduct. 399 F.3d at 190. Finally, in *Eastman Kodak Co. v. Image Technical Services, Inc.*, the Supreme Court found that Kodak pressuring suppliers and distributors not to sell parts to competitors was anticompetitive conduct. 504 U.S. 451, 458, 483 (1992). AAA's inclusion of template arbitration provisions on its website bears no resemblance to the exclusive and forcible anticompetitive conduct in the cases Plaintiffs cite, or any other case for that matter.

Plaintiffs also have not pled the essential elements of an exclusive dealing claim. A threshold requirement is that the contract "foreclose[s] competition in a substantial share of the line of commerce affected." *Eastman v. Quest Diagnostics Inc.*, 724 F. App'x 556, 558

1   (9th Cir. 2018) (quoting *Tampa Elec. Co.*, 365 U.S. at 327). To survive a motion to dismiss,

2   Plaintiffs must "plead facts sufficient to support the inference that the exclusive dealing

3   arrangements have some appreciable impact on the market." *Eastman*, 724 F. App'x at 558–

4   59 (affirming dismissal where plaintiffs "failed to plausibly demonstrate foreclosure of a

5   substantial share of the market"). Plaintiffs fail to meet this standard because they have not

6   alleged the percentage of the alleged relevant market for "consumer arbitrations" throughout

7   the entire United States that AAA's competitors cannot access as a result of exclusive

8   arbitration provisions. Instead, all Plaintiffs allege, at best, is examples of businesses that

9   include binding arbitration provisions in their contracts. Plaintiffs cite no support—because

10  there is none—for their position that such examples are sufficient to show that competing

11  arbitration providers are foreclosed from the relevant market. The Court should reject

12  Plaintiffs' exclusive dealing theory. *Eastman*, 724 F. App'x at 558 (affirming dismissal); *see*

13  *also, e.g.*, *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380, 381 (9th Cir.

14  2018) (affirming dismissal for failure to plead that "arrangement foreclosed competition in a

15  substantial share of the line of commerce effected") (citation and quotations omitted).

16      **C.    Harm to Competition**

17          Having failed to plead a predatory pricing or exclusive dealing claim, Plaintiffs are left

18  with their general dissatisfaction with the AAA's rules and procedures, which Plaintiffs argue

19  are more "attractive" to corporations because, among other reasons, they are "substantially

20  cheaper." Opp. at 3, 10–11. While Plaintiffs argue that these rules disadvantage *Plaintiffs*

21  because they result in a purportedly lower "win rate" for consumers, they allege no facts

22  showing how the rules harm *competition* in the alleged market for consumer arbitrations.

23  Indeed, nothing in the AAA's rules prevents JAMS, NAM, or any other alternative dispute

24  resolution provider from providing consumer arbitration services that compete with AAA's

25  services. In fact, if the rules are as *inferior* as Plaintiffs assert they are, they would invite

26  *greater* competition from entities offering *superior* rules. But Plaintiffs instead assert the

27  opposite—that entities favor the AAA's rules, in part because they reduce the cost of resolving

28  disputes. The antitrust laws do not protect AAA's competitors from this competition by

- 8 -

requiring the AAA to adopt "higher cost" procedures. *Atl. Richfield*, 495 U.S. at 338 ("The antitrust laws were enacted for the protection of competition, not competitors.") (citations, quotations, and emphasis omitted).

The law is clear that, for conduct to be illegal, "a monopolist's act must have an 'anticompetitive effect.' That is, it must harm the *competitive process* and thereby harm consumers." *Microsoft Corp.*, 253 F.3d at 58 (emphasis added). A "plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield*, 495 U.S. at 344; *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."). Nowhere in the FAC or Opposition do Plaintiffs explain how the AAA's rules exclude competitors from the market; nor do Plaintiffs cite any case even remotely suggesting that those rules could plausibly constitute anticompetitive conduct. Plaintiffs' antitrust claims should be dismissed.

