WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Stephanie Stephens, *et al.*, | No. CV-25-01650-PHX-JJT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| American Arbitration Association Incorporated, | |
| Defendant. | |

At issue is the Motion to Dismiss (Doc. 14, MTD) filed by Defendant American Arbitration Association Inc. ("AAA"), to which Plaintiffs Stephanie Stephens, Joelle Nole, William Hilton, and Eugenie Balogun filed a Response (Doc. 18, Resp.), and Defendant filed a Reply (Doc. 22, Reply). The Court resolves the Motion without oral argument. LRCiv 7.2(f).

I.    BACKGROUND

In their First Amended Class Action Complaint (Doc. 11, FAC), Plaintiffs—residents of Arizona, West Virginia, Washington, and North Carolina—allege they entered into arbitration agreements with third parties in which the sole choice of forum for dispute resolution with those third parties was the AAA. (FAC ¶¶ 271–72, 280, 287, 291.) Plaintiffs further allege that, as a result of its business practices, the AAA has "obtained over 90% of the consumer arbitration market" and "is the only forum available to consumers in a staggering 63% of the one hundred twenty-three consumer agreements [Plaintiffs'] counsel reviewed," leaving consumers little to no choice of arbitral forum. (*E.g.*, FAC at 1–6.)

Plaintiffs, on behalf of a putative class and subclasses, now raise eight claims against the AAA based on violations of: (1) the Sherman and Clayton Antitrust Acts; (2) the Arizona Antitrust Act; (3) the Arizona Constitution; (4) the West Virginia Antitrust Act; (5) the West Virginia Unfair and Deceptive Acts and Practices Act; (6) the Washington Antitrust Act; (7) Washington's Unfair and Deceptive Acts and Practices Law; and (8) North Carolina's Unfair and Deceptive Acts and Practices Law. (FAC ¶¶ 359–440.) Defendant now moves to dismiss the FAC for failure to state a claim.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*,

556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.   ANALYSIS

### A.   Monopoly Claims (Counts 1–4, 6)

#### 1.   Adequacy of Allegations

The AAA first argues that Plaintiffs fail to state an antitrust claim. (MTD at 3–9.) In the FAC, Plaintiffs contend that the AAA's conduct is monopolistic such that it violates the Sherman and Clayton Antitrust Acts and Arizona and Washington state law. (FAC ¶¶ 359–400, 415–23.) Plaintiffs base these claims on allegations that, in sum, describe a scenario in which (1) the AAA induces corporate entities to use it as their chosen arbitral forum by promulgating rules and providing arbitration results favorable to them (and therefore unfavorable to consumers), employing partial arbitrators, and offering below market pricing—which the AAA sustains by, among other things, underpaying its arbitrators, resulting in a sub-standard arbitral process; and (2) in the arbitration agreements consumers must enter into to do business with corporate entities, the corporate entities provide that the AAA is the sole choice of arbitral forum for dispute resolution with consumers, which provision is proposed by the AAA itself. The result is a lack of choice of arbitral forum for consumers, who are injured by, among other things, arbitration decisions that tend to favor the corporate entities.

In Count 1 of the FAC, Plaintiffs bring a claim under Section 2 of the Sherman Act, which makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business

acumen, or historic accident." *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 481 (1992).

Plaintiffs bring analogous antitrust claims against the AAA under state law in Count 2 (Arizona Antitrust Act), Count 3 (Arizona Constitution), Count 4 (West Virginia Antitrust Act), and Count 6 (Washington Antitrust Act). As the AAA points out (MTD at 5 n.2) and Plaintiffs do not contest, case law from Arizona, West Virginia, and Washington indicates that the antitrust analysis under the laws of those states is no different than that under the Sherman and Clayton Acts. *See Wedgewood Inv. Corp. v. Int'l Harvester Co.*, 613 P.2d 620, 623 (Ariz. Ct. App. 1979) ("[T]he Arizona legislature clearly intended to strive for uniformity between federal and state antitrust laws."); *Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 328 S.E.2d 144, 156 (W.Va. 1984) (finding West Virginia law and Sherman Act do not conflict); *MiniFrame Ltd. v. Microsoft Corp.*, 551 F. App'x 1, at *3 (2d Cir. 2013) (finding analysis under Washington Antitrust Act and Sherman Act the same). Thus, at this stage, the Court will analyze all five of these claims together under the Sherman and Clayton Acts.