## II.    Plaintiffs Fail to State a Claim for Unfair or Deceptive Acts or Practices.

Plaintiffs argue that the AAA's rules regarding consumer arbitrations are "deceptive" and therefore a violation of state law. Each of those claims fail for the simple reason that, as the FAC concedes, the AAA's rules are all publicly available,[6] FAC ¶ 109, and Plaintiffs do not (and cannot) allege facts showing that the AAA somehow deceived Plaintiffs into agreeing to arbitrate with various non-party businesses. In fact, Plaintiffs argue the opposite—that they entered into the arbitration agreements with those businesses not because they were deceived by any AAA statement, but because they "had no reasonable alternative" but to agree to an "adhesion contract" specifying AAA as the arbitrator. Opp. at 18. While Plaintiffs apparently now seek to "invalidate" those arbitration agreements because they are supposedly "unconscionable," and Plaintiffs would prefer to have different rules, *id*., Plaintiffs cannot do

---

[6]    FAC    ¶ 109.    The    consumer    rules    are    available    here: https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf (on file with Hogan Lovells).

1    so by suing the AAA for allegedly deceptive practices when the alleged practices are publicly

2    disclosed, not deceptive in any manner, and when AAA is not a party to those agreements.[7]

3    Plaintiffs unfair and deceptive acts or practices claims fail for the additional reasons below.

4    **A.    West Virginia Consumer Credit and Protection Act.**

5        Plaintiffs cannot state a claim under West Virginia's Consumer Credit and Protection

6    Act ("WVCCPA"). Plaintiffs argue that the Court should ignore both the standard articulated

7    in the statute itself and recently applied by a West Virginia Circuit Court to dismiss WVCCPA

8    claims filed against the AAA, and instead rely on an unpublished, one-page Ninth Circuit

9    opinion that did not even address WVCCPA claims. Opp. at 19–21. Plaintiffs are wrong, and

10    their WVCCPA claims should be dismissed.

11        "[T]hree elements need to be satisfied for the [WV]CCPA to apply: 1) a creditor 2)

12    induces a consumer 3) to enter into a consumer credit sale, a consumer loan, or a consumer

13    lease." *Vogt v. Am. Arb. Ass'n*, No. CC-02-2019-C-94, 2019 WL 2618065, at *5 (W. Va. Cir.

14    Ct. June 22, 2019). The *Vogt* court dismissed WVCCPA claims brought against the AAA

15    because (1) arbitral immunity barred plaintiff's claims; and (2) plaintiff failed to meet this

16    three prong test. *Id*. Plaintiffs here fail to meet the test because the AAA is not a "creditor."

17    Citing no authority, Plaintiffs claim the *Vogt* standard is too narrow, but they fail to

18    acknowledge that the text of the statute itself says that it applies only if a consumer "is induced

19    to enter into a consumer credit sale," loan, or lease. W.Va. Code § 46A-1-104. Plaintiffs'

20    dismay about the express language of the WVCCPA does not establish a basis for a claim.

21        Setting aside the inconsistency of their position with the actual West Virginia statute,

22    Plaintiffs try to distinguish *Vogt* on the basis that Plaintiffs allegations regarding "the way the

23    AAA advertises its services" are different than those in *Vogt.* Opp. at 20. But Plaintiffs are

24

25

26    [7]    Nor can certain Plaintiffs challenge the arbitrability of their claims. Plaintiff Stephanie
Stephens was compelled to arbitrate her claims by this Court, *despite* the purported unfairness
of the AAA's rules. Motion at 16. Stephens also could have but did not argue the arbitration

27    provision was unconscionable. Plaintiffs' Response to Defendant Experian Information
Solutions, Inc.'s Motion to Compel Arbitration, Stephens v. Experian Information Solutions,

28    Inc. et al., No. 24-cv-1576 (D. Ariz. Oct. 29, 2024), ECF No. 38.

wrong. *Vogt* specifically involved false advertising claims. 2019 WL 2618065, at *2 (identifying "false advertising" as one of four claims). Plaintiffs also argue that *Vogt* involved an employment—and not a consumer—arbitration, Opp. at 20, but Plaintiffs' claims fail not because they are not *consumers*, but because the AAA is not a *creditor* inducing a *credit* transaction. Moreover, Plaintiffs' citation to *Hopper v. American Arbitration Association,* 708 F. App'x 373, 373 (9th Cir. 2017) is not persuasive, as the unreported, non-precedential Ninth Circuit opinion did not even address WVCCPA claims and instead addressed arbitral immunity. The fact that the Ninth Circuit questioned the applicability of arbitral immunity in a case with different facts[8] says nothing about whether Plaintiffs state a claim under the WVCCPA. In fact, *Vogt* explicitly considered and rejected *Hopper* in deciding to apply arbitral immunity. 2019 WL 2618065, at *4 (finding that the *Hopper* opinion "does not set forth a doctrine or theory that would overcome the absolute immunity conferred by statute and case law in West Virginia" and that "permitting such a claim . . . would elevate the form of the cause of action over the absolute immunity afforded arbitrators").