With regard to the first element of Plaintiffs' claim under § 2 of the Sherman Act—monopoly power in the relevant market—the AAA states in its Motion that it "disputes Plaintiffs' position that it somehow possesses monopoly power in a purported consumer arbitration market (to the extent that such a market even exists), given the wide variety of formal and informal dispute resolution procedures available to consumers." (MTD at 4.) But the AAA goes no further in its briefing to challenge the adequacy of Plaintiffs' allegations regarding the AAA's monopoly power in the consumer arbitration market—the question before the Court at this stage. To meet this element, Plaintiffs allege in detail that, from 2010 to 2024, 94% of consumer arbitrations were filed with the AAA, 5% were filed with Judicial Arbitration and Mediation Services, Inc. (JAMS), and the other 1% was filed with other arbitration services. (FAC ¶¶ 72–84.) Plaintiffs have thus adequately alleged the AAA's monopoly power in the consumer arbitration market. *See, e.g.*, *United States v.*

*Grinnell Corp.*, 384 U.S. 563, 571 (1966) (concluding 87% of a relevant business market "leaves no doubt" that a defendant has monopoly power).

As for the second element of Plaintiffs' Sherman Act claim, the AAA construes the FAC to allege the AAA willfully acquired monopoly power through predatory pricing—a theory Plaintiffs mention at several points in the FAC.[1] (*E.g.*, FAC ¶ 18 ("The Sherman Act condemns predatory pricing when it poses a dangerous possibility of actual monopolization.").) In its Motion, the AAA demonstrates Plaintiffs' factual allegations are insufficient to support such an antitrust theory. (MTD at 3–8.) Plaintiffs do not disagree but respond that they are not basing their claims on a predatory pricing theory; they argue that low pricing is but one step in the AAA's scheme to acquire monopoly power and that their allegations in the FAC go further. (Resp. at 7–13.)

Specifically, Plaintiffs point to their allegations that, because the arbitral forum is almost always chosen by the corporate entity by way of an arbitration agreement it requires a consumer to enter into, the AAA uses low pricing—sustained in part by underpaying its arbitrators, leading to sub-standard arbitration results—combined with employing a "biased roster" of arbitrators and procedural rules favoring corporate entities (and disfavoring consumers) to obtain most of the consumer arbitration market. (Resp. at 8–11.) Considering just these allegations, the Court would agree with the AAA that they demonstrate competitive behavior, not anticompetitive behavior. (*E.g.*, MTD at 4 (citing, *inter alia*, *Brooke Grp. Ltd*, 509 U.S. at 224–26 ("To hold that the antitrust laws protect competitors from the loss of profits due to such price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. The antitrust laws require no such perverse result.") (quotation and citation omitted)).) While the allegations that the AAA is not a neutral forum, but rather one that systematically favors corporate entities, plausibly describe an injustice and a potential violation of § 10(a)(2) of

---

[1] To recover on a theory of predatory pricing, a competitor must show (1) its "rival's low prices are below an appropriate measure of the rival's costs," and (2) its rival has "a dangerous probability of recouping its investment in below-cost prices" through the ability to raise prices "above a competitive level" after competitors are excluded. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224–26 (1993).

the Federal Arbitration Act (FAA), they do not by themselves give rise to an antitrust claim.[2]