**B.    Washington Consumer Protection Act.**

Plaintiffs likewise cannot state a claim under the Washington Consumer Protection Act ("WCPA"). Plaintiffs do not even attempt to explain why the AAA's rules are "unfair" under the WCPA, arguing only that they state an unfairness claim merely by alleging that consumers are "disadvantage[ed]" by the AAA's rules, without providing any support whatsoever for this position. Opp. at 17. Plaintiffs also fail to establish the injury was "not reasonably avoidable," which they concede is a required element of unfairness. *Id*. Plaintiffs cite *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 642 (Wash. 2024), in arguing that "the 'reasonably avoidable' inquiry asks whether consumers had meaningful alternatives—not

---

[8]    For example, in *Hopper*, the plaintiff alleged he actually "reviewed" direct mail and other advertisements from AAA and considered those materials in selecting AAA for arbitration services. *Hopper v. Am. Arb. Ass'n*, No. CV 16-01124, 2016 WL 7443240 at *1 (C.D. Cal. March 22, 2016). Here, in contrast, Plaintiffs allege only that AAA's advertisements "ostensibly" reaches consumers—not that Plaintiffs actually even saw or reviewed any of them. Opp. at 21.

1    whether terms were posted online." Opp. at 18. But the *Greenberg* Court only found that

2    plaintiffs' injuries were not reasonably avoidable because they had made efforts to find goods

3    from other stores before ordering goods on Amazon. There are no such allegations here. In

4    contrast, in *Gray v. Amazon.com, Inc.*, the Court found that consumers could have reasonably

5    avoided their injury "by reviewing the Alexa Terms and declining to purchase and use an

6    Alexa-enabled device." 653 F. Supp. 3d 847, 859 (W.D. Wash. 2023), *aff'd*, No. 23-35377,

7    2024 WL 2206454 (9th Cir. May 16, 2024). The same is true here—Plaintiffs could have

8    reviewed the AAA's publicly available rules before making a purchase from the third-party

9    businesses. Plaintiffs also cite *F.T.C. v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1115 (S.D. Cal.

10    2008), where the court held that consumers who possessed "bank accounts accessed without

11    authorization had no chance whatsoever to avoid the injury before it occurred." But those

12    facts are very different than those at issue here, where Plaintiffs had a choice in signing the

13    contracts with third-party businesses. Plaintiffs' WCPA claims likewise fail.

14          Again, the AAA's rules also are not deceptive because they are publicly available.

15    Nevertheless, Plaintiffs argue that the AAA deceived consumers by "creat[ing] a false net

16    impression of fairness," whatever that might mean. Opp. at 17. While Plaintiffs recite the

17    elements of a WCPA claim, Opp. at 17, they also ignore the fifth element: causation. To

18    establish deception in violation of the WCPA, a "causal link is required between the unfair or

19    deceptive acts and the injury suffered by plaintiff." *Hangman Ridge Training Stables, Inc. v.

20    Safeco Title Ins. Co.*, 719 P.2d 531, 539 (Wash. 1986). Here, Plaintiffs do not and cannot

21    allege that the AAA's "deception" caused Plaintiffs' choice of arbitral forum because they

22    argue in the same breath that they "had no reasonable alternative" but to agree to an "adhesion

23    contract" specifying AAA as the arbitration provider. Opp. at 18. Put differently, Plaintiffs

24    cannot establish—as required for a WCPA claim—that "but for the defendant's unfair or

25    deceptive practice, the plaintiff would not have suffered an injury." *Panag v. Farmers Ins.