But Plaintiffs also allege that the AAA employs exclusive dealing clauses in proposed arbitration agreements to exclude its competition. (Resp. at 9–10.) Specifically, Plaintiffs allege that "the AAA offers various tools on its website to create arbitration clauses that select only the AAA as the arbitral forum for all disputes, including an AI Tool and sample arbitration clauses" (FAC ¶ 241); and the "AAA has created a forum that allows companies to require, via adhesion contracts, that consumers agree to unique "Consumer Rules" to arbitrate disputes that arise in consumer contracts," and "[m]ost credit cards, cell phones, all three major credit reporting agencies, and most major telecommunications companies have designated AAA 'Consumer Rules' as the sole forum to arbitrate disputes that arise from the services provided and/or any other dispute that arises between the consumer and the company" (FAC ¶¶ 58–59). As a result, 61 of 103 credit card agreements Plaintiffs examined include an AAA-exclusive arbitration provision (FAC ¶ 229), as do all five of the major U.S. cellphone providers' agreements (FAC ¶ 230), seven of the eight internet providers' agreements in West Virginia and North Carolina (FAC ¶ 231); and all three of the credit reporting agencies' agreements (FAC ¶ 232). In total, 63% of the arbitration agreements Plaintiffs surveyed, with a higher percentage in some major consumer markets, contain AAA-exclusive arbitration provisions. (FAC ¶ 235.)

Plaintiffs' allegations of the AAA's influence on its corporate entity customers' use of exclusivity clauses in arbitration agreements are sufficient for the Court to plausibly infer the AAA is engaged in anticompetitive conduct by way of its influence in blocking its competitors' access to the consumer arbitration market. *See Eastman Kodak*, 504 U.S. at 483 (finding anticompetitive conduct where Kodak pressured its suppliers and distributors not to sell to competitors); *Lorain Journal Co. v. United States*, 342 U.S. 143, 152–54 (1951) (concluding that, where a company with monopoly power pressured its customers to boycott competition, it violated section 2 of the Sherman Act); *United States*

---

[2] Section 10(a)(2) of the FAA provides that a district court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them."

*v. Dentsply Int'l, Inc.*, 399 F.3d 181, 189–92 (3d Cir. 2005) (finding that blocking competitors' access to customers was anticompetitive conduct in violation of § 2 of the Sherman Act). Consumers such as Plaintiffs are injured because, according to Plaintiffs' allegations, arbitration results in the AAA favor corporate entities and disfavor consumers, but consumers cannot take their cases to an alternative arbitral forum such as JAMS because of the arbitration agreements they were required to sign that, under the influence of the AAA, provide that the AAA is the exclusive arbitral forum.

The AAA argues Plaintiffs' allegations are not sufficient to raise an exclusive dealing claim because the AAA is not a party to the agreements between the corporate entities and Plaintiffs providing the AAA as the exclusive arbitral forum. (Reply at 6–7.) But Plaintiffs' allegations raise the plausible inference that the AAA heavily influences the corporate entities to include exclusivity provisions in their arbitration agreements, including by way of providing to them sample arbitration clauses, an AI Tool, and Consumer Rules (FAC ¶¶ 58–59, 241), in combination with attracting and keeping the corporate entities' business by providing favorable arbitration results to them at a low cost. These allegations are sufficient at the pleading stage to show the AAA's willful acquisition of monopoly power.

The AAA also contends that the FAC's factual allegations are insufficient to support Plaintiffs' theory of anticompetitive conduct because "they have not alleged the percentage of the alleged relevant market for 'consumer arbitrations' throughout the entire United States that AAA's competitors cannot access as a result of exclusive arbitration provisions." (Reply at 8.) But Plaintiffs provide data going to the number of arbitration agreements containing AAA-exclusive arbitration provisions in substantial, representative consumer market segments, and the Court finds those allegations sufficient at this stage of the litigation. (*E.g.*, FAC ¶¶ 229–35.) For all these reasons, the Court finds Plaintiffs have stated an antitrust claim in Counts 1-4 and 6.

. . .

. . .

### 2. Arbitral Immunity

The AAA next argues that Plaintiffs' claims are barred by the doctrine of arbitral immunity. (MTD at 12–14, 16.) As Plaintiffs point out (Resp. at 22–24), in the FAC, they expressly do not seek to challenge the AAA's handling of their arbitrations or to relitigate those arbitrations. (*E.g.*, FAC ¶ 11.) Rather, they seek damages and injunctive relief solely related to lack of choice of the arbitral forum. (*E.g.*, FAC ¶ 128.) Arbitral immunity "extends to claims that arise out of a decisional act and exists to 'protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants,'" *Sacks v. Dietrich*, 663 F.3d 1065, 1069 (9th Cir. 2011) (internal quotation and citation omitted), and those interests are not at issue here.