26    Co. of Wash.*, 204 P.3d 885, 900 (Wash. 2009) (citation omitted).

27

28

C.    **North Carolina Unfair and Deceptive Trade Practices Act.**

Plaintiffs allege that the AAA engaged in deception in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") by promoting a fair process when the process allegedly is not fair. Opp. at 21–22. That claim fails—as the other state law claims fail—because Plaintiffs have not and cannot plead causation (*i.e.*, that they relied on the purported deception in choosing the arbitral forum). To establish a violation of NCUDTPA, Plaintiffs must allege an unfair or deceptive trade practice which "proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001); *see also* Motion at 11. Plaintiffs must "demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226 (N.C. 2013); *see also Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison,* 869 S.E.2d 34, 43 (N.C. Ct. App. 2022) ("[T]he reliance doctrine—holds that in order to satisfy proximate cause, a plaintiff must demonstrate that they detrimentally relied on the defendant's alleged misrepresentation or deception in order to recover under the statute."). Plaintiffs do not allege that, but for any AAA purported representation, they would have chosen a different arbitral forum. In fact, Plaintiffs cannot make such an allegation, because Plaintiffs also argue that the non-party businesses gave them no choice but to agree to the contracts at issue.

Plaintiffs' cited cases are all inapposite. Plaintiffs claim that "aggravating circumstance" can transform a breach of contract into an actionable unfair or deceptive act—which is irrelevant here because there is no alleged breach of contract. *See* Opp. at 22 (citing *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 910–11 (N.C. Ct. App. 2002)). Plaintiffs' cherrypicked quote from *Gray v. North Carolina Insurance Underwriting Association* is also inapplicable, because the facts of *Gray*—naming as payee on settlement checks persons who claim to have an interest in the insured property—bear no relation to the facts of this case. 529 S.E.2d 676, 682–83 (N.C. 2000). Plaintiffs' NCUDTPA claims should be dismissed.

III.    **Arbitral Immunity Bars Plaintiffs' Claims.**

Plaintiffs' claims are barred by arbitral immunity because, as Plaintiffs repeatedly emphasize, those claims seek to challenge various AAA rules and procedures, including with

respect to arbitrator compensation, that supposedly result in "abysmal" win rates for consumers and arbitration decisions or "outcomes" they do not like. Opp. at 3, 6. The doctrine of arbitral immunity provides that "arbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings." *Sacks v. Dietrich,* 663 F.3d 1065, 1069-70 (9th Cir. 2011) (quotations and citation omitted). It is well recognized that arbitral immunity applies to organizations like the AAA. *Pinnacle Mins. Corp. v. Whitehead,* 357 F. Supp. 3d 1053, 1058 (D. Nev. 2019); *Cort v. Am. Arb. Ass'n*, 795 F. Supp. 970, 971 (N.D. Cal. 1992) ("It has been uniformly accepted that such immunity extends to arbitration associations such as the AAA as well."). Despite Plaintiffs' assertions to the contrary, arbitral immunity extends beyond the mere beginning and end of a particular arbitration proceeding. Courts apply arbitral immunity to any conduct that relates to a *"decisional act"* of the arbitration. *Sacks*, 663 F.3d at 1070 (emphasis added). Courts have taken an expansive view of what conduct relates to a "decisional act" and is therefore immune. For example, "selecting an arbitrator, scheduling a hearing, giving notice of a hearing, and billing for services" all fall within the scope of the arbitral immunity doctrine. *Cancer Ctr. Assocs. for Rsch. and Excellence, Inc. v. Phila. Ins. Cos*, No. 15-cv-00084, 2015 WL 2235347 at *1–3 (E.D. Cal. May 12, 2015) (citations and quotations omitted). Indeed, "[t]he scope of [arbitral] immunity is so wide that this remains true even if the sponsoring organization has violated its own internal rules." *Id*. (citation omitted).