As stated *supra*, the Sherman Act claim Plaintiffs raise in the FAC is premised on the allegedly anticompetitive conduct by the AAA as an entity—not the individual decision-makers—in attracting and keeping corporate entities as customers by, among other things, putting procedural rules into effect that are favorable to corporate entities and employing biased arbitrators, and then strongly influencing those corporate entities' use of arbitration agreements providing that the AAA is the exclusive arbitration forum, to the exclusion of the AAA's competitors and the detriment of consumers. That conduct is distinct from that of the individual decision-maker in an individual arbitration. As such, arbitral immunity does not apply to Plaintiffs' claims. Likewise, for the same reasons, the claims of Plaintiffs Stephanie Stephens and William Hilton are mischaracterized by the AAA; they are not attempts to "relitigate the arbitrability of their claims." (*E.g.*, MTD at 16–17.) According to the FAC, all four Plaintiffs in this matter and the putative class members they represent seek to challenge their lack of choice in arbitral forum by way of the AAA's alleged anticompetitive conduct.

### 3. Standing

The AAA also contends that Plaintiffs lack standing to bring their antitrust claims. (MTD at 14–16.) "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The doctrine of

standing "limits the category of litigants empowered to maintain a lawsuit in federal court" so that the judiciary remains a forum for the adjudication of legal disputes rather than an alternative to the political arena. *Id.* The Supreme Court's "cases have established that the 'irreducible constitutional minimum' of standing consists of three elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Antitrust law confers standing not only on competitors injured by anticompetitive conduct, but on any party injured in their "business or property" by way of the anticompetitive conduct. 15 U.S.C. § 15; *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019). To begin with, Plaintiffs have alleged sufficient facts that their damages in having no choice of an arbitral forum are actual, and the Court can also infer from the allegations that Plaintiffs as consumers subject to exclusionary clauses in their arbitration agreements are subject to imminent harm. The AAA argues that Plaintiffs' injury is speculative because "Plaintiffs allege no facts showing how lack of 'choice' of arbitration provider (as opposed to a different outcome in their 'individual case') caused any 'concrete and particularized' harm whatsoever." (MTD at 14.) But, again, while Plaintiffs' claimed damages are related to arbitration outcomes, the gravamen of their antitrust claims is the AAA's structural, systematic anticompetitive conduct by way of the alleged scheme that first attracts corporate entities as customers through, among other things, procedural rules favorable to them (and unfavorable to consumers) and biased (and underpaid) arbitrators, and then influences those corporate entities to place exclusionary clauses in arbitration agreements consumers must enter into to do business with the corporate entities, resulting in a lack of choice of arbitral forum  to consumers. Plaintiffs allege that harm to them is measured in part by, for example, comparing the likelihood of obtaining arbitration results favorable to

consumers in the AAA—27%—with that in JAMS—40%. (FAC ¶¶ 187–88.) The Court agrees with Plaintiffs that they have adequately alleged an injury in fact from the AAA's alleged monopoly in the form of lost money by way of a deprivation of "the advantages which they derive from competition." *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 785 (1975). Plaintiffs have also adequately alleged facts to show that the injury in fact is not speculative, that it is fairly traceable to the AAA's alleged anticompetitive conduct, and it is likely to be redressed by a favorable outcome in this litigation.

For all the reasons set forth *supra*, the Court will deny the AAA's motion to dismiss Plaintiffs' antitrust claims.