Plaintiffs do not (because they cannot) explain how the rules they challenge—rules related to selection and compensation of arbitrators, discovery, and availability of hearings, Opp. at 10–11—are somehow unrelated to the "decisional act" of the arbitration itself and therefore not immune. Plaintiffs also ignore the authority AAA cited making clear that its rules are sufficiently related to a "decisional act" to confer immunity. *See, e.g.*, *Cort*, 795 F. Supp. at 972 (dismissing claims against AAA because immunity extends to "activities in choosing arbitrators"); *Alexander v. Am. Arb. Ass'n*, No. C 01-1461, 2001 WL 868823 at *4 (N.D. Cal. July 27, 2001) (dismissing claims because "immunity protects any violations made by the AAA of its own internal rules"); *Vogt v. Am. Arb. Ass'n, Inc.*, No. 19-cv-156, 2020

- 14 -

1   WL 1548066, at *3 (N.D. W. Va. Mar. 17, 2020) ("It is well-established that arbitration

2   associations are granted absolute immunity for acts performed during the course of an

3   arbitration proceeding.") (citation omitted).

4          Instead, Plaintiffs argue for a bright-line rule, based on a single unreported and

5   distinguishable case, that arbitral immunity does not apply to "commercial conduct before

6   any arbitration begins." Opp. at 23. In *Hopper*, the Ninth Circuit reversed dismissal of false

7   advertising claims on arbitral immunity grounds. The alleged "false advertising" in *Hopper*

8   was direct mail advertisements circulated by the AAA, and the plaintiff explicitly brought a

9   false advertising claim. *Hopper*, 2016 WL 7443240, at *1–3. Here, in stark contrast,

10  Plaintiffs' FAC challenges the AAA's *rules* for consumer arbitrations—not an advertisement.

11  Opp. at 24. There is no allegation of "false advertising" anywhere in the FAC. Plaintiffs

12  nevertheless try to square their claims with *Hopper* by recasting their claims as based on the

13  AAA's "false advertisement of itself as a fair forum." Opp. at 23.

14         Even if Plaintiffs were correct on the law, and their allegations actually showed that

15  they relied upon the AAA's representations *and* that those representations were false,

16  Plaintiffs' *antitrust* and *unfair* acts or practices claims necessarily fail because they have

17  nothing to do with Plaintiffs' *deceptive* acts or practices claims. With respect to Plaintiffs'

18  deception claims—the only claims Plaintiffs actually argue are *not* subject to immunity—

19  Plaintiffs concede the "technical accuracy" of the AAA's statements regarding the fairness of

20  its own rules, Opp. at 22, and never explain why those statements are objectively false.

21  Moreover, unlike in *Hopper*, where the "[p]laintiff had a choice between various arbitration

22  companies" and allegedly selected the AAA as his arbitration provider only after he "reviewed

23  Defendants direct mail and website pages to gather information about its services," *Hopper*,

24  2016 WL 7443240 at *1, there are no allegations here that Plaintiffs saw or relied upon any

25  sort of "false" advertising by the AAA *before* agreeing to an arbitration provider. Instead,

26  Plaintiffs explain that they agreed to arbitrate with the AAA because they "had no reasonable

27  alternative" to the contracts at issue. Opp. at 18. At best, Plaintiffs allege only that AAA's

28

statements regarding fairness "ostensibly" reach unspecified consumers, without connecting those statements in any way to Plaintiffs themselves. Opp. at 21.

The AAA is not aware of any other court that has adopted *Hopper*'s reasoning, with multiple courts expressly declining to follow *Hopper*. *See, e.g.*, *Cherdak v. Am. Arb. Ass'n*, 443 F. Supp. 3d 134, 157–58 (D.D.C. 2020) ("Plaintiffs did not point to any cases which have followed the result in *Hopper*. And, the only case that the Court could find which cites *Hopper* rejected its analysis."). Courts have instead strictly cabined *Hopper* and clarified that Plaintiffs cannot use the semantics of "false advertising" to circumvent arbitral immunity. Indeed, where "Plaintiffs attempt to present their [claims against AAA] under the guise of false advertising, the Court considers the substance of Plaintiffs' claim rather than its framing." *Cherdak*, 443 F. Supp. 3d at 157–58. So too here. Arbitral immunity clearly bars challenges to the AAA's rules and procedures, despite Plaintiffs re-characterizations of their allegations. *Id*. at 158 ("[I]n substance, Plaintiffs are challenging whether or not the AAA complied with its internal regulations. The AAA's statement of its own procedures and requirements is not analogous to the commercial actions which were challenged in *Hopper*."). Plaintiffs' recharacterization of the FAC allegations as false advertising is insufficient to overcome arbitral immunity and resuscitate their claims.