### B. State Law Unfair and Deceptive Acts and Practices Claims (Counts 5, 7, 8)

Plaintiffs also bring claims under the Unfair and Deceptive Acts and Practices statutes of three states—West Virginia, Washington, and North Carolina. (FAC ¶¶ 401–14, 424–40.) In those claims, Plaintiffs contend the AAA engages in unfair or deceptive business practices in trade or commerce in violation of the three states' laws, where courts are guided by the policies of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), in interpreting those laws. W.Va. Code § 46a-6-104; RCW 19.86.020; N.C. Code § 75-1.1(a). In support of their claims, Plaintiffs point to allegations in the FAC of the AAA's "use of restrictive rules in consumer arbitrations, arbitrator compensation way below market rates, lack of arbitrator strikes, and employment of predominantly corporate defense counsel as arbitrators" (FAC ¶¶ 407, 427, 435); as well as related allegations that the AAA "publicly promotes a 'Consumer Due Process Protocol' promising a 'Fundamentally Fair Process,' an 'Independent and Impartial Neutral,' and arbitrator-supervised exchange of information, while operating a system that denies strike lists, pays arbitrators at levels that deter capable neutrals, and uses a biased roster—conduct that misleads consumers about the fairness of the forum" (Resp. at 21–22 (citing FAC ¶¶ 34–52)). Plaintiffs argue that "[t]hese allegations state a deceptive practice under [the statute] because representations need only

have the capacity to mislead—notwithstanding technical accuracy in the abstract." (Resp. at 22 (citing *Marshall v. Miller*, 302 N.C. 539, 548–55 (1981)).)

The AAA contends Plaintiffs' claims fail because the allegations in the FAC do not lead to the plausible inference that the AAA's practices are unfair. (*E.g.*, MTD at 10.) But as the Court discussed *supra*, Plaintiffs have sufficiently alleged that, among other things, the AAA employs biased arbitrators and, for example, that consumers obtain favorable results in only 27% of AAA arbitrations, as compared to the 40% success rate in JAMS arbitrations. (FAC ¶¶ 187–88.) These and the related allegations are sufficient to raise the plausible inference of unfairness, such that the AAA's representations had the capacity to deceive the public under the statutes. W.Va. Code § 46a-6-101(1); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785 (1986); *Marshall*, 302 N.C. at 548.

The AAA also argues Plaintiffs' injury from any alleged unfairness was "reasonably avoidable" because Plaintiffs voluntarily entered into arbitration agreements with corporate entities whereby the AAA's rules and practices they now complain of became applicable to them. (*E.g.*, MTD at 10.) This argument ignores Plaintiffs' allegations of a lack of choice in arbitral forum and adhesion contracts presented on a take-it-or-leave-it basis. As but one example, if a consumer enters into a commercial relationship with a credit reporting agency, which requires entering into an arbitration agreement with the credit reporting agency, Plaintiffs allege that the arbitration agreements of all three credit reporting agencies provide the AAA as the exclusive arbitral forum (FAC ¶¶ 59, 232)— which provision's inclusion in the arbitration agreement Plaintiffs allege the AAA influences through multiple means. Thus, according to Plaintiffs' allegations, a consumer has no choice in the arbitral forum for the resolution of any dispute with a credit reporting agency. In such an instance, the alleged unfairness in the AAA's practices—and the related capacity to deceive the public—is not reasonably avoidable by a consumer. *See, e.g.*, *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024) (applying 15 U.S.C. § 45(n)). Similarly, Plaintiffs allege that they had no choice other than the AAA arbitral

- 11 -

forum, and they have alleged sufficient facts to raise the inference that their injury was not reasonably avoidable. (FAC ¶ 128.)

Finally, the Court agrees with Plaintiffs that they have adequately alleged that the AAA's deceptive practices "offend[] established public policy protecting the integrity of the dispute-resolution processes." (Resp. at 22 (citing *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000)).) Moreover, Plaintiffs' claims aiming to ensure "basic fairness" in the AAA's practices "furthers the FAA's goal of a fair arbitration process." (Resp. at 22.)

For these reasons, the AAA has not demonstrated to the Court that it should dismiss Plaintiffs' state law Unfair and Deceptive Acts and Practices claims for failure to state a claim, and those claims will go forward.

**IT IS THEREFORE ORDERED** denying Defendant's Motion to Dismiss (Doc. 14). Defendant shall answer the First Amended Class Action Complaint (Doc. 11) within the time set forth in the Federal Rules of Civil Procedure.

Dated this 31st day of March, 2026.

Honorable John J. Tuchi
United States District Judge

- 12 -