## IV.    Plaintiffs Lack Article III Standing.

Plaintiffs' Opposition now makes clear that Plaintiffs seek to enjoin mandatory arbitration provisions in contracts with non-party businesses that are not before the Court. Opp. at 16 (Plaintiffs seek "an injunction allowing consumers a choice of providers."). Plaintiffs do not have Article III standing to bring claims against the *AAA* challenging those contracts. To have standing, Plaintiffs must show: (1) *injury-in-fact* or an actual or imminent injury to Plaintiffs; (2) *causation* or that the AAA's illegal conduct caused the plaintiffs injury; and (3) *redressability* or that it is likely, as opposed to merely speculative, that Plaintiffs' claims will remedy the alleged violation. *Lujan*, 504 U.S. at 560–61. Plaintiffs meet none of these requirements.

**First**, Plaintiffs fail to show that they will suffer "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical," in the absence of prospective injunctive relief. *Id.* (citation and quotation omitted). Plaintiffs allege no facts showing that they will suffer "actual or imminent" harm absent an injunction against arbitration provisions in contracts with non-party businesses. They have not alleged *any* facts showing that Plaintiffs have *any future* dispute with *any* such a non-party business, much less such a dispute where arbitration with the AAA is "actual or imminent." *Id.* at 564 (denying injunction where no imminent harm because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects"[9]) (citations and quotations omitted). Nor have Plaintiffs alleged how such a hypothetical dispute would result in a different outcome—and avoid "concrete and particularized" injury to themselves—if arbitration were conducted by any other arbitration service. Moreover, Plaintiffs certainly have no standing to seek an injunction against *every* mandatory AAA arbitration provision in non-party business contracts in the entire United States, including businesses with which they have no contractual relationship. The scope of injunctive relief Plaintiffs appear to seek is unprecedented, and they have no standing to pursue it. Even with respect to Plaintiffs' ill-defined damages claims, Plaintiffs allege no facts showing "concrete or particularized" injury, *i.e.*, that the "fees paid to AAA," Opp. at 16, would have resulted in any different outcome if arbitration had instead proceeded through any other arbitration service.

**Second**, Plaintiffs' alleged injury must be "trace[able] to the challenged actions of the defendant," and not "th[e] results [of] the independent action of some third party not before the court." *Simon*, 426 U.S. at 41–42. Plaintiffs' asserted lack of choice in arbitration providers, Opp. at 16, stems from the agreements between Plaintiffs and non-party businesses that are not before the Court. The AAA is not a party to those agreements. Plaintiffs allege no

---

[9]    None of Plaintiffs' sought remedies would redress any purported harm they suffered from previous arbitrations, as discussed *infra*.

facts showing how the AAA caused the arbitration provisions in those contracts with non-party businesses, much less how the AAA caused the arbitration provisions in *every* contract with *every* business in the United States that specifies arbitration before the AAA.

**Third**, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citations and quotations omitted). "Article III standing requires identification of a remedy that will redress" the purported injury. *California v. Texas*, 593 U.S. 659, 660 (2021). Put simply, no injunction against the AAA would remedy Plaintiffs' harm from the mandatory arbitration provisions because the AAA is not a party to Plaintiffs' contracts with non-party businesses and cannot modify or terminate those contracts. Plaintiffs would need to separately seek relief from those arbitration provisions from the non-party businesses at issue.[10]

To the extent that Plaintiffs seek "an injunction requiring AAA to remove the anti-consumer biases in its rules," Opp. at 16, there is no basis—in the absence of an "actual or imminent" future arbitration involving Plaintiffs—for the Court to presume that such an injunction would remedy *any* purported harm Plaintiffs may suffer. Indeed, even if Plaintiffs could point to a future AAA arbitration, there is no basis to assume that changing the AAA's rules would result in what the Plaintiffs would view as a better "win rate." Opp. at 14. Such hypothetical remedies are proscribed by the Supreme Court. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Federal courts do not possess a roving commission to publicly opine on every legal question" and "do not adjudicate hypothetical or abstract disputes."). The requested relief is a naked attempt to ask the Court to rewrite the AAA rules and procedures that *millions* of consumers and non-party businesses relied upon when they agreed that those

---

[10]    Plaintiffs cite no cases supporting their standing to challenge contracts with non-party business in this lawsuit. Plaintiffs rely on *Daniel v. American Board of Emergency Medicine* to argue that they have standing to "seek to forbid exclusivity," but in that case, unlike here, the defendants were actually a *party* to the unlawful arrangement at issue. 428 F.3d 408, 441 (2d Cir. 2005) (citation omitted); Opp. at 14. Likewise, none of the other cases Plaintiffs cite say anything about the ability of a plaintiff to obtain an injunction against a contract involving a non-party. *See Apple Inc. v. Pepper*, 587 U.S. 273 (2019); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979).

1    rules and procedures would govern resolution of their disputes, even though none of those

2    consumers or businesses are before the Court. Courts are ill-equipped to "assume the day-to-

3    day controls characteristic of a regulatory agency" by somehow overseeing a wholesale

4    rewrite of such rules. *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S.

5    398, 415 (2004) (citation omitted). All of Plaintiffs' claims should be dismissed because

6    Plaintiffs do not have standing to pursue the relief they seek.

7    **V.    The Court Should Reject Plaintiffs Stephanie Stephens' and William Hilton's**
         **Attempts to Relitigate the Arbitrability of Their Claims.**

8

9        While Plaintiffs argue that Plaintiffs Stephens and Hilton do not seek to relitigate the

10   arbitrability of their claims, Plaintiffs' requested relief appears to be precisely that—to enjoin

11   mandatory arbitration provisions and obtain damages based on the supposed superior outcome

12   Plaintiffs might obtain with a different arbitration service. Opp. at 16. To the extent Plaintiffs

13   intend for that relief to extend to only *future* arbitrations involving Stephens and Hilton,

14   Plaintiffs have alleged no such arbitrations, and therefore, as discussed above, neither

15   Stephens nor Hilton (nor any Plaintiff for that matter) has standing to pursue such claims. *See*

16   *Lujan*, 504 U.S. at 560–61. Regardless, courts already have found that Stephens and Hilton

17   are bound to mandatory arbitration provisions just like the ones they challenge here, and

18   therefore they are foreclosed from collaterally attacking that determination in another forum.

19   Motion at 16. Their claims should be dismissed.

20                                    **CONCLUSION**

21       For the foregoing reasons, the AAA respectfully requests that the Court dismiss all of

22   Plaintiffs' claims with prejudice and award AAA the fees and costs incurred in defending

23   Plaintiffs' claims pursuant to Ariz. Rev. Stat. § 12-3014(E); N.C. Gen. Stat. Ann. § 1-

24   569.14(e); Wash. Rev. Code § 7.04A.140(5); and W. Va. Code § 55-10-16(e).

25

26

27

28

1

2      RESPECTFULLY SUBMITTED this 12th day of August, 2025.

3                                           **DICKINSON WRIGHT PLLC**

4                                           */s/ Joshua Grabel*

5                                           Joshua Grabel (AZ Bar No. 018373)
                                            Eric Bryce Kessler (AZ Bar No. 032182)
6                                           1850 N. Central Avenue, Suite 1400
                                            Phoenix, AZ 85004
7                                           (602) 285-5000
                                            (844) 670-6099 fax
8                                           jgrabel@dickinsonwright.com
9                                           bkessler@dickinsonwright.com

10                                          **HOGAN LOVELLS US LLP**
11                                          Justin Bernick (Admitted *Pro Hac Vice*)
                                            555 Thirteenth Street, N.W.
12                                          Washington, DC 20004-1109
                                            (202) 637-5600
13                                          Justin.bernick@hoganlovells.com

14
                                            ***Attorney for Defendant American***
15                                          ***Arbitration Association, Inc.***

16
                               **CERTIFICATE OF SERVICE**
17

18
           I certify on the 12th day of August, 2025, I electronically transmitted the attached document
19
     to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic
20
     Filing to all counsel of record.
21

22                                          */s/ Joshua Grabel*

23

24

25

26

27

28