JUSTIN BERNICK (Pro Hac Vice)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
justin.bernick@hoganlovells.com

JOSH GRABEL (AZ State Bar No. 018373)
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue
Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5046
jgrabel@dickinsonwright.com

***Attorneys for Defendant American
Arbitration Association, Inc.,***

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Stephens; Joelle Nole; William Hilton; and Eugenie Balogun, *Individually and on behalf of all others similarly situated,* <br><br> Plaintiffs, <br><br> V. <br><br> American Arbitration Association, Inc., <br><br> Defendant. | Case No.: 2:25-cv-01650-PHX-JJT <br><br> **ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Defendant the American Arbitration Association, Inc., (the "AAA") by its attorneys, Dickinson Wright PLLC and Hogan Lovells US LLP, as and for their Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint (the "Complaint"), admits, denies and alleges as follows:

## INTRODUCTION

This case is about the predatorial behavior of an arbitration association in its attempt to race to the bottom of the barrel of justice to corner the market on consumer arbitrations. The cost of this injustice to consumers throughout the country cannot be understated. Through practices that include cut-rate pricing on arbitrations that do not adequately reflect the actual cost of neutral proceedings, rules that encourage corporations to provide only one choice in arbitral forums by disallowing discovery into corporations tactics, and shockingly abysmal outcomes for consumers, the American Arbitration Association, Inc. ("AAA") has **obtained over 90% of the consumer arbitration market** and created an illegal monopoly in consumer arbitrations. AAA's monopoly harms competition and consumers by ensuring consumers have no choice in choosing between arbitration forums or even what arbitrator AAA assigns them.

As a result, consumers who have valid claims, retain counsel, and file a claim in the AAA lose 73% of the time nationally and in North Carolina[1] and 89% of the time in West Virginia, for instance. In fact, a consumer would have to be desperate given to their opponents. In all the arbitrations **consumers filed** in West Virginia, consumers have been

---

[1] The national consumer loss rate at the AAA is an identical 73%. [*PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT*]

awarded only $5,915 after final hearings. However, businesses in consumer-filed West Virginia arbitrations have been awarded $60,840 - ten times the amount awarded to consumers.

Consumer arbitration is one of several different areas in which the AAA offers arbitration services. The AAA's consumer rules state "These Rules were drafted and designed to be consistent with the minimum due process principles of the Consumer Due Process Protocol." See AAA Consumer Rules p. 1, available at https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (accessed March 24, 2024). The Consumer Due Process Protocol has fifteen principles and attempts to explain the arbitration process to consumers. See AAA Consumer Due Process Protocol, available at https://www.adr.org/sites/default/files/document_repository/ Consumer%20Due%20Process%20Protocol%20(1).pdf (accessed March 24, 2024). Pursuant to these protocols, arbitration is defined as: "...a process in which parties submit disputes to a neutral third person or persons for a decision on the merits..." *Id* at 7. Principle one is titled "Fundamentally Fair Process" and states that "All parties are entitled to a fundamentally fair ADR process. As embodiments of fundamental fairness, these Principles should be observed in structuring ADR Programs."

The American Arbitration Association now dominates approximately 94% of the private consumer arbitrations in America. The American Arbitration Association is the only forum available to consumers in a staggering 63% of the one hundred twenty-three consumer

agreements counsel reviewed prior to filing this complaint.[2] Notably, the AAA is the only forum available to consumers in all five of the top cell phone companies in the United States by subscriber volume,[3] in eight of the nine largest telecoms in West Virginia and North Carolina,[4] in all three of the major credit reporting agencies,[5] and in four of the five most popular payment apps, such as Zelle, PayPal, and others.[6] This is just the tip of the iceberg.

Through its anticompetitive practices, the American Arbitration Association has created a monopolistic second-tiered justice system that provides consumers with no choice in the forum, the arbitrator, or rules. Instead, there is only one consistent rule: consumers lose 76% of the time in arbitrations they initiate. This is done intentionally through draconian rules, cut-rate arbitrations, and the selection of predominantly corporate defense counsel, as opposed to retired judges, to act as arbitrators. These practices make the American Arbitration Association extremely attractive to businesses who are no doubt thrilled to have a place where, no matter how much consumer litigation is conducted, consumers will be awarded a measly $5,915 amongst all

---

[2] See list of credit card contracts starting on page 41 infra. [***PLAINTIFF'S ORIGINAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

[3] AT&T, T-Mobile, Verizon, Boost Mobile, and US Cellular. [***PLAINTIFF'S ORIGINAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

[4] Spectrum, Frontier, Google Fiber, AT&T Fiber, Verizon Fiber, T-Mobile Home Internet, Optimum, and Starlink. [***PLAINTIFF'S ORIGINAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

[5] Equifax, TransUnion, and Experian. [***PLAINTIFF'S ORIGINAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

[6] The CFPB defines General Use Consumer Payment applications on the website here: https://www.consumerfinance.gov/rules-policy/final-rules/defining-larger-participants-of-a-market-for-general-use-digital-consumer-payment-applications/ (accessed March 20, 2025). Plaintiff adopts this definition for the purposes of this complaint. [***PLAINTIFF'S ORIGINAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

their arbitrations in an entire state.[7] This massive loss rate will only increase if the American Arbitration Association's new proposed consumer rules are implemented, requiring cases with less than $50,000 to be tried on the papers by "desk arbitration." See Exhibit 5, Proposed American Arbitration Association Rules, R. R-36 p. 17. In a forum that does not allow for discovery in any consumer case, the final hearing is often the only place to obtain the facts of the case, and the AAA wants to take that away as well. *Id.*

Throughout this complaint, Plaintiff will compare the American Arbitration Association to JAMS (available at www.jamsadr.com).[8] JAMS is the second largest forum that accepts consumer arbitrations in the relevant geographic area of the United States of America. However, conflating AAA and JAMS as "competitors" would be misleading. AAA manages an astounding 94% of all consumer arbitrations filed in the United States of America over the previous seven-year period. The other smattering of arbitral forums in the United States accepting consumer arbitrations represented only 5% percent of the 158,733 consumer arbitrations filed in the United States. JAMS, the second largest provider, constitutes 5% of arbitrations, and the only other forum discovered, NAM, constitutes .0003%.

The AAA swallowed the United States consumer arbitration market by charging business cut-rate fees that significantly limit how much arbitrators can charge and earn

---

[7] West Virginia. [***PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

[8] The plaintiff is not taking the position that JAMS is a good forum, and instead would argue that none of the arbitral forums that are available in America compared to the state and federal courts in quality and capability. [***PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

handling consumer arbitrations through ultra-low hard caps on pay. They also severely restrict the rights of consumers to discover their arbitrations and ensure that the success rate of consumer arbitrations is astronomically low. In West Virginia, only 11% of consumers win their arbitrations at the final hearing in the AAA.

Few arbitrators will spend the time on a complex consumer arbitration to understand it for the meager $2,500 that the AAA capped cases at during most of the class period.[9] What's more, that number dropped to half or $1,250 for settled cases, which is far below the norm for other arbitrations, including the average of $5,572 for JAMS consumer arbitrators that settle before hearing or summary judgment and $27,315.51 for cases after a final hearing. Neutral forums, like JAMS, allow arbitrators to charge their hourly rate. What's more, it is only in consumer arbitrations the AAA caps the arbitrator fees. In all other types of AAA arbitrations, including Employment, Construction, Corporate, Healthcare, and Labor, the AAA arbitrator is paid his or her hourly rate no matter what it is, the same as JAMS. AAA's "Consumer Rules" are an outlier even within AAA's arbitration business.

The practice of limiting arbitrator fees to $2,500 a day and $1,250 for settled cases discourages experienced and competent legal professionals from joining the AAA consumer

---

[9] In January of 2024, this year the AAA started allowing a capped fee of $300 per hour instead of the previous per case amount for consumer arbitrations. Consumer arbitrations are the only cases subject this cap, and it is believed to be about half of the average compensation of arbitrators at other forums. See How Much Does Arbitration Coase, ADR Times, available at https://adrtimes.com/how-much-does-arbitration-cost/ (accessed Oct. 29, 2024) ("Currently, surveys show that arbitrators charge between $375 and $1,125 an hour with the midpoint being around $600.") [**PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT**]

case panels. The AAA's current low cap of $300 an hour continues to discourage competent arbitrators from joining the AAA, where the midpoint of arbitrator fees in the country is closer to $600 an hour, and because of AAA's monopolistic power arbitrators at other forums or attorneys who want to become arbitrators would have to lower their rates to approximately half the market rate to be competitive. Further, it discourages arbitrators from reading the pleadings, briefing, researching the law, understating the case, or doing their job. This is the first key to AAA's anticompetitive practice: marketing their arbitration services so far below the market standard that they effectively prevent fair competition. Other forums that offer arbitrators reasonable compensation for reading pleadings, conducting research, and gaining a sufficient understanding of the case are unable to compete.

Not only does this negatively impact consumers, but businesses that want to get a foothold in the door on consumer arbitration services cannot compete with the AAA's anticompetitive pricing and unusually restrictive rules while still maintaining a neutral arbitration service. AAA's anticompetitive pricing and unusually restrictive rules for consumer arbitration discourage entrants from the market and undercut the other forums that have some foothold.

*The two features that the AAA offers corporations are 1) unfairly low prices for arbitrators and 2) an unfair forum where consumers lose. These are the practices the AAA uses to maintain its monopoly, and the balance of this complaint is to illustrate this in more detail.*

**ANSWER**:

AAA denies the allegations in the Introduction of the Complaint.

**PARTIES**

1.      The Plaintiff, Stephanie Stephens, is a resident of Maricopa County, Arizona.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 1 of the Complaint, and therefore denies the same.

2.      The Plaintiff, William Hilton, is a resident of Putnam County, West Virginia.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 2 of the Complaint, and therefore denies the same.

3.      The Plaintiff, William Hilton, is a natural person who falls under the protection of Article 6 of the West Virginia Consumer Credit and Protection Act (herein "WVCCPA" and is entitled to the remedies set forth in Article 6 of the WVCCPA.

**ANSWER**:

Paragraph 3 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 3 of the Complaint, and therefore denies the same.

4.      The Plaintiff, Joelle Nole, is a resident of King County, Washington.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 4 of the Complaint, and therefore denies the same.

5. Plaintiff Joelle Nole is a person as defined by RCW 19.86.010(1) of the Revised Code of Washington and is entitled to the consumer protections in RCW 19.86.010 *et seq*.

**ANSWER**:

Paragraph 5 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 5 of the Complaint, and therefore denies the same.

6. The Plaintiff, Eugenie Balogun, is a resident of Cumberland County, North Carolina.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 6 of the Complaint, and therefore denies the same.

7. The Plaintiff, Eugenie Balogun, is a natural person entitled to the consumer protections of the North Carolina General Statutes § 75-1 *et seq*.

**ANSWER**:

Paragraph 7 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 7 of the Complaint, and therefore denies the same.

8.     The Defendant, American Arbitration Association, Inc. (hereinafter AAA)[10], is a corporation with its principal offices in New York, which does business nationwide.

**ANSWER**:

AAA admits that it is a non-profit corporation headquartered in New York, NY and that it does business nationwide. AAA denies the remaining allegations contained in Paragraph 8 of the Complaint.

<b><u>QUESTIONS PRESENTED & LIMITATIONS ON CLAIMS</u></b>

9.     The fundamental question presented by this case is not whether arbitration should exist as an institution in consumer cases but whether that game will be rigged to benefit a "non-profit" monopoly. For in a rigged game, Plaintiffs are "...fleeced like sheep..." (John Adams, *True Sentiments of America*, 1765.)

**ANSWER**:

AAA denies the allegations in Paragraph 9 of the Complaint.

10.     To be clear, Plaintiffs are not seeking damages for the conduct of the AAA in the handling or mishandling of any arbitration, including their own. This case is purely about choice. The unfair way the AAA handles consumer arbitrations and their abysmal outcomes for consumers is only presented in this complaint as evidence of both the negative outcome of AAA's monopoly and the second service they provide businesses, i.e., a forum where consumers always lose.

**ANSWER**:

AAA denies the allegations in Paragraph 10 of the Complaint.

11.     Arizona Plaintiff and putative class members are not asserting any claims, nor are they requesting any damages Plaintiffs may be entitled to, but for the existence of Arizona Code § 12-3001-12-3029.

---

[10] It is worth noting that the AAA is a non-profit organization and receives a tax benefit for its monopolistic services. [***PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

**ANSWER**:

Paragraph 11 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 11 of the Complaint.

12.     A business, even a "non-profit" one, taking action to create a monopoly is not acting in its capacity as an arbitration forum but merely as a business attempting to corner a market subset, in this case, consumer arbitrations.

**ANSWER**:

AAA denies the allegations in Paragraph 12 of the Complaint.

## **JURISDICTION**

13.     Jurisdiction is appropriate in this Court pursuant to the federal question arising under 15 USC § 4.

**ANSWER**:

Paragraph 13 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 13 of the Complaint.

14.     Jurisdiction is further proper pursuant to 28 USCS § 1367 as all the state claims are from the same nucleus of operative facts; in fact, the law in all states instructs the Court to look to federal jurisprudence to understand or interpret the state anti-monopoly provisions.

**ANSWER**:

Paragraph 14 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 14 of the Complaint.

## HISTORY OF MONOPOLY LEGISLATION

15.    Section 2 of the Sherman Act, 15 U.S.C. § 2, makes it an offense for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States...."

**ANSWER**:

Paragraph 15 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 15 of the Complaint.

16.    While § 1 of the Sherman Act forbids contracts or conspiracies in restraint of trade or commerce, § 2 addresses the actions of single firms that monopolize or attempt to monopolize, as well as conspiracies and combinations to monopolize.

**ANSWER**:

Paragraph 16 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 16 of the Complaint.

17.    The heart of the United States's national economic policy has long been faith in the value of competition. In the Sherman and Clayton Acts, as well as in the Robinson-Patman Act, Congress was dealing with competition, which it sought to protect, and

monopoly, which it sought to prevent. *Standard Oil Co. v. Fed. Trade Comm'n*, 340 U.S. 231, 248-49 (1951).

**ANSWER**:

To the extent the allegations in Paragraph 17 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 17 of the Complaint.

18.    The Sherman Act condemns predatory pricing when it poses a dangerous possibility of actual monopolization.

**ANSWER**:

Paragraph 18 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 18 of the Complaint.

19.    The essence of a claim under either the Sherman or Robinson-Patman statute is the same, namely that a business rival has unfairly priced its products with an objective to eliminate or retard competition and thereby gain and exercise control over prices in the relevant market.

**ANSWER**:

Paragraph 19 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statutes referenced in

this Paragraph speak for themselves and denies any characterization or description that are inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 19 of the Complaint.

20.    "[T]he principal objective of antitrust policy is to maximize consumer welfare by encouraging firms to behave competitively." *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 539(2013).

**ANSWER**:

To the extent the allegations in Paragraph 20 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 20 of the Complaint.

21.    "The Sherman Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress while at the same time providing an environment conducive to the preservation of our democratic political and social institutions." *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 4-5 (1958).

**ANSWER**:

To the extent the allegations in Paragraph 21 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 21 of the Complaint.

22.    "But even were that premise open to question, the policy unequivocally laid down by the Act is competition." *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 4-5 (1958).

**ANSWER**:

To the extent the allegations in Paragraph 22 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 22 of the Complaint.

23.    "[A]ntitrust law is concerned with influences that corrupt market conditions, not bargaining power. ... Any combination which tampers with price structures is engaged in an unlawful activity." *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 773 (2d Cir. 2016).

**ANSWER**:

To the extent the allegations in Paragraph 23 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 23 of the Complaint.

24.    Any anticompetitive act that is unresponsive to consumer preference is perhaps the most significant since "Congress designed the Sherman Act as a 'consumer welfare prescription.'" *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 107 (1984).

**ANSWER**:

To the extent the allegations in Paragraph 24 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 24 of the Complaint.

25.    "...[S]elling below cost, unless mitigated by some acceptable business exigency, was intended to be prohibited by the words 'unreasonably low prices.' That sales below cost without a justifying business reason may come within the proscriptions of the Sherman Act has long been established. Further, when the Clayton Act was enacted in 1914 to strengthen the Sherman Act, Congress passed § 2 to cover price discrimination by large companies which compete by lowering prices, `oftentimes below the cost of production ... with the intent to destroy and make unprofitable the business of their competitors.'" H.R. Rep. No. 627, 63d Cong., 2d Sess. 8.

**ANSWER**:

To the extent the allegations in Paragraph 25 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 25 of the Complaint.

26.    The 1936 enactment of the Robinson-Patman Act was for the purpose of 'strengthening the Clayton Act provisions,' and the Act was aimed at a specific weapon of the monopolist—predatory pricing. Moreover, § 3 was described by Representative Utterback, a House manager of the joint conference committee, as attaching 'criminal penalties in addition to the civil liabilities and remedies already provided by the Clayton Act.' 80 Cong. Rec. 9419." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 33-34rehig denied, 372 U.S. 961 (1963) (internal citations omitted).

**ANSWER**:

To the extent the allegations in Paragraph 26 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 26 of the Complaint.

27.    Many states have adopted similar statutes to protect marketplace competition.

**ANSWER**:

To the extent the allegations in Paragraph 27 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 27 of the Complaint.

28.    Arizona has made it illegal to establish, maintain, or use a monopoly. A.R.S. § 44-1403.

**ANSWER**:

Paragraph 28 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 28 of the Complaint.

29.    The Arizona Constitution, Article 14, Section 15, explicitly prohibits monopolies and trusts, providing:

> Monopolies and trusts shall never be allowed in this state and no incorporated company, co-partnership or association of persons in this state shall directly or indirectly combine or make any contract, with any incorporated company, foreign or domestic, through their stockholders or the trustees or assigns of such stockholders or with any co-partnership or association of persons, or, in any manner whatever, to fix the prices, limit the production, or regulate the transportation of any product or commodity. The legislature shall enact laws for the enforcement of this section by adequate penalties, and in the case of incorporated companies, if necessary for that purpose, may, as a penalty declare a forfeiture of their franchises.

**ANSWER**:

Paragraph 29 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 29 of the Complaint.

30.     West Virginia found that "prices below the cost thereof can result in economic maladjustments and tend toward the creation of monopolies, thereby destroying fair and healthy competition; therefore, the below-cost sale of goods with the intent to destroy or the effect of destroying competition is deemed an unlawful unfair trade practice." *W. Va. Code* § 47-11A-1(a).

**ANSWER**:

Paragraph 30 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is

inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 30 of the Complaint.

31.    The West Virginia Supreme Court of Appeals agreed that the state act "is a rational means of achieving the legitimate legislative goal of promoting healthy competition in this State by penalizing retailers and wholesalers that sell goods below cost in an attempt to destroy competition." Syl. Pt. 2, *Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W. Va. 538, 540, 328 S.E.2d 144, 146 (1984).

**ANSWER**:

To the extent the allegations in Paragraph 31 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 31 of the Complaint.

32.    North Carolina has similarly adopted a state act to "promote the vigorous enforcement of the antitrust laws ... for Chapter 75 violations will best advance the legislative intent that such violations be deterred, and that aggrieved consumers have a private cause of action to redress violations." *Hyde v. Abbott Lab'ys, Inc.*, 123 N.C. App. 572, 584, 473 S.E.2d 680, 688 (1996).

**ANSWER**:

To the extent the allegations in Paragraph 32 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 32 of the Complaint.

- 18 -

33.    Washington state has enshrined identical anti-monopoly protections in its Constitution:

> "Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership, or association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, through their stockholders, or the trustees or assignees of such stockholders, or with any copartnership or association of persons, or in any manner whatever for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity. The legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated companies, if necessary for that purpose, may declare a forfeiture of their franchises."

Wash. Const. art. XII, § 22

**ANSWER**:

To the extent the allegations in Paragraph 33 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 33 of the Complaint.

## **RELEVANT PRODUCT**

34.    The product, in this case, is consumer arbitrations.

AAA denies the allegations in Paragraph 34 of the Complaint.

**ANSWER**:

35.    To understand what a consumer arbitration is, where better to look than the AAA's own definitions in their consumer due process protocol,

> Arbitration is a process in which parties submit disputes to a neutral third person or persons for a decision on the merits. Each party has an opportunity to present evidence to the arbitrator(s) in writing or through witnesses. Arbitration proceedings tend to be more informal than court proceedings and adherence to judicial rules of evidence is not usually required. Arbitrators decide cases by issuing written decisions or "awards." An award may or may not be binding on the parties, depending on the agreement to arbitrate. A "binding" arbitration award may be enforced as a court judgment under the terms of federal or state statutes, but judicial review of arbitration awards is limited.

See AAA's Consumer Due Process Protocol at 7, available at https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf (accessed Sep. 4, 2024) (hereinafter "AAA's Consumer Due Process Protocol" and incorporated by reference into this complaint).

**ANSWER**:

To the extent the allegations in Paragraph 35 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 35 of the Complaint.

36.    A consumer is defined as: "Consumer refers to an individual who purchases or leases goods or services, or contracts to purchase or lease goods or services, intended primarily for personal, family or household use." *Id*. at 6.

**ANSWER**:

To the extent the allegations in Paragraph 36 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent

therewith or taken out of context. AAA denies the remaining allegations in Paragraph 36 of the Complaint.

37.    For those reasons, the consumer rules do not apply to employment, construction, or commercial cases, which have different rules in the AAA infrastructure.

**ANSWER**:

The AAA admits that it has certain rules that are specific to consumer arbitrations that do not necessarily apply to other types of arbitration, like employment, construction, and commercial arbitration cases.  AAA denies the remaining allegations in Paragraph 37 of the Complaint.

38.    There are 15 principles articulated in the AAA's Consumer Due Process Protocol.

**ANSWER**:

AAA admits there are fifteen principles articulated in the AAA's Consumer Due Process Protocol.

39.    The AAA's Consumer Due Process Protocol is explicitly referenced in the AAA's Consumer Arbitration Rules as "These Rules were drafted and designed to be consistent with the minimum due process principles of the Consumer Due Process Protocol." See AAA's Consumer Arbitration Rules p. 1, available at https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (accessed Sep. 4, 2024).

**ANSWER**:

To the extent the allegations in Paragraph 39 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent

- 21 -

therewith or taken out of context. AAA denies the remaining allegations in Paragraph 39 of the Complaint.

40.    Those principles are:
  A.    Principle 1. Fundamentally Fair Process
  B.    Principle 2. Access to Information Regarding the ADR Program
  C.    Principle 3. Independent and Impartial Neutral; Independent Administration
  D.    Principle 4. Quality and Competence of Neutrals
  E.    Principle 5. Small Claims
  F.    Principle 6. Reasonable Cost
  G.    Principle 7. Reasonably Convenient Location
  H.    Principle 8. Reasonable Time Limits
  I.    Principle 9. Right to Representation
  J.    Principle 10. Mediation
  K.    Principle 11. Agreements to Arbitrate
  L.    Principle 12. Arbitration Hearings
  M.    Principle 13. Access to Information
  N.    Principle 14. Arbitral Remedies
  O.    Principle 15. Arbitration Awards AAA's Consumer Due Process Protocols at 1-3.

**ANSWER**:

To the extent the allegations in Paragraph 40 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 40 of the Complaint.

41.    Principle 1 of the Consumer due process protocol is Fundamentally-Fair Process and states, "All parties are entitled to a fundamentally-fair ADR process. As embodiments of fundamental fairness, these Principles should be observed in structuring ADR Programs."

**ANSWER**:

To the extent the allegations in Paragraph 41 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 41 of the Complaint.

42.    The AAA's Consumer Due Process Protocol goes on to state in its "Introduction,"

> "Yet because consumer contracts often do not involve arm's length negotiation of terms, and frequently consist of boilerplate language presented on a take-it-or-leave it basis by suppliers of goods or services, there are legitimate concerns regarding the fairness of consumer conflict resolution mechanisms required by suppliers. This is particularly true in the realm of binding arbitration, where the courts are displaced by private adjudication systems. In such cases, consumers are often unaware of their procedural rights and obligations until the realities of out-of-court arbitration are revealed to them after disputes have arisen. While the results may be entirely satisfactory, they may also fall short of consumers' reasonable expectations of fairness and have a significant impact on consumers' substantive rights and remedies."

*Id*. at 4.

**ANSWER**:

To the extent the allegations in Paragraph 42 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 42 of the Complaint.

43.   In its "Reporter's Comments" elaboration on Principle 1 (Fundamentally Fair Process), the AAA states that,

> **Users of ADR are entitled to a process that is fundamentally fair**. Emerging standards governing consensual and court-connected ADR programs reflect pervasive concerns with fair process. See, e.g., III Ian R. Macneil, Richard E. Speidel, & Thomas J. Stipanowich, Federal Arbitration Law: Agreements, Awards & Remedies Under the Federal Arbitration Act '32.2.1 (1994) [hereinafter Federal Arbitration Law ] (noting "universal agreement" that arbitrators must provide parties with fundamentally-fair hearing). See also Kaiser Permanente Review and Recommendations 1 ("As the sponsor of a mandatory system of arbitration, Kaiser Permanente must assure a fair system to their members, physicians and staff.")
>
> "Where conflict resolution processes are defined by a written contract, that writing is often viewed by courts as the primary indicator of the "procedural fairness" for which the parties bargained. **As the Advisory Committee recognized, however, ADR agreements in most Consumer contracts are "take-it-or-leave-it" contracts which are not products of negotiation by Consumers**. See David S. Schwartz, Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitration, 1997 Wis. L. Rev. 33, 55-60 (discussing adhesion dimension of pre-dispute arbitration agreements in standardized contracts); Kaiser Permanente Review and Recommendations 28 (noting that many members of a major HMO have no realistic alternative for medical care). **It is possible, therefore, that contracts to which they have generally assented contain ADR Agreements which fall so far short of Consumers' reasonable expectations that they would not have entered into the agreement had they been aware of the provisions**. Thus, although these Principles attempt to enhance the likelihood that Consumers will have specific knowledge of ADR provisions at the time of contracting, the Advisory Committee also believed it necessary to describe a baseline of reasonable expectations for ADR in Consumer transactions. **These Principles identify specific minimum due process standards which embody the concept of fundamental fairness, including: informed consent; impartial and unbiased Neutrals; independent administration of ADR;**

**qualified Neutrals; access to small claims court; reasonable costs (including, where appropriate, subsidized Provider-mandated procedures); convenient hearing locations; reasonable time limits; adequate representation; fair hearing procedures; access to sufficient information; confidentiality; availability of court remedies; application of legal principle and precedent by arbitrators; and the option to receive a statement of reasons for arbitration awards**.

"**Where provisions in a standardized pre-dispute arbitration agreement fail to meet Consumers' reasonable expectations, there is authority for the principle that courts may properly refuse to enforce the arbitration agreement in whole or in part**. See Restatement (Second) of Contracts ' 211 (1981); Broemmer v. Abortion Services of Phoenix, Ltd., 173 Ariz. 148, 840 P.2d 1013 (1992) (standardized arbitration agreement was unenforceable where its terms fell beyond patient's reasonable expectations); Graham v. Scissor-Tail, Inc., 623 P.2d 165 (Cal. 1981) (arbitration clauses in adhesion contracts are unenforceable if they are contrary to the reasonable expectations of parties or unconscionable). Cf. Cole v. Burns International Security Services, 105 F.3d 1465 (D.C. Cir. 1997) (setting forth minimum due process standards for judicial enforcement of arbitration agreement in the context of a statutory employment discrimination claim where the employee was required to enter into the agreement as a condition of employment). Procedural fairness in Consumer arbitration CONSUMER DUE PROCESS PROTOCOL STATEMENT OF PRINCIPLES 9 | adr.orgagreements may also be policed under other principles. See, e.g., Stirlen v. Supercuts, 51 Cal. App. 4th Supp. 1519, 60 Cal. Rptr.2d 138 (1997) (finding remedial limits in "adhesive" employment agreement unconscionable); Engalla v. Permanente Med. Grp., 938 P.2d 903 (Cal. 1997) (arbitration agreement was unenforceable if there was substantial delay in arbitrator selection contrary to consumer's reasonable, fraudulently induced, contractual expectations).

"**Because the Principles in this Protocol represent a fundamental standard of fairness, waiver of any of these Principles in a pre-dispute agreement will naturally be subject to scrutiny as to conformity with the reasonable expectations of the parties and other judicial standards governing the enforceability of such contracts**. Assuming they

have sufficient specific knowledge and understanding of the rights they are waiving, however, Consumers may waive compliance with these Principles after a dispute has arisen."

*Id*. at p. 10 (emphasis added).

**ANSWER**:

To the extent the allegations in Paragraph 43 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 43 of the Complaint.

44.    Principle 3. Independent and Impartial Neutral states that,

> 44.    Principle 3. Independent and Impartial Neutral states that,
>
> Principle 3. Independent and Impartial Neutral; Independent Administration
>
> 1. *Independent and Impartial Neutral.* All parties are entitled to a Neutral who is independent and impartial.
> 2. *Independent Administration.* If participation in mediation or arbitration is mandatory, the procedure should be administered by an Independent ADR Institution. Administrative services should include the maintenance of a panel of prospective Neutrals, facilitation of Neutral selection, collection and distribution of Neutral's fees and expenses, oversight and implementation of ADR rules and procedures, and monitoring of Neutral qualifications, performance, and adherence to pertinent rules, procedures and ethical standards.
> 3. *Standards for Neutrals.* The Independent ADR Institution should make reasonable efforts to ensure that Neutrals understand and conform to pertinent ADR rules, procedures and ethical standards.
> 4. *Selection of Neutrals.* The Consumer and Provider should have an equal voice in the selection of Neutrals in connection with a specific dispute.
> 5. *Disclosure and Disqualification.* Beginning at the time of appointment, Neutrals should be required to disclose to the Independent ADR Institution any circumstance likely to affect impartiality, including any bias or financial or personal interest which might affect the result of the ADR proceeding, or any past or present relationship or experience with the parties or their representatives, including past ADR experiences. The Independent ADR Institution should communicate any such information to the parties and other Neutrals, if any. Upon objection of a party to continued service of the Neutral, the Independent ADR Institution should determine whether the Neutral should be disqualified and should inform the parties of its decision. The disclosure obligation of the Neutral and procedure for disqualification should continue throughout the period of appointment.

*Id*. at 11-12.

**ANSWER**:

To the extent the allegations in Paragraph 44 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 44 of the Complaint.

45.    The "Reporters Comments" to principle 3 state that,

> **The concept of a fair, independent and impartial Neutral (or Neutral Panel) is enshrined in leading standards governing arbitration and mediation**. See Federal Arbitration Act ' 10(a) (2); Uniform Arbitration Act ' 12(a) (2); AAA Commercial Rules 12, 13, 14, 19; BBB Arbitration Rules 6, 8. The Joint Standards for Mediators describe mediator impartiality as "central" to the mediation process and require mediators to conduct mediation in an impartial manner. Joint Standards for Mediators, Art. II; Standards for Court-Connected Programs ' 8.1.a. Similar policies animate standards requiring mediators to disclose conflicts of interest and to conduct the mediation in a fair manner. Joint Standards for Mediators, Arts. III, VI; SPIDR Principles, Principles 4.b., c., f.; 6.d., e., i.; Standards for Court-Connected Programs ' 8.1.b.
>
> **When Neutrals are appointed by a court or other organization, the appointing entity has an important obligation to ensure their impartiality. This obligation entails a reasonable level of oversight of Neutral performance**. Comments to the Joint Standards for Mediators indicate that "[w]hen mediators are appointed by a court or institution, the appointing agency shall make reasonable efforts to ensure that mediators serve impartially." Joint Standards for Mediators, Art. II. The Standards for Court-Connected Programs therefore require courts to "adopt a code of ethical standards for mediators [covering, among other things, impartiality and conflict of interest], together with procedures to handle violations of the code." Standards for Court-Connected Programs ' 8.1. For these and other reasons, the integrity and impartiality of the administrative organization is also important; the growing use of

arbitration and mediation in the Consumer context has also raised issues regarding the administration of such processes. See, e.g., Engalla v. Permanente Med. Grp., 928 P.2d 903 (Cal. 1997). See generally Edward Dauer, Engalla's Legacy to Arbitration, ADR Currents, Summer 1997, at 1; Principles for ADR Provider Organizations (setting forth general principles of responsible practice for ADR Provider Organizations, "entities which hold themselves out as offering, brokering or administering dispute resolution services").

In addition to appointing Neutrals, administering institutions often perform many functions which have a direct impact on the conduct of the dispute resolution process, including functions sometimes performed by Neutrals. **The consensus of the Advisory Committee was that the reality and perception of impartiality and fairness was as essential in the case of Independent ADR Institutions as it was in the case of individual Neutrals**. Thus, the Advisory Committee concluded that when an ADR Agreement mandates that parties resort to mediation or arbitration, the administering Independent ADR Institution should be independent of either party and impartial. See, e.g., Kaiser Permanente Review and Recommendations 31 (recommending, first and foremost, the "creation of an independent, accountable administrator" for the Kaiser Permanente arbitration system to counter "perception of bias" raised by "self-administration"). See also Principles for ADR Provider Organizations (draft standards for organizations providing ADR services). **For this and other reasons, this Principle may be the single most significant contribution of the Protocol. In the long term, moreover, the independence of administering institutions may be the greatest challenge of Consumer ADR**.

**Broad disclosure of actual or potential conflicts of interest on the part of prospective Neutrals is critical to the real and perceived fairness of ADR**. Although consenting parties have considerable freedom to choose Neutrals, including those with experience in a particular industry or profession, the key to informed consent is broad disclosure by prospective Neutrals. **Therefore, a long line of authority under federal and state arbitration statutes establishes the principle that an arbitrator's failure to disclose certain relationships or other facts which raise issues of partiality may result in reversal of**

- 28 -

**an arbitration award**. See generally III Federal Arbitration Law Ch. 28 (discussing legal and ethical rules governing arbitrator impartiality). The principle of disclosure is embodied in leading arbitration rules and ethical standards. See AAA Commercial Rule 19, NASD Code ' 10312; BBB Arbitration Rules 6, 8.

The Joint Standards for Mediators mandate disclosure of "all actual and potential conflicts of interest reasonably known to the mediator" including any "dealing or relationship that might create an impression of possible bias." Joint Standards for Mediators, Art. III. Thereafter, the mediator must await the parties' agreement to proceed with mediation. The same concerns require mediators to identify and avoid conflicts during (and even after) mediation. Id. Cf. Employment Due Process Protocol ' C.4. (mediators and arbitrators have a duty to disclose any relationship which might reasonably constitute or be perceived as a conflict of interest); SPIDR Principles, Principles 4.b., c., f.; 6.d.,e., i.; Standards for Court-Connected Programs ' 8.1.b.

**Although they did not establish it as a requirement under these Principles, most members of the Advisory Committee endorsed the concept of a "list selection" process similar to that employed by the AAA**. See AAA Commercial Rule 14. Under this process, the Independent ADR Institution provides each of the parties with lists of prospective Neutrals and invites the parties to identify and rank acceptable individuals. Mutually acceptable Neutrals are thereby identified. The AAA approach served as the model for other ADR standards. See, e.g., Employment Due Process Protocol ' C.3.; Securities Industry Conference on Arbitration, List Selection Rule (Final Draft, Sept. 18, 1997) (proposed by SICA as modification to Section 8 of the Uniform Code of Arbitration); Proposed Rule Change by National Association of Securities Dealers, File No. SR-NASD097 (proposed by NASD as modification to Rules 10310 and 10311 of the NASD Code of Arbitration Procedure). **The concern was expressed that the list selection approach may create a financial tie between Neutrals in the pool and Providers, who will be "repeat players" in the ADR Program. Such considerations may mandate, among other things, a larger panel of Neutrals, rotating assignments, or disclosure of past awards rendered by arbitrators**.

**In the interest of informed selection, the Advisory Committee recommends that parties be provided with or have access to**

**some information regarding recent ADR proceedings conducted by prospective Neutrals. Cf. Employment Due Process Protocol ' B.3 (recommending that parties be provided with names, addresses, and phone numbers of party representatives in a prospective arbitrator's six most recent cases to aid in selection)...**

**For selection of Neutrals, the Independent ADR Institution might utilize a list procedure similar to that used by the AAA.** The list of prospective Neutrals should include pertinent biographical information, including the names of parties and representatives involved in recent arbitration proceedings handled by the prospective Neutral. Cf. Employment Due Process Protocol 13.3 (recommending that parties be provided with names, addresses, and phone numbers of party representatives in a prospective arbitrator's six most recent cases to aid in selection). **Each party should be afforded discretion to reject any candidate with or without cause. Failing agreement on a Neutral or panel of Neutrals in this fashion, the Neutral should be appointed by the Independent ADR Institution, subject to objection for good cause**.

*Id*. at 11 — 14 (emphasis added).

**ANSWER**:

To the extent the allegations in Paragraph 45 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 45 of the Complaint.

46.    It is important to note that the AAA does NOT allow for the important consumer protection of list selection in consumer arbitrations, while it does in all other types of arbitration.

**ANSWER**:

- 30 -

AAA admits only that its Consumer Arbitration Rules provide that, "If the parties have not appointed an arbitrator and have not agreed to a process for appointing the arbitrator, the AAA will administratively appoint an arbitrator from [its] Roster," but denies the remaining allegations in Paragraph 46 of the Complaint.

47.    However, it is recommended list selection be used in its consumer due process protocols.

**ANSWER**:

AAA denies the allegations in Paragraph 47 of the Complaint.

48.    Principle 4. Quality and Competence of Neutrals states, "All parties are entitled to competent, qualified Neutrals. Independent ADR Institutions are responsible for establishing and maintaining standards for Neutrals in ADR Programs they administer."

**ANSWER**:

To the extent the allegations in Paragraph 48 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 48 of the Complaint.

49.    Further, the proposed new consumer rules for the AAA, attached as Exhibit 5, remove the right to a final hearing in front of the arbitrator for most cases by pegging the threshold to get a hearing at $50,000. See Exhibit 5, R. R–36, p. 17.

**ANSWER**:

To the extent the allegations in Paragraph 49 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources

speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 49 of the Complaint.

50.    Because the AAA does now allow for discovery in consumer arbitration cases, the final hearing is often the only opportunity that consumers have to gather any evidence in the case. Without the final hearing, the AAA becomes a full-fledged kangaroo court where Plaintiffs receive no information, and there is no consequence for it.

**ANSWER**:

AAA denies the allegations in Paragraph 50 of the Complaint.

51.    The "Reporters Comments" to Principle 4 states that,

> **Organizations providing ADR services for Consumer transactions should have a continuing obligation to monitor the quality of the services they provide**. This obligation requires that they establish and maintain standards for Neutrals within the program which are appropriate to the issues or disputes being addressed. **The SPIDR Commission on Qualifications calls upon private as well as public programs offering ADR services to set and monitor program performance**. See SPIDR Principles, Principle 6, at 3-4. Likewise, the Standards for Court-Connected Programs call upon courts to "ensure that the mediation programs to which they refer cases are monitored adequately...and evaluated [periodically]." Standards for Court-Connected Programs ' 6.0. **The most critical element in ADR quality control is the establishment and maintenance of standards of competence for Neutrals within the program**. "Competence" refers to "the acquisition of skills, knowledge and...other attributes" deemed necessary to assist others in resolving disputes in a particular setting. See SPIDR Report on Qualifications at 6. **In 1989, the SPIDR Commission on Qualifications published a list of general skills and areas of knowledge that should be considered by groups establishing competency standards**. See SPIDR Principles, Principle 11, at 4-7.

**While ensuring the competence of Neutrals is always important, it is particularly "critical in contexts where party choice over the process, program or neutral is limited" a reality of many Consumer ADR programs**. See SPIDR Report on Qualifications at 5; SPIDR Principles, Principle 3 at 2 (extent to which Neutral qualifications are mandated should vary by degree of choice parties have over dispute resolution process, ADR Program, and Neutral). **The SPIDR Commission on Qualifications requires private programs to, among other things, establish clear criteria for the selection and evaluation of Neutrals and conduct periodic performance evaluations**. SPIDR Principles at 3. See also SPIDR Report on Qualifications at 6 (Neutrals, professional associations, programs and Consumers should all have responsibility for addressing and assessing Neutral performance); American Bar Ass'n Young Lawyers Div. & Special Comm. On Alternative Means of Dispute Resolution, Resolving Disputes: An Alternative Approach, A Handbook for Establishment of Dispute Settlement Centers 32 (1983) (noting importance of post-mediation evaluation by administering agency).

The Advisory Committee concluded that it would be inappropriate (and, probably, impossible) to set forth a set of universally applicable qualifications for Neutrals in Consumer disputes. The Advisory Committee's conclusions parallel those of other groups establishing broad standards for the conduct of ADR. See, e.g., SPIDR Report on Qualifications; SPIDR Principles at 1, 2. **As the SPIDR Commission on Qualifications determined, Neutral qualifications are best established by joint efforts of concerned "stakeholders" in specific contexts**. See, e.g., Kaiser Permanente Review and Recommendations 35-36 (recommending involvement of advisory committee in development of arbitrator qualifications).

**It is important for Consumers to have a voice in establishing and maintaining standards of competence and quality in ADR programs. The SPIDR Commission on Qualifications recently observed that "consumers...share a responsibility with programs, [Neutrals]...and associations to join in evaluating and reporting on the performance of [Neutrals]... and programs and contributing to the development of policies and standards on qualifications." SPIDR Report on Qualifications**, 'G.2. at 9. See also SPIDR Principles, Principle

2 at 2 (private entities making judgments about neutral qualifications should be guided by groups that include representatives of consumers of services). **Although Neutral expertise is traditionally a hallmark of arbitration, technical or professional experience often carries with it the perception if not the reality of bias. <u>From the Consumer's perspective, therefore, an arbitrator who shares the professional or commercial background of a Provider may not be the ideal judge</u>**. See, e.g., Broemmer v. Abortion Serv. of Phoenix, 840 P.2d 1013 (Ariz. 1992) (adhesion arbitration agreement provided by abortion clinic which, among other things, required arbitrator to be a licensed obstetrician/gynecologist, was unenforceable as beyond reasonable expectations of patient).

**An Independent ADR Institution's responsibility for the qualifications of Neutrals in a particular Consumer ADR program dictates the development of an appropriate training program. Ideally, the training should include a mentoring program with experienced Neutrals as well as coverage of applicable principles of Consumer law**. See Mark E. Budnitz, Arbitration of Disputes Between Consumers and Financial Institutions: A Serious Threat to Consumer Protection, 10 Ohio St. J. on Disp. Res. 267, 315 (arbitrators need special legal expertise to address statutory issues respecting consumer claims against financial institutions). **Successful completion of such training should be reflected in the information on prospective Neutrals furnished to the parties prior to selection**. Cf. Employment Due Process Protocol ' C.2.

The Advisory Committee generally supports the concept of broad choice in selection of Neutrals, and recognizes the right of Consumers and Providers to jointly select any Neutral in whom the parties have requisite trust, even one who does not possess all of the qualifications recommended by an ADR Program. Cf. Employment Due Process Protocol 'C.1.; Standards for Court-Connected Programs '13.4 ("Parties should have the widest possible latitude in selecting mediators, consistent with public policy."). **This assumes, of course, that both parties have a true choice in the matter, that they are duly informed about the background and qualifications of the Neutrals proposed, and that all such Neutrals have made full disclosure of possible conflicts of interest in accordance with Principle 3**.

- 34 -

**Elements of effective quality control include the establishment of standards for Neutrals, the development of a training program, and a program of ongoing performance evaluation and feedback. Because the requirements of parties will vary with the circumstances, it will be necessary to establish standards for Neutrals in an ADR Program with due regard for the specific needs of users of the program**. As noted in connection with Principle 3, a helpful model for program administrators is the User Advisory Committee now being utilized by the AAA to establish procedures and policies for ADR in the areas of employment, construction, health care, and other transactional settings. **Such entities could bring Consumer and Provider representatives together to assist in the development and implementation of programs to train, qualify and monitor the performance of Neutrals**.

*Id*. at 14-16 (emphasis added).

**ANSWER**:

To the extent the allegations in Paragraph 51 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 51 of the Complaint.

52.   Principle 6 deals with reasonable costs, and in the Reports Comments, it states,

**Some ADR Programs serving Consumers are staffed wholly or partly by unpaid volunteers**. See, e.g., BBB Arbitration Rules at 2. The use of such programs, including community dispute resolution centers, may be a satisfactory means of addressing cost concerns associated with Consumer ADR, particularly in cases involving low stakes. **However, concerns have been expressed by some authorities regarding overdependence on volunteer Neutrals**. See Standards for Court-Connected Programs '13.1, Commentary, at 13-2 (warning of dangers of exclusive reliance on volunteers in ADR

- 35 -

programs). ***Care must be taken by those responsible for overseeing such programs to make certain that lower cost does not come at the expense of adequately qualified Neutrals***.

*Id*. at 19 (emphasis added).

**ANSWER**:

To the extent the allegations in Paragraph 52 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 52 of the Complaint.

## RELEVANT MARKET

53.    "[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." *Marbury v. Madison*, 5 U.S. 137, 163, 2 L. Ed. 60 (1803).

**ANSWER**:

To the extent the allegations in Paragraph 53 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 53 of the Complaint.

54.    The default venue for litigating disputes has traditionally been Article III courts and state courts of general jurisdiction.

**ANSWER**:

Paragraph 54 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations.

55.     However, contracting parties have utilized the Federal Arbitration Act to resolve disputes they have agreed to submit to arbitration.

**ANSWER**:

AAA admits that some contracting parties resolve disputes pursuant to an arbitration agreement. To the extent the allegations in Paragraph 55 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 55 of the Complaint.

56.     Parties can form multiple levels of agreements concerning arbitration. At a basic level, parties can agree to send the merits of a dispute to an arbitrator. They can also agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes. See *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192-93, 218 L. Ed. 2d 615 (2024).

**ANSWER**:

AAA admits that contracting parties have broad latitude to agree to arbitrate claims. To the extent the allegations contained in Paragraph 56 of the Complaint relate to other Defendants and/or third parties to this action, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations, and therefore denies the same.  To the extent the allegations in this Paragraph purport to relate to AAA, AAA denies the same. AAA denies the remaining allegations in Paragraph 56 of the Complaint.

57.    Many consumer product services, such as credit cards, cell phones, telecommunications, and credit reporting agencies, see infra and supra, opt to place a provision requiring disputes be resolved by arbitration in their adhesion contracts.

**ANSWER**:

To the extent the allegations contained in Paragraph 57 of the Complaint relate to other Defendants and/or third parties to this action, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations, and therefore denies the same.  To the extent the allegations in this Paragraph purport to relate to AAA, AAA denies the same. AAA denies the remaining allegations in Paragraph 57 of the Complaint.

58.    AAA has created a forum that allows companies to require, via adhesion contracts, that consumers agree to unique "Consumer Rules" to arbitrate disputes that arise in consumer contracts.

**ANSWER**:

AAA denies the allegations in Paragraph 58 of the Complaint.

59.    Most credit cards, cell phones, all three major credit reporting agencies, and most major telecommunications companies have designated AAA "Consumer Rules" as the sole forum to arbitrate disputes that arise from the services provided and/or any other dispute that arises between the consumer and the company.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 59 of the Complaint, and therefore denies the same.

60.    AAA is required by the law of several states to make consumer and employment statistics available to the public.

**ANSWER**:

Paragraph 60 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that any such statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 60 of the Complaint.

61.    AAA had published previously such information on a quarterly basis to its website until recently. https://www.adr.org/ConsumerArbitrationStatistics, last visited March 17, 2025.

**ANSWER**:

To the extent the allegations in Paragraph 61 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 61 of the Complaint.

62.    As of the date of the filing of this Complaint, the data referenced in this Complaint could no longer be accessed on its website via an obvious link.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 62 of the Complaint, and therefore denies the same.

63.    The website directs users to call "Statistics and In-House Research Department at 877.495.4185."

**ANSWER**:

To the extent the allegations in Paragraph 63 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 63 of the Complaint.

64.    The phone number is not for statistics or in-house research. It is for website support.

**ANSWER**:

AAA denies the allegations in Paragraph 64 of the Complaint.

65.    Website support connects callers to an offshore call center that also was not statistics or in-house research and who advised to call customer support.

**ANSWER**:

AAA denies the allegations in Paragraph 65 of the Complaint.

66.    When the customer support number is called, there is no live person to answer the phone but rather an automated message system that suggests sending an email.

**ANSWER**:

AAA denies allegations in Paragraph 66 of the Complaint.

67.    This lack of access via the website, including the run-around designed to get rid of inquiries, is oppositional to AAA's duty to provide public access to the statistics it is required to make available to the public.

**ANSWER**:

AAA denies the allegations in Paragraph 67 of the Complaint.

- 40 -

68.    The allegations herein are based on the 2024 First Quarter consumer reporting spreadsheets previously readily accessible as a link on the AAA website.

**ANSWER**:

To the extent the allegations in Paragraph 68 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 68 of the Complaint, and therefore denies the same.

69.    Of the 103 most used credit card agreements, the top five cellular company contracts, by subscribers, and the top six telecom provider agreements in North Carolina and West Virginia, Plaintiffs' counsel could only identify three arbitration forums used.

**ANSWER**:

To the extent the allegations in Paragraph 69 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 69 of the Complaint, and therefore denies the same.

70.    Those three companies are the AAA, JAMS, and National Arbitration and Mediation (hereinafter NAM).

**ANSWER**:

- 41 -

To the extent the allegations in Paragraph 70 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 70 of the Complaint, and therefore denies the same.

71.    AAA is the largest in consumer law, JAMS is the second largest, and NAM is a distant third such that they do not have enough data to provide any statistics.

**ANSWER**:

To the extent the allegations in Paragraph 71 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 71 of the Complaint, and therefore denies the same.

72.    The AAA has had 179,288 arbitrations filed with it since 2010, according to its spreadsheet available at https://www.org/sites/default/files/document repository/ConsumerReport Q1 2024.xlsx (accessed Aug. 14, 2024) (hereinafter referred to as AAA Spreadsheet).[11]

**ANSWER**:

---

[11] Attached as Exhibit 1 in PDF format, which may be difficult to read. The best format is an Excel spreadsheet due to the sheer volume of data. However, AAA appeared to have removed this data from its site as an Excel spreadsheet. AAA has all such data within its unique control. [***PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

To the extent the allegations in Paragraph 72 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations contained in Paragraph 72 of the Complaint.

73.    Of the 179,288 AAA arbitrations on its spreadsheet, 150,358 are designated true consumer arbitrations (that is, not employment, real property, or construction, which would fall under different rules). See AAA Spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 73 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 73 of the Complaint.

74.    JAMS has had 23,593 arbitrations filed in its forum as stated on its spreadsheet available at https://www.jamsadr.com/files/uploads/documents/jams-consumer-case-information.xlsx (accessed Aug. 14, 2024) (hereinafter referred to as JAMS Spreadsheet).[12]

**ANSWER**:

To the extent the allegations in Paragraph 74 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources

---

[12] Exhibit 2, attached as a PDF, would be best viewed in Excel spreadsheet format, which JAMS has within its unique control. [*PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT*]

speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 74 of the Complaint, and therefore denies the same.

75.    Of the 25,593 JAMS arbitrations on its spreadsheet, 8,326 are listed as consumer arbitrations (that is, not employment, real property, or construction). See JAMS Spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 75 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 75 of the Complaint, and therefore denies the same.

76.    NAM's spreadsheet of consumer and employment arbitrations is available at https://www.namadr.com/content/uploads/2024/07/Website-CA-Disclosures-Q2-2024-W.O.-NAM-ID-W.O.-CONSUMER-NAME.xls, (accessed Aug 16, 2024) (hereinafter NAM Spreadsheet).[13]

**ANSWER**:

To the extent the allegations in Paragraph 76 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources

---

[13] Attached as Exhibit 3 in PDF format, would be best viewed in Excel spreadsheet format, which AAA has within its unique control. [***PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 76 of the Complaint, and therefore denies the same.

77.   NAM's spreadsheet contains only 93 consumer and employment arbitrations that have been arbitrated with NAM.

**ANSWER**:

To the extent the allegations in Paragraph 77 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 77 of the Complaint, and therefore denies the same.

78.   Of the 93 arbitrations on the NAM spreadsheet, 49 are listed as consumer arbitrations (that is, not employment).

**ANSWER**:

To the extent the allegations in Paragraph 78 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 77 of the Complaint, and therefore denies the same.

79.     NAM appears to have entered the market in 2019 and is not a particularly important player.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 79 of the Complaint, and therefore denies the same.

80.     All three spreadsheets include both consumer and employment arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 80 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 80 of the Complaint, and therefore denies the same.

81.     $93 + 179{,}288 + 23{,}593 = 202{,}973$ total arbitrations.[14]

**ANSWER**:

To the extent the allegations in Paragraph 81 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent

---

[14] The totals for pure consumer arbitrations are slightly lower for each forum and are discussed in detail later in the complaint. [***PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 81 of the Complaint, and therefore denies the same.

82.    When accounting solely for consumer arbitrations filed, AAA had 150,358, JAMS had 8,326, and NAM had 49.

**ANSWER**:

To the extent the allegations in Paragraph 82 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 82 of the Complaint, and therefore denies the same.

83.    There were 158,733 consumer arbitrations identified by AAA, JAMS, and NAM.

**ANSWER**:

To the extent the allegations in Paragraph 83 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 83 of the Complaint, and therefore denies the same.

84.     Of the 158,733 consumer arbitrations in the US listed on the spreadsheet, the AAA comprises 94% of the arbitrations, JAMS 5%, and NAM comprises .0003%.

**ANSWER**:

To the extent the allegations in Paragraph 84 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 84 of the Complaint, and therefore denies the same.

85.     On a national level, consumers win only 27% of the time in the AAA, or 1,264 of the 4,748 arbitrations on the AAA spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 85 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 85.

86.     That's compared to a 40%-win rate at JAMS or 302 of 758 arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 86 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form

a belief concerning the truth of the remaining allegations contained in Paragraph 86 of the Complaint, and therefore denies the same.

87.    When filtered for consumer-filed arbitrations only, the consumer win rate in the AAA jumps by 1% to 28% or 1,233 arbitrations out of 4,326.

**ANSWER**:

To the extent the allegations in Paragraph 87 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 87 of the Complaint, and therefore denies the same.

88.    JAMS jumps by 2% to a 42%-win rate for consumer-initiated arbitrations or 274 of 648 arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 88 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 88 of the Complaint, and therefore denies the same.

89.    There is a breakdown in the competitive conditions in the marketplace of consumer arbitrations.

**ANSWER**:

AAA denies the allegations in Paragraph 89 of the Complaint.

90.    AAA receives 94% of all consumer arbitration filings yet has a bafflingly low consumer win rate.

**ANSWER**:

AAA denies the allegations in Paragraph 90 of the Complaint.

91.    AAA has priced itself so low that it prohibits market competitors from offering comparable arbitration services to consumers.

**ANSWER**:

AAA denies the allegations in Paragraph 91 of the Complaint.

92.    "A consumer deprived of money by reason of allegedly anticompetitive conduct is injured in 'property' within the meaning of § 4 [of the Clayton Act.]" *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344, 99 S. Ct. 2326, 2333, 60 L. Ed. 2d 931 (1979).

**ANSWER**:

To the extent the allegations in Paragraph 92 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 92 of the Complaint.

93.    The basic and underlying purposes of anti-trust laws are to preserve competition and to protect the consumer.

**ANSWER**:

Paragraph 93 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statutes referenced in

this Paragraph speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies any remaining allegations in Paragraph 93 of the Complaint.

94.    Plaintiffs are consumers who have contracted with companies to resolve disputes via the AAA's Consumer Rules arbitration forum.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 94 of the Complaint, and therefore denies the same.

95.    Plaintiffs have been directly injured by the lessening of competition due to AAA's monopolistic practices.

**ANSWER**:

AAA denies the allegations in Paragraph 95 of the Complaint.

96.    Plaintiffs seek to forbid exclusivity—first on Plaintiff's own behalf and implicitly on behalf of others.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 96 of the Complaint, and therefore denies the same. AAA also denies that it has engaged in any anticompetitive conduct.

97.    Plaintiffs seek to destroy an anticompetitive arrangement.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 97 of the Complaint, and therefore denies the same. AAA also denies that it has engaged in any anticompetitive conduct.

98.    Plaintiffs have been deprived of money because of AAA's anti-competitive conduct.

**ANSWER**:

AAA denies the allegations in Paragraph 98 of the Complaint.

99.    Plaintiffs can efficiently enforce the anti-monopoly laws.

**ANSWER**:

AAA denies the allegations in Paragraph 99 of the Complaint.

100.   Plaintiffs have been injured by being prevented from accessing competitors in the consumer arbitration marketplace, which has led to demonstrably worse results for their litigation.

**ANSWER**:

AAA denies the allegations in Paragraph 100 of the Complaint.

101.   Plaintiffs are an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement and access to a competitive dispute resolution marketplace. AAA manipulates the consumer arbitration market in which the Plaintiffs are active.

**ANSWER**:

AAA denies the allegations in Paragraph 101 of the Complaint.

102.   Plaintiffs' antitrust injury reflects the anticompetitive effect of the violation or of anticompetitive acts made possible by the violation.

**ANSWER**:

AAA denies the allegations in Paragraph 102 of the Complaint.

103.   Plaintiffs' injury is of the type the antitrust laws were intended to prevent and directly results from the very conduct that makes AAA's acts unlawful.

**ANSWER**:

AAA denies the allegations in Paragraph 103 of the Complaint.

104.   "Under either statute, two prerequisites to recovery remain the same, requiring a plaintiff seeking to establish competitive injury resulting from a rival's low prices to prove that
  (1)   the prices complained of are below an appropriate measure of the rival's costs, and
  (2)   the rival has a reasonable prospect--or, under the Sherman Act, a dangerous probability--of recouping the rival's investment in below-cost prices." *Id*.

**ANSWER**:

To the extent the allegations in Paragraph 104 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 104 of the Complaint.

105.   "Primary-line competitive injury, as required under the price discrimination provisions of 2(a) of the Clayton Act as amended by the Robinson-Patman Act (15 USCS 13(a)), is of the same general character as the injury inflicted by predatory pricing schemes actionable under 2 of the Sherman Act (15 USCS 2)[.]" *Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 212, 113 S. Ct. 2578, 2582 (1993)

**ANSWER**:

To the extent the allegations in Paragraph 105 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or

- 53 -

other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 105 of the Complaint.

106. AAA willfully acquired or maintained its market power through anticompetitive conduct, rather than through legitimate means such as offering a superior product, exercising business acumen, or by historical accident, in violation of 15 U.S.C. § 2 *et seq.*

**ANSWER**:

AAA denies the allegations in Paragraph 106 of the Complaint.

107.   AAA acted with the intent to prevent competitors from entering the consumer arbitration market and was not merely the consequence of shutting out competition.

**ANSWER**:

AAA denies the allegations in Paragraph 107 of the Complaint.

108.   The geographical market in this arbitration is defined as the United States of America.

**ANSWER**:

Paragraph 108 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 108.

## BACKGROUND

**A.     The Structure of the American Arbitration Association v. JAMS**

109.   The AAA consumer rules are available at https://adr.org/sites/default/files/Consumer%20Rules.pdf. Exhibit 1.

**ANSWER**:

To the extent the allegations in Paragraph 109 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context.

110.  The AAA has a unique set of rules for consumers that is drastically more restrictive in what it allows than the rules for other types of arbitrations.

**ANSWER**:

AAA agrees that it has a unique set of rules for  consumer arbitrations, but denies the remaining allegations in this Paragraph 110 of the Complaint.

**i.        Arbitrator Selection**

111.  The AAA consumer rules do not allow for any choice or strike list of arbitrators.

**ANSWER**:

To the extent the allegations in Paragraph 111 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 111 of the Complaint.

112.  Consumers in the AAA are stuck with whatever arbitrator the AAA selects and cannot recuse them unless they can demonstrate a clear conflict.

**ANSWER**:

AAA denies the allegations in Paragraph 112 of the Complaint.

113.  The JAMS Rules allow for a strike list of arbitrators to be provided to consumers of at least five arbitrators. See JAMS Rule 15(b) available at https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-15 (accessed Aug. 14, 2024). Exhibit 2.

**ANSWER**:

To the extent the allegations in Paragraph 111 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA lacks knowledge or information sufficient to form a belief concerning the truth of the remaining allegations contained in Paragraph 113 of the Complaint, and therefore denies the same.

114.  JAMS utilizes arbitrators who, by and large, have judicial experience.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 114 of the Complaint, and therefore denies the same.

115.  AAA utilizes arbitrators who, by and large, work for or are retired from corporate defense firms that are regularly averse to consumers.

**ANSWER**:

AAA denies the allegations in Paragraph 115 of the Complaint.

116.  Further, as seen in Exhibit 4, AAA's Demographic Report Quarter 3, 2024, the AAA's arbitrators are not representative of the population at large:
      A.     75.1% male.
      B.     96.7% with no disability.
      C.     85% white.

**ANSWER**:

To the extent the allegations in Paragraph 111 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 111 of the Complaint.

117.   The AAA's refusal to provide a strike list violates principle 3 of their Consumer Due Process Protocol.

**ANSWER**:

AAA denies the allegations in Paragraph 117 of the Complaint.

118.   AAA does not provide a list of its neutrals or their resumes online; instead, it has a page with broken links that do nothing. See The AAA National Roster of Arbitrators and Mediators, available at https://www.adr.org/aaa-panel  (accessed March 17, 2025).

**ANSWER**:

To the extent the allegations in Paragraph 118 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 118 of the Complaint.

119.   The reasons AAA offers for refusing to publish the roster of arbitrators include, for example, that their database is proprietary and not made available to the public; there are thousands of arbitrators in different areas of the law, where some subjects are narrow with panels of few expert arbitrators find other panels are large; some forced arbitration clauses provide the method for selection of arbitrators, while others are silent;

not all arbitrators are available. https://www.adr.org/sites/default/files/document repository/Why-the-AAAs-Roster-of-Arbitrators-is-Not-Publicly-Available.pdf, last visited March 17, 2025.

**ANSWER**:

To the extent the allegations in Paragraph 119 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 119 of the Complaint.

120.    This violates AAA's Principles 1, 2, 3, 4, and 13 of the AAA's Consumer Due Process Protocol.

**ANSWER**:
AAA denies the allegations in Paragraph 120 of the Complaint.

121.    JAMS provides all of its arbitrators with resumes online on an easy-to-use website. See Search Neutral Directory, available at https://www.jamsadr.com/neutrals/search (accessed March 17, 2025).

**ANSWER**:

To the extent the allegations in Paragraph 121 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 121 of the Complaint, and therefore denies the same.

122.   While Plaintiff can obtain the names of the neutrals for Arizona, West Virginia, Washington, and North Carolina from the AAA Statistics Spreadsheet, however, no resumes or other information is provided.

**ANSWER**:

To the extent the allegations in Paragraph 122 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 122 of the Complaint.

123.   Some AAA arbitrators get assigned more arbitrations than others. The AAA does not clearly disclose why or how arbitrators are selected in each case.

**ANSWER**:

AAA admits that, for various reasons, some arbitrators are appointed to more arbitrations than others, but denies the remaining allegations in Paragraph 123 of the Complaint.

124.   This violates AAA's Principles 1, 2, 3, 4, and 13 of the AAA's Consumer Due Process Protocol.

**ANSWER**:

AAA denies the allegations in Paragraph 124 of the Complaint.

125.   JAMS' process is based on a geographical region (typically several states) and uses a strike list.

**ANSWER**:

- 59 -

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 125 of the Complaint, and therefore denies the same.

126.   Upon information and belief, AAA takes no action to recruit neutrals who work on behalf of consumers into its neutrals list.

**ANSWER**:

AAA denies the allegations in Paragraph 126 of the Complaint.

127.   AAA's rules regarding arbitrator selection are far outside the norm for arbitrator selection in other rules for private arbitrations both within the AAA and with other providers.

**ANSWER**:

AAA denies the allegations in Paragraph 127 of the Complaint.

128.   As a result of the Defendant's actions, Plaintiffs were harmed by having no choice of forum and no choice of arbitrator.

**ANSWER**:
AAA denies the allegations in Paragraph 128 of the Complaint.

129.   Further, the proposed updated consumer rules issued by the AAA remove the ability for consumers with arbitration values of $50,000 to get a final hearing. Cases below that amount go to a "desk arbitration."

**ANSWER**:

To the extent the allegations in Paragraph 129 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 129 of the Complaint.

130.   Because the AAA does not allow discovery in consumer cases, the new rules effectively deny consumers access to discovery, leaving the final hearing as often their only opportunity to develop the record.

**ANSWER**:

AAA denies the allegations in Paragraph 130 of the Complaint.

131.   This change strengthens the AAA's monopoly power by now being the forum where, in the vast majority of consumer arbitrations, consumers do not even receive a hearing. Other forums can only compete by stripping consumers' rights to a hearing.

**ANSWER**:

AAA denies the allegations in Paragraph 131 of the Complaint.

**ii.     Rules Regarding Discovery**

132.   The AAA Consumer Rules do not provide for any discovery by consumers.

**ANSWER**:

AAA denies the allegations in Paragraph 132 of the Complaint.

133.   The AAA Consumer Rules do not allow for any depositions by consumers.

**ANSWER**:

AAA denies the allegations in Paragraph 132 of the Complaint.

134.   AAA arbitrators routinely advise consumers that they are not entitled to any discovery or depositions.

**ANSWER**:

AAA denies the allegations in Paragraph 134 of the Complaint.

135.   JAMS rules allow discovery and depositions, and JAMS arbitrators routinely allow full discovery. Exhibit 2, Rule 17.

**ANSWER**:

To the extent the allegations in Paragraph 135 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 135 of the Complaint, and therefore denies the same.

136. The AAA Consumer rules currently provide for a hearing, with dispositive motions permitted only on the condition that a party has shown substantial cause. Exhibit 2, Rule 33.

**ANSWER**:

To the extent the allegations in Paragraph 136 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 136 of the Complaint.

137. AAA has proposed changing the rules to permit dispositive motions that would eliminate or severely curtail consumer ability to have a full and fair evidentiary hearing, especially when there may be no or limited discovery.

**ANSWER**:

To the extent the allegations in Paragraph 137 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is

inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 137 of the Complaint.

138.   This proposed change, among many others, would create an unfair advantage against consumers in favor of corporate defendants with unique and sole possession of evidence consumers need to prove their cases.

**ANSWER**:

AAA denies the allegations in Paragraph 138 of the Complaint.

**iii. Fees and Costs of Arbitration**

139.   The AAA lists some of its fees and costs under the consumer rules available at https://www.adr.org/sites/default/files/Consumer Fee Schedule 2.pdf (accessed March 17, 2025) (hereinafter AAA Consumer Fee Schedule). Exhibit 3.

**ANSWER**:

To the extent the allegations in Paragraph 139 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 139 of the Complaint.

140.   The AAA charges consumers $200 to file a demand.

**ANSWER**:

AAA denies the allegations in Paragraph 140 of the Complaint.

141.   JAMS charges consumers $250 to file a demand.

**ANSWER**:

- 63 -

To the extent the allegations in Paragraph 141 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 141 of the Complaint, and therefore denies the same.

142.   Although the filing fees for the consumer are similar, the fees for the business drastically differ.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 142 of the Complaint, and therefore denies the same.

143.   The AAA's consumer rules require an arbitration management fee of $1,400, which the business pays.

**ANSWER**:

To the extent the allegations in Paragraph 143 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 143 of the Complaint.

144.   The AAA, during most of the class period, charged a flat rate of $2,500 for arbitrator compensation, including one day of hearings, the final award (regardless of how many hours it took to write), and a preliminary scheduling conference with the arbitrator.

**ANSWER**:

- 64 -

To the extent the allegations in Paragraph 144 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context.  AAA denies the remaining allegations in Paragraph 144 of the Complaint.

145.   If the arbitration extended into a second day of hearings, the arbitrator would receive another $2,500 per day; however, upon information and belief, multiday hearings are rare in consumer hearings.

**ANSWER**:

To the extent the allegations in Paragraph 145 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 145 of the Complaint.

146.   The AAA rules stated that the business pays for arbitrations with multiple telephone conferences, motions practice, post-hearing briefings, interim awards, partial awards, and, most importantly, awards containing findings of fact and conclusions of law outside of the $2,500 fee.

**ANSWER**:

To the extent the allegations in Paragraph 146 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is

inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 146 of the Complaint.

147.   The AAA recently replaced the flat fee system with a $300 per hour rate. This was not intended to increase the compensation for arbitrators because the rates are still significantly below the standard.

**ANSWER**:

AAA denies the allegations in Paragraph 147 of the Complaint.

148.   It actually results in lower pay for arbitrators because most cases settle quickly.

**ANSWER**:

AAA denies the allegations in Paragraph 148 of the Complaint.

149.   The primary intention behind this change was to reduce costs for businesses involved in mass arbitrations, with no intention of benefiting consumers, improve fairness, or to attract more competent arbitrators.

**ANSWER**:

AAA denies the allegations in Paragraph 149 of the Complaint.

150.   The original flat fee of $1,250 represented nearly four hours of work at a rate of $300 an hour. Since most arbitrations settle quickly, this is a pay cut in most cases.

**ANSWER**:

AAA denies the allegations in Paragraph 150 of the Complaint.

151.   Further, the reduced rate of $300 forces competitors and individuals wishing to enter the arbitration market to lower their rate from the current market rate, upon information and belief, around $600, to be competitive or leave the market altogether.

**ANSWER**:

AAA denies the allegations in Paragraph 151 of the Complaint.

152. The $300 hourly cap on arbitrator compensation is unfair to consumers because it discourages competent arbitrators from becoming AAA arbitrators and taking consumer cases.

**ANSWER**:

AAA denies the allegations in Paragraph 152 of the Complaint.

153. Consumers do not benefit from the $300 an hour cap on arbitrator compensation in any way, shape, or form.

**ANSWER**:

AAA denies the allegations in Paragraph 153 of the Complaint.

154. However, the rules also state "Any determination by the AAA on whether the business will be responsible for additional arbitrator compensation is in the sole discretion of the AAA and such decision is final and binding." AAA Consumer Fee Schedule, p. 4.

**ANSWER**:

To the extent the allegations in Paragraph 154 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 154 of the Complaint.

155. Upon information and belief, the AAA actively discourages and routinely does not require businesses to pay the arbitrator for additional services.

**ANSWER**:

AAA denies the allegations in Paragraph 155 of the Complaint.

156. AAA Consumer Rules significantly disincentivize arbitrators from spending time and attention on consumer filings because their compensation is fixed regardless of the amount of work performed.

- 67 -

**ANSWER**:

AAA denies the allegations in Paragraph 156 of the Complaint.

157.   This violates principles 1, 2, 3, and 4 of the consumer due process principles. Principle 4 explicitly warns in its comments about under-funding neutrals and the risks involved.

**ANSWER**:

AAA denies the allegations in Paragraph 157 of the Complaint.

158.   JAMS publicly discloses the consumer arbitration fees on its website.

**ANSWER**:

To the extent the allegations in Paragraph 158 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 158 of the Complaint, and therefore denies the same.

159.   The average JAMS arbitrator fee for arbitration that went to a judgment of some kind (excluding employment and construction arbitrations) is $12,949 going back to 2012.

**ANSWER**:

To the extent the allegations in Paragraph 159 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is

inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 159 of the Complaint, and therefore denies the same.

160.    Upon information and belief, the current average arbitrator deposit required by JAMS of businesses at the start of litigation is between $15,000 and $20,000 per arbitration.

**ANSWER**:

To the extent the allegations in Paragraph 160 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 160 of the Complaint, and therefore denies the same.

161.    The arbitrator deposit during the bulk of the class period in the AAA is half the $2,500 daily fee.

**ANSWER**:

To the extent the allegations in Paragraph 161 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA denies the remaining allegations in Paragraph 161 of the Complaint.

162.    Recently, that was reduced to just the arbitrator's rate of $300 an hour, which means the arbitrator can earn almost nothing if the case settles.

**ANSWER**:

To the extent the allegations in Paragraph 162 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA denies the remaining allegations in Paragraph 162 of the Complaint.

163.    Upon information and belief, no arbitrator deposit is required, and unlike most other forums, like JAMS, the arbitrator can earn nothing if he works no time on the file due to a quick settlement.

**ANSWER**:

To the extent the allegations in Paragraph 163 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 163 of the Complaint, and therefore denies the same.

164.    The practice of underpaying arbitrators continues in a different form in the new capped $300 an hour rate.

**ANSWER**:

AAA denies the allegations in Paragraph 164 of the Complaint.

165.    Upon information and belief, the AAA arbitrator deposit is approximately 10% of the typical deposit at JAMS.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 165 of the Complaint, and therefore denies the same.

166.   The AAA only limits arbitrator fees under its Consumer Rules.

**ANSWER**:

To the extent the allegations in Paragraph 166 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 166 of the Complaint.

167. AAA does not limit arbitrator fees in employment, labor, healthcare, construction, or other types of arbitrations.

A.   AAA Employment Rules: "Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The company shall pay the arbitrator's compensation unless the individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous." Available at https://go.adr.org/employmentfeeschedule (Accessed Aug 18, 2024).

B.   AAA Construction Rules: "For both schedules, administrative fees are based on the amount of the claim or counterclaim and are to be paid by the party bringing the claim or counterclaim at the time the demand or claim is filed with the AAA. Arbitrator compensation is not included in either schedule. Unless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award." (emphasis in original)

Available at https://go.adr.org/constructionfeeschedule (accessed Aug 18, 2024).

C. Labor Rules: "Unless mutually agreed otherwise, the arbitrator's compensation shall be borne equally by the parties, in accordance with the fee structure disclosed in the arbitrator's biographical profile submitted to the parties." Available at, https://www.adr.org/sites/default/files/Labor Arbitration Fee Schedule 0.pdf (accessed March 17, 2025).

D. Commercial Arbitrations: For both schedules, administrative fees are based on the amount of the claim or counterclaim and are to be paid by the party bringing the claim or counterclaim at the time the demand or claim is filed with the AAA. Arbitrator compensation is not included in either schedule. Unless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award. Available at, https://www.adr.org/sites/default/files/Commercial_Arbitrati on Fee Schedule 1.pdf (accessed March 17, 2025).

**ANSWER**:

To the extent the allegations in Paragraph 167 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 167 of the Complaint.

168. The AAA limits consumer arbitrator compensation to obtain an unfair advantage in the consumer arbitration market.

**ANSWER**:

AAA denies the allegations in Paragraph 168 of the Complaint.

169. Limiting arbitrators' compensation, as in the AAA Consumer Rules, is not a typical practice in the industry.

**ANSWER**:

- 72 -

AAA denies the allegations in Paragraph 169 of the Complaint.

170.   JAMS compensates arbitrators on an hourly basis.

**ANSWER**:

To the extent the allegations in Paragraph 170 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 170 of the Complaint, and therefore denies the same.

171.   It is not a typical practice within AAA to cap arbitrator compensation for anything except consumer arbitrations.

**ANSWER**:

AAA denies the allegations in Paragraph 171 of the Complaint.

172.   AAA's other areas (employment, construction, labor, etc.) compensate arbitrators hourly without caps.

**ANSWER**:

To the extent the allegations in Paragraph 172 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 172 of the Complaint.

173. JAMS does not put their arbitrators' fee amounts online but states on their webpage that arbitrators are paid their hourly rate as set by the arbitrator. See Arbitration Schedule of Fees and Costs, available at https://www.jamsadr.com/arbitration-fees, (accessed March 17, 2025).

**ANSWER**:

To the extent the allegations in Paragraph 173 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 173 of the Complaint, and therefore denies the same.

174. Further, in all of the areas (rules) in which the AAA accepts arbitrations (employment, construction, labor, etc.), the AAA allows arbitration strikes, access to discovery, and depositions in most arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 174 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 174 of the Complaint.

175. The AAA has elected to make only its Consumer Rules far outside industry norms of arbitration rules and arbitrator compensation to corner the market on consumer arbitrations.

**ANSWER**:

AAA denies the allegations in Paragraph 175 of the Complaint.

176. As a result of Defendant's anticompetitive actions, Defendant has been unjustly enriched to tens and possibly hundreds of millions of dollars.

**ANSWER**:

AAA denies the allegations in Paragraph 176 of the Complaint.

177. As a result of the Defendant's anticompetitive rules, which are outside the norm for both other types of arbitration accepted by the AAA and the rules at other forums, the Defendant has gained an unfair advantage and a monopoly in the area of consumer arbitrations by creating rules that prevent consumers from being able to adjudicate their rights.

**ANSWER**:

AAA denies the allegations in Paragraph 177 of the Complaint.

**B.     Consumer Arbitration Outcomes at the American Arbitration Association and JAMS**

178. The Plaintiffs' complaint only concerns consumer arbitrations, not employment or construction arbitrations, which fall under different rules at the AAA.

**ANSWER**:

AAA admits that it has rules that are specific to consumer arbitrations, but denies the other allegations in Paragraph 178 of the Complaint.

179. AAA arbitration statistics only go back to approximately January 2017. Ex. 1, AAA Spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 179 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is

inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 179 of the Complaint.

180.    JAMS arbitration statistics have consumer and employment arbitration data going back to May of 2012. Ex. 2, JAMS Spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 180 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 180 of the Complaint, and therefore denies the same.

181.    Unless indicated otherwise, the data below is only for arbitrations that went to the final hearing and not the tens of thousands of arbitrations filed in arbitration but settled before a final hearing.

**ANSWER**:

To the extent the allegations in Paragraph 181 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 181 of the Complaint, and therefore denies the same.

182.    The data below does not include the untold number of matters that were never filed due to the chilling effect of the AAA Consumer Rules and outcomes.

**ANSWER**:

AAA denies the allegations in Paragraph 182 of the Complaint.

183.   The AAA statistics spreadsheet has 179,252 total arbitrations on it.

**ANSWER**:

To the extent the allegations in Paragraph 183 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in the Paragraph 183 of the Complaint.

184.   The JAMS spreadsheet, which includes five additional years, has 23,592 arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 184 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 184 of the Complaint, and therefore denies the same.

185.   This means that the AAA accounts for approximately 87% of the filed arbitrations between the two, while JAMS accounts for 13%. These numbers are not filtering out employment and construction cases yet; this is just all arbitrations generally.

**ANSWER**:

To the extent the allegations in Paragraph 185 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 185 of the Complaint, and therefore denies the same.

186.    Upon information and belief, the reason for this disparity is the vast majority of consumer arbitration agreements provide for no choice of forum and require consumers to use the AAA only.

**ANSWER**:

AAA denies the allegations in Paragraph 186 of the Complaint.

187.    On a national level, consumers win only 27% of the time in the AAA, or 1,264 of 4,748 arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 187 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 187 of the Complaint.

188.    That's compared to a 40%-win rate at JAMS or 302 of 758 arbitrations.

**ANSWER**:

- 78 -

To the extent the allegations in Paragraph 188 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 188 of the Complaint, and therefore denies the same.

189.  When filtered for consumer-filed arbitrations only, the AAA's consumer win rate jumps by 1% to 28% or 1,233 arbitrations out of 4,326.

**ANSWER**:

To the extent the allegations in Paragraph 189 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 189 of the Complaint.

190.  JAMS jumps by 2% further to a 42%-win rate for consumer-initiated arbitrations or 274 of 648 arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 190 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or

information sufficient to form a belief concerning the truth of the allegations in Paragraph 190 of the Complaint, and therefore denies the same.

191.   In the seven years of data available, consumers won approximately 21% of the time in Arizona AAA arbitrations or 15 of the 72 consumer arbitrations that went to a final hearing.

**ANSWER**:

To the extent the allegations in Paragraph 191 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 191 of the Complaint.

192.   In the twelve years of data available, consumers won in Arizona JAMS arbitrations approximately 38% of the time, or 3 of the 8 arbitrations that went to a final hearing. However, this is likely not a large enough sample to provide significant data.

**ANSWER**:

To the extent the allegations in Paragraph 192 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 192 of the Complaint, and therefore denies the same.

193.   Upon information and belief, the reason there are so few JAMS arbitrations in Arizona is because of the AAA monopoly.

**ANSWER**:

AAA denies the allegations in Paragraph 193 of the Complaint.

194.   In the seven years of data available, consumers won approximately 27% of the time in North Carolina AAA arbitrations, or 96 of 252 arbitrations that went to a final hearing.

**ANSWER**:

To the extent the allegations in Paragraph 194 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 194 of the Complaint.

195.   In the twelve years of data available, consumers won in North Carolina JAMS arbitrations approximately 66% of the time or 88 of 133 arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 195 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 195 of the Complaint, and therefore denies the same.

196.   In the seven years of data available, consumers won in West Virginia AAA arbitrations 11% of the time or 4 of 34 arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 196 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 196 of the Complaint.

197.    There are so few JAMS West Virginia arbitrations that win rate data is unavailable. Only one arbitration of the fifteen filings went to a hearing, and the consumer lost.

**ANSWER**:

To the extent the allegations in Paragraph 197 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 197 of the Complaint, and therefore denies the same.

198.    Consumers in Washington State win at an average 42% of the time in the AAA. This beats the national average of 27%.
**ANSWER**:

To the extent the allegations in Paragraph 198 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is

inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 198 of the Complaint.

199.   However, consumers in JAMS in Washington State win 66% of their cases.

**ANSWER**:

To the extent the allegations in Paragraph 199 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 199 of the Complaint, and therefore denies the same.

200.   The consumer initiated all of the West Virginia arbitrations discussed above.

**ANSWER**:

To the extent the allegations in Paragraph 200 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 200 of the Complaint, and therefore denies the same.

201.   In all the awards to consumers in the 252 AAA arbitrations that went to a final hearing in North Carolina, consumers were awarded an aggregate total of $1,542,724. However, that number is skewed by a few significant awards. The average is $16,070 per arbitration won, with a median of $12,042.

**ANSWER**:

To the extent the allegations in Paragraph 201 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 201 of the Complaint.

202. JAMS, on the other hand, has awarded $2,730,654 to North Carolina consumers in over half as many arbitrations (133), with an average award of $31,030 per arbitration taken to a final hearing.

**ANSWER**:

To the extent the allegations in Paragraph 202 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 202 of the Complaint, and therefore denies the same.

203. The AAA in West Virginia has awarded consumers a paltry $5,915 over the 34 arbitrations tried to a final hearing with a median award of $1,506.50.

**ANSWER**:

To the extent the allegations in Paragraph 203 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is

inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 203.

204. Consumers only won 4 of the 34 arbitrations consumers filed in the AAA in West Virginia.

**ANSWER**:

To the extent the allegations in Paragraph 204 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 204 of the Complaint.

205. Of **consumer-filed** arbitrations in West Virginia, businesses were awarded $60,840.

**ANSWER**:

To the extent the allegations in Paragraph 205 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 205 of the Complaint.

206. Businesses defending arbitrations filed against them in the AAA in West Virginia were awarded *ten times* the amount awarded to West Virginia consumers who brought the claims.

**ANSWER**:

To the extent the allegations in Paragraph 206 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 206 of the Complaint.

207. Upon information and belief, the AAA in West Virginia is punitive to consumers instead of providing justice.

**ANSWER**:

AAA denies the allegations in Paragraph 207 of the Complaint.

208. Upon information and belief, the AAA fails to monitor the quality of its arbiter panels and their results as required by Principle 4 of the AAA's Consumer Arbitration Due Process Protocols.

**ANSWER**:

AAA denies the allegations in Paragraph 208 of the Complaint.

209. Some "frequent fliers" enjoy even greater rates of success.

**ANSWER**:

AAA denies the allegations in Paragraph 209 of the Complaint.

210. T-Mobile has had 2,616 consumer arbitrations filed against it in the AAA by consumers, nationally.

**ANSWER**:
To the extent the allegations in Paragraph 210 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is

- 86 -

inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 210 of the Complaint.

211. Of the 2,616 arbitrations consumers filed against T-Mobile, 103 went to final judgment, and T-Mobile won 89 for an enviable 86%-win rate.

**ANSWER**:

To the extent the allegations in Paragraph 211 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 211 of the Complaint.

212. Other frequent fliers enjoy similar enviable win rates on consumer-filed arbitrations on a national level.

   A.   AT&T appears with 2,844 on the AAA arbitration spreadsheet. Of those 2,844, 261 went to a final judgment.[15] Of the 253 arbitrations that were not a "consumer/business" win, AT&T won 216. That's an 85%-win rate for AT&T and a 15%-win rate for consumers and remarkably similar to T-Mobile's success in arbitration.

   B.   Citibank, N.A., appears with 818 arbitrations in the AAA filed against it, of which 65 went to a final judgment. The bank won in 53 of those arbitrations, or 81% of the time, while consumers won 19% of the time.

   C.   c. Verizon appears with 1075 AAA arbitrations filed by consumers, of which 161 went to trial. Of those 161 arbitrations, Verizon won 140, or 86%. Consumers won 14%, and a pattern is starting to emerge.

   D.   Experian, the credit reporting agency, totals 12 consumer cases that went to final hearing in the AAA out of 162 arbitrations filed and has a 100%-win rate.

---

[15] Eight of the cases are listed as both the consumer and business winning, however, that is misleading. In only two of those cases was the consumer awarded more than the business, one for $1,500 and one for $48. In the other three cases, consumers were awarded between two and three-figure judgments. AT&T was awarded 5 figure judgments in all of them. [**PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT**]

**ANSWER**:

AAA denies the allegations in Paragraph 212 of the Complaint.

213.   Under the AAA employment rules, the AAA has handled 19,484 arbitrations, according to its spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 213 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 213 of the Complaint.

214.   The AAA uses different rules for employment arbitrations, which include arbitrator strikes, arbitrators are paid a reasonable amount, and rules will allow for some discovery.

**ANSWER**:

AAA admits that its consumer and employment arbitration rules and procedures differ, but otherwise denies the allegations in Paragraph 214 of the Complaint.

215.   Of the 1,303 employment arbitrations on the AAA spreadsheet that went to a final judgment, the employee was given an award in 633 arbitrations at the national level. While still low, that represents a 49%-win rate for employees or nearly triple the win rate of consumers in cell phone arbitrations against T-Mobile, AT&T, and Verizon, where there are no strikes, discovery, and inadequate arbitrator compensation.

**ANSWER**:

To the extent the allegations in Paragraph 215 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or

other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 215 of the Complaint.

216. Upon information and belief, the high business win rate is because of the low arbitrator compensation, the use of nearly exclusively corporate defense attorneys as arbitrators, and restrictive rules, which is the reason for the meager 27% national win rate by consumers.

**ANSWER**:

AAA denies the allegations in Paragraph 216 of the Complaint.

217. As demonstrated above, because Defendant abuses its monopoly power, consumers are harmed by the lack of choice in the area of consumer arbitration forum in forum selection clauses, in the rules that apply in those closes, and the rights and remedies available.

**ANSWER**:

AAA denies the allegations in Paragraph 217 of the Complaint.

**C.     AAA as a Monopoly**

218. Plaintiffs' complaint only concerns itself with consumer arbitrations and not employment or construction arbitrations which fall under different rules at the AAA.

**ANSWER**:

AAA denies the allegations in Paragraph 218 of the Complaint.

219. Based on the companies' data sheets online, the AAA has approximately 88%, JAMS has 12%, and NAM has a .0005% market share in arbitrations, which includes the consumer and employment arbitration market.

**ANSWER**:

To the extent the allegations in Paragraph 219 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 219 of the Complaint.

220.   Of the 179,288 AAA arbitrations on its spreadsheet, 150,358 are designated true consumer arbitrations (that is, not employment, real property, or construction, which would fall under different rules). See AAA Spreadsheet attached as Exhibit 1.

**ANSWER**:

To the extent the allegations in Paragraph 220 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 220.

221.   Of the 25,593 JAMS arbitrations on its spreadsheet, 8,326 are listed as consumer arbitrations (that is, not employment, real property, or construction). Ex. 2, JAMS Spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 221 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or

information sufficient to form a belief concerning the truth of the allegations in Paragraph 221 of the Complaint, and therefore denies the same.

222. Of the 93 arbitrations on the NAM spreadsheet, 49 are listed as consumer arbitrations (that is, not employment). Ex. 3, NAM spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 222 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 222 of the Complaint, and therefore denies the same.

223. $150{,}358 + 8{,}326 + 49 = 158{,}733$ arbitrations.

**ANSWER**:

To the extent the allegations in Paragraph 223 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 223 of the Complaint, and therefore denies the same.

224. Of the 158,733 consumer arbitrations in the US listed on the spreadsheet, the AAA has 94% of the arbitrations, JAMS has 5%, and NAM has .0003%.
**ANSWER**:

To the extent the allegations in Paragraph 224 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 224 of the Complaint, and therefore denies the same.

225.   The AAA sets consumer arbitration rates so low that no other forum can compete against them.

**ANSWER**:

AAA denies the allegations in Paragraph 225 of the Complaint.

226.   The AAA sets consumer arbitration rates so low that only corporate defense counsel with large firm sponsorship or retired attorneys can afford to be arbitrators.

**ANSWER**:

AAA denies the allegations in Paragraph 226 of the Complaint.

227.   Consumer protection advocates cannot afford to divert resources from their practices to work as AAA arbitrators when the compensation rates are so low and capped.

**ANSWER**:

AAA denies the allegations in Paragraph 227 of the Complaint.

228.   The AAA sets arbitrator compensation rates at approximately 10% of the cost of private consumer arbitration in other forums to stifle competition and to create and perpetuate a monopoly.

**ANSWER**:

AAA denies the allegations in Paragraph 228 of the Complaint.

229.   Plaintiffs examined 103 credit card agreements prior to filing and 61 of those agreements chose only the AAA as the forum.[16] Those agreements were in these cards:

- Comenity Capital Bank - Academy Sports
- Comenity Capital Bank - AAA
- Comenity Capital Bank - All Pets
- Comenity Capital Bank - Big Lots
- Comenity Capital Bank - Boot Barn
- Comenity Capital Bank - Burlington
- Comenity Capital Bank - Cosmo
- Comenity Capital Bank - Forever21
- Comenity Capital Bank - Game Stop
- Comenity Capital Bank - Harley Davidson
- Comenity Capital Bank - Ikea
- Comenity Capital Bank - Land's End
- Comenity Capital Bank - Petco
- Comenity Capital Bank - Ross
- Comenity Capital Bank - Sephora
- Comenity Capital Bank - Toyota Rewards
- Comenity Capital Bank - Ulta
- Comenity Capital Bank - Zales
- 1st United Credit Union
- Ally Credit Card
- Barclays Bank Delaware
- Celtic Bank Corp
- CitiBank – Aadvantage
- CitiBank - Aadvantage
- CitiBank - AT&T
- CitiBank -Best Buy
- CitiBank - Bloomingdales
- CitiBank - Brooks Brothers
- CitiBank - Citi Custom Cash
- ALL CITIBANK CARDS
- Coastal Community Bank
- Comenity Bank - Ann Taylor

---

[16] Plaintiff utilized the Consumer Financial Protection Bureaus' Credit Card Agreement Database, available at https://www.consumerfinance.gov/credit-cards/agreements/ (accessed Aug. 18, 2024). [*PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT*]

- Comenity Bank - Arhaus
- Comenity Bank - Avenue
- Comenity Bank - Bealls
- Comenity Bank - Brylane
- Comenity Bank - Buckle
- Comenity Bank - Caesars
- Comenity Bank - Catherines
- Comenity Bank - Eddie Bauer
- Comenity Bank - Express
- Comenity Bank - J. Crew
- Comenity Bank - Jared
- Comenity Bank KingSize Credit Card
- Comenity Bank - PlayStation
- Comenity Bank - Sportsman's Guide Buyers Club
- Comenity Bank - Talbots
- Comenity Bank - Victoria's Secret
- Credit One, N.A.
- Discover Bank
- Farm Bureau Bank, FSB
- First National Bank of Omaha - Platinum
- First National Bank of Omaha - Green Light Family Cash Card
- First National Bank of Omaha - Sheetz
- Goldman Sachs - Apple Card
- HSBC Bank USA, N.A. - Elite Card
- HSBC Bank USA, N.A. - Premier Card
- SoFi Bank, N.A.
- Truliant Federal Credit Union
- USAA
- Wells Fargo

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 229 of the Complaint, and therefore denies the same.

230.  Of the top five cellphone providers in the United States by sub-scriber numbers, all five allow only the AAA as the arbitration forum available to them. Those companies are:

- 94 -

- AT&T
- Verizon
- T-Mobile
- US Cellular
- Boost Mobile

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 230 of the Complaint, and therefore denies the same.

231.   Of the top eight internet providers in North Carolina and West Virginia, seven allow for only the AAA in their terms of service:

- Windstream
- Frontier Communications
- Spectrum
- Google Fiber
- ATT Fiber
- Verizon Home Internet
- T-Mobile Home Internet
- Optimum Internet
- Starlink

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 231 of the Complaint, and therefore denies the same.

232.   Of the three major credit reporting agencies in the United States, all of them required the use of the AAA only for disputes.

- Experian
- Equifax
- TransUnion

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 232 of the Complaint, and therefore denies the same.

233.    These corporations and countless others, looking to minimize the costs of arbitration, have chosen the AAA as the only forum available to consumers in their arbitration agreements for the majority of consumer agreements in America.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 233 of the Complaint, and therefore denies the same.

234.    Of the 126 terms of services and contracts Plaintiffs surveyed before filing this arbitration, 81 required all disputes to go the AAA only without a choice to consumers.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 234 of the Complaint, and therefore denies the same.

235.    This represents 63% of all contracts surveyed but is a much higher percentage in some industries, including 100% in cell phone contracts surveyed, 100% of credit reporting agencies, 89% of telecoms, 80% of payment apps, and 59% of credit card agreements[17].

**ANSWER**:

---

[17] Very few companies do not have arbitration agreements that Plaintiff could find. Those that do include Capital One, TD Bank, Facebook, etc. However, this complaint is not interested in companies that choose not to use arbitration services because they are not subject to AAA's monopolistic role. [*PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT*]

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 235 of the Complaint, and therefore denies the same.

236.   The AAA does not offer a neutral arbitration service but instead has rules that provide consumers with no choice of arbitrator, no discovery, no depositions, and no appeal.

**ANSWER**:

AAA denies the allegations in Paragraph 236 of the Complaint.

237.   These limitations are outside the industry norm for arbitration and create a forum that is not neutral. In fact, according to the AAA's own spread-sheet, most consumers lose the arbitrations: 79% in Arizona, 89% in West Virginia, 73% in North Carolina, and 58% in Washington.

**ANSWER**:

AAA denies the allegations in Paragraph 239 of the Complaint.

238.   Nationally, consumers also lose 73% of consumer arbitrations in the AAA.

**ANSWER**:

To the extent the allegations in Paragraph 238 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 238.

239.   Further, by paying arbitrators paltry flat-rate sums and not ensuring that arbitrators will be paid for reviewing discovery, preparing findings of facts and conclusions of law, and other litigation, the AAA has ensured that arbitrators do not spend much time on arbitrations and fully consider all the facts in violates of principles 1, 3, and 4 of the AAA's Consumer Due Process Protocol.

**ANSWER**:

AAA denies the allegations in Paragraph 239 of the Complaint.

240.    The comments to Principle 4 of the AAA's Consumer Due Process Protocol explicitly warn of the risks of underfunding arbiters.

**ANSWER**:

To the extent the allegations in Paragraph 240 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations of Paragraph 240 of the Complaint.

241.    Further, the AAA offers various tools on its website to create arbitration clauses that select only the AAA as the arbitral forum for all disputes, including an AI Tool and sample arbitration clauses. See AAA-ICDR Clause Drafting, available at https://www.adr.org/Clauses, last visited March 17, 2025.

**ANSWER**:

To the extent the allegations in Paragraph 241 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 241 of the Complaint.

242.    The effect of the AAA's anticompetitive conduct is that no forum can compete in price and still offer a neutral arbitration.

**ANSWER**:

AAA denies the allegations in Paragraph 242 of the Complaint.

243.   As a result of the AAA's anticompetitive practices in its consumer arbitration rules, all contract holders with an AAA-only clause are limited in their choices.

**ANSWER**:

AAA denies the allegations in Paragraph 243 of the Complaint.

244.   Further, because of the AAA's extremely poor success rates for consumers, businesses use the threat of going to the AAA in consumer arbitrations to force low settlements. The AAA website states that consumers lose the vast majority of arbitrations. See AAA Spreadsheet attached as Exhibit 1.

**ANSWER**:

AAA denies the allegations in Paragraph 244 of the Complaint.

245.   As a result of the defendant's conduct, companies that wish to start or maintain neutral consumer arbitration forums are unable to do so because they cannot compete with the AAA's anti-competitive pricing and unfair rules while still providing a neutral forum.

**ANSWER**:

AAA denies the allegations in Paragraph 245 of the Complaint.

246.   The AAA retains predominantly retired or currently practicing corporate defense counsels who are willing to work for a fraction of the cost of their counterpart neutrals hired into ADR providers such as JAMS.

**ANSWER**:

AAA denies the allegations in Paragraph 246 of the Complaint.

247.   JAMS neutrals in North Carolina are comprised of 57% retired judges.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 6 of the Complaint, and therefore denies the same.

248.    In the AAA, however, the lion's share of North Carolina neutrals, 67%, are hired from various facets of corporate defense, and only 9% have experience as judges. Only approximately 12% of North Carolina AAA neutrals have consumer protection experience of any kind and they are rarely selected as neutrals.

**ANSWER**:

To the extent the allegations in Paragraph 248 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 248 of the Complaint.

249.    Upon information and belief, a few experienced retired judges and/or experienced attorneys would adjudicate a complex consumer arbitration for a measly $1,250 or as much as $2,500 when they could get an average of $27,315.51 in JAMS for consumer cases that went to a final hearing on an average case and $5,572.33 for settled cases. See JAMS Spreadsheet.

**ANSWER**:

AAA denies the allegations in Paragraph 249 of the Complaint.

250.    Further, it is unfair to cap consumer arbitrators at $300 per hour, as was started in January of 2024, when other forums allow arbitrators to charge their hourly rate with a normal midpoint rate of approximately $600 an hour.

**ANSWER**:

AAA denies the allegations in Paragraph 250 of the Complaint.

251.    This conduct of hiring predominantly corporate defense lawyers as arbiters violates principles 1, 2, 3, and 4 of the AAA's Consumer Due Process Protocol.

**ANSWER**:

AAA denies the allegations in Paragraph 251 of the Complaint.

- 100 -

252. The average arbitrator compensation in JAMS for settled consumer cases (cases that were settled prior to the arbitrator's decision) is $5,572.33 and $27,315.51 for consumer cases that went to a final hearing and judgment. See the JAMS spreadsheet.

**ANSWER**:

To the extent the allegations in Paragraph 252 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 252 of the Complaint, and therefore denies the same.

253. In the AAA, arbitrators, until January 2024, were capped at $1,250 in consumer cases that settle, representing only half of the $2,500 single-day hearing fee.

**ANSWER**:

AAA admits that it changed its compensation model in January 2024, but otherwise denies the allegations in Paragraph 253 of the Complaint.

254. In the past year, that cap has changed to $300 an hour for arbitrators in consumer cases only, which is, upon information and belief, far below the market rate and intended to maintain the AAA's artificially low-cost advantage in consumer arbitrations.

**ANSWER**:

AAA admits that it changed its arbitrator compensation rate for consumer arbitrations effective January 15, 2024, but otherwise denies the allegations in Paragraph 254 of the Complaint.

255. In most cases, both the AAA and JAMS settle.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 255 of the Complaint, and therefore denies the same.

256. Upon information and belief, $1,250 per case was too low to attract talented and skilled arbiters and discourages arbitrators from learning about the case.

**ANSWER**:

AAA denies the allegations in Paragraph 256 of the Complaint.

257. Upon information and belief, $300 per hour is too low to attract talented and skilled arbiters and discourages arbitrators from learning about the case.

**ANSWER**:

AAA denies the allegations in Paragraph 257 of the Complaint.

258. Upon information and belief, the $1,250 the AAA paid consumer arbiters until January of 2024 discouraged arbitrators from reading pleadings, doing research, learning the law surrounding the case, or otherwise doing their job.

**ANSWER**:

AAA denies the allegations in Paragraph 258 of the Complaint.

259. Upon information and belief, the $300 per hour the AAA pays to consumer arbiters after January of 2024 continues to discourage arbitrators from reading pleadings, doing research, learning the law surrounding the case, or otherwise doing their job.

**ANSWER**:

AAA denies the allegations in Paragraph 259 of the Complaint.

260. This conduct of underpaying arbiters is explicitly warned against in Principle 4 of AAA's Consumer Arbitration Due Process Protocol.

**ANSWER**:

AAA denies the allegations in Paragraph 260 of the Complaint.

261.   Further, the $1,250 in compensation that the AAA caped arbitrators at, during most of the class period, for settled consumer cases is vastly below the norm for consumer arbitrations in other forums and in other types of arbitrations handled by the AAA.

**ANSWER**:

AAA denies the allegations in Paragraph 261 of the Complaint.

262.   Upon information and belief, the $300 an hour in compensation that the AAA caps arbitrators at during the past year is vastly below the norm for consumer arbitrations in other forums and in other types of arbitrations handled by the AAA.

**ANSWER**:

AAA denies the allegations in Paragraph 262 of the Complaint.

263.   The Defendant defines the product of consumer arbitration in its AAA Consumer Due Process Protocol and establishes what the basic "minimum" due process standards of the consumer arbitration product. However, the AAA flagrantly violates these standards in order to produce an unfair forum that is far from neutral and undermines the competition that is trying to provide a neutral arbitration forum.

**ANSWER**:

AAA denies the allegations in Paragraph 263 of the Complaint.

264.   As a result of the Defendant's anticompetitive actions, consumers are harmed in that their choices of available forums are limited, the choice of rules are limited, and they are stuck with choosing a forum where they will typically lose their arbitration, with no say in even what arbitrator is selected in their arbitration.

**ANSWER**:

AAA denies the allegations in Paragraph 264 of the Complaint.

265.   Upon information and belief, it is difficult, if not impossible, for consumers to find attorneys who will represent them in AAA arbitrations because it is nearly

impossible to win and not financially viable to take arbitrations, even with robust consumer acts in WV and NC and attorney fee shifters.

**ANSWER**:

AAA denies the allegations in Paragraph 265 of the Complaint.

266.   Plaintiffs and other similarly situated consumers have suffered significant financial loss as a result of the Defendant's anticompetitive conduct in the format of lost arbitrations, lower awards, difficulty to impossibility in finding counsel to represent them, and inability to protect themselves adequately and vindicate their rights.

**ANSWER**:

AAA denies the allegations in Paragraph 266 of the Complaint.

267.   The Defendant's conduct in limiting arbitrator compensation and providing for restrictive rules for consumer arbitrations is not an act typical or ordinary in the provision of neutral arbitration services.

**ANSWER**:

AAA denies the allegations in Paragraph 267 of the Complaint.

## **PLAINTIFFS**

268.   In this action, each Plaintiff is filing in their capacity as someone harmed by the Defendants' anticompetitive conduct only.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 268 of the Complaint, and therefore denies the same.

269.   Each Plaintiff would have chosen another forum other than the AAA if they could have but were stuck with the AAA because of the AAA's anticompetitive conduct.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 269 of the Complaint, and therefore denies the same.

270.   The Plaintiffs below do not allege any damages as a result of the AAA's handling of their individual cases, egregious and strange as it may have been in some cases. Plaintiffs are only alleging damages related to Plaintiffs' lack of choice in the marketplace and that they would have chosen another forum, literally any other forum, if they had the option.

**ANSWER**:

AAA denies the allegations in Paragraph 270 of the Complaint.

**A.    Stephanie Stephens**

271.   Stephanie Stephens is subject to a forced arbitration agreement with the sole selection of the AAA.

**ANSWER**:

To the extent the allegations in Paragraph 271 of the Complaint purport to characterize or describe documents or other sources, AAA states that such documents or other sources speak for themselves and denies any characterization or description that is inconsistent therewith or taken out of context. Otherwise, AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 271 of the Complaint, and therefore denies the same.

272. Stephanie Stephens's 2016 agreement with CreditWorks, an Experian affiliate, elects AAA as the only forum for dispute resolution, which is common in the consumer credit industry due to the AAA monopoly on dispute resolution for consumer credit and consumer reporting.

**ANSWER**:

AAA denies the allegations in Paragraph 272 of the Complaint.

273.    Plaintiff, as a direct result of Defendant's anticompetitive conduct, was left with no forum option other than AAA.

**ANSWER**:

AAA denies the allegations in Paragraph 273 of the Complaint.

274.    Plaintiff would have chosen any other forum had Plaintiff had the option but was forced to use the AAA because of its monopoly.

**ANSWER**:

AAA denies the allegations in Paragraph 274 of the Complaint.

275.    Stephanie Stephens is not pursuing damages for actions by the AAA in its capacity as an arbitral forum handling an arbitration, only in its capacity as an entity maintaining an illegal monopoly and thereby harming Stephanie Stephens.

**ANSWER**:

AAA denies the allegations in Paragraph 275 of the Complaint.

276.    Plaintiff was injured by the deprivation of a non-monopolistic forum for the resolution of her dispute with Experian.

**ANSWER**:

AAA denies the allegations in Paragraph 276 of the Complaint.

**B.    William Hilton**

277.    Mr. Hilton has consumer cases for harassing phone calls while he was working on debt restructuring under the guidance and assistance of attorneys against First Electronic Bank and The Bank of Missouri.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 277 of the Complaint, and therefore denies the same.

- 106 -

278. Both First Electronic Bank and The Bank of Missouri use the same counsel.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 278 of the Complaint, and therefore denies the same.

279. The Defendants suggested early settlement but also expressed their intent to file a motion to compel arbitration.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 279 of the Complaint, and therefore denies the same.

280. Mr. Hilton's card agreements with both banks elect AAA as the only forum for dispute resolution, which is common in the credit card industry due to the AAA monopoly on dispute resolution for consumer credit cards.

**ANSWER**:

AAA denies the allegations in Paragraph 280 of the Complaint.

281. Threats to compel a case to the AAA are code in the legal field to settle cheaply or risk having your case taken to a kangaroo court, where you will get nothing.

**ANSWER**:

AAA denies the allegations in Paragraph 281 of the Complaint.

282. The plaintiff's counsel for Mr. Hilton requested Defense Counsel for the Bank of Missouri to use JAMS, but the defense counsel informed the Plaintiff's counsel that they would not because of the cost associated with JAMS.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 282 of the Complaint, and therefore denies the same.

283.   Plaintiff, as a direct result of Defendant's anticompetitive conduct, was left with no forum option other than AAA.

**ANSWER**:

AAA denies the allegations in Paragraph 283 of the Complaint.

284.   Mr. Hilton is not pursuing damages for actions by the AAA in its capacity as an arbitral forum handling an arbitration, only in its capacity as an entity maintaining an illegal monopoly and thereby harming Mr. Hilton.

**ANSWER**:

AAA denies the allegations in Paragraph 284 of the Complaint.

**C.   Joelle Nole**

285.   Ms. Nole had her credit card stolen during a vacation to Hawaii, and the thieves ran up a significant bill.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 285 of the Complaint, and therefore denies the same.

286.   The bank declined to take action on the matter and suggested that Ms. Nole had consented to the fraudulent activity, despite a police report containing video evidence of a thief withdrawing money from an ATM in Kauai after she had left the state.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 286 of the Complaint, and therefore denies the same.

287.   When Ms. Nole looked at her card agreement, the AAA was the only forum available to her to litigate her claims.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 287 of the Complaint, and therefore denies the same.

288.   The plaintiff would have chosen any other forum had it been available to her, but because of the Defendant's anticompetitive practices, it was the only forum she could file in, so she did.

**ANSWER**:

AAA denies the allegations in Paragraph 288 of the Complaint.

**D.    Eugénie Balogun**

289.   Ms. Balogun's attorney in North Carolina sent a letter, certified return receipt requested, on her behalf to several creditors letting them know of her representation by counsel as required by North Carolina Law.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 289 of the Complaint, and therefore denies the same.

290.   Despite receiving this letter, Citibank continued to contact her. In response to her lawsuit, the Defendant requested the Plaintiff consent to a motion to compel arbitration at the AAA.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 290 of the Complaint, and therefore denies the same.

291.   The AAA is the only dispute resolution forum in Citibank's credit cards.

**ANSWER**:

AAA lacks knowledge or information sufficient to form a belief concerning the truth of the allegations in Paragraph 291 of the Complaint, and therefore denies the same.

292.   As before, a request to compel the case to the AAA is code in the business for "settle cheap."

**ANSWER**:

AAA denies the allegations in Paragraph 292 of the Complaint.

293.   Ms. Balogun would have used any other forum had it been available, but the defendant's anti-competitive conduct forced her to devalue her case in settlement negotiations, leaving her with a forum choice where she had little hope of success.

**ANSWER**:

AAA denies the allegations in Paragraph 293 of the Complaint.

**CLASS ACTION ALLEGATIONS**

A.      **Sherman/Clayton National Class**

294.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim on behalf of all United States residents with a contract providing the AAA as the only available forum for legal relief for claims.

**ANSWER**:

Paragraph 294 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 294 of the Complaint.

295.   Plaintiff seeks to bring the claims below as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

**ANSWER**:

Paragraph 295 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 295 of the Complaint.

296.  Plaintiff reserves the right to re-define a Sub-Class if necessary [collectively "the Classes"] prior to class certification.

**ANSWER**:

Paragraph 296 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 296 of the Complaint.

297.  Numerosity: The number of persons who are members of the Class, as described above, is so numerous that joinder of all members in one action is impracticable.

**ANSWER**:

Paragraph 297 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 294 of the Complaint.

298.  Predominance: Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendant complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:
A.    Whether the Defendant AAA was illegally keeping the prices of its consumer arbitration services so low that they were anticompetitive and designed to create and maintain a monopoly in the area of consumer arbitration; and
B.    Whether the Defendant AAA was illegally creating a limited forum in which consumers were at a disadvantage in the selection of arbitrators, discovery, and the receipt of a fair hearing in a way that was anticompetitive in the market and designed to create and/or maintain a monopoly.

**ANSWER**:

Paragraph 298 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 298 of the Complaint.

299.    Commonality: All questions, actions, and inactions by Defendant at issue are similarly common. Such as making a determination of Defendant's anti-competitive conduct was unfair and deceptive and in violation of state and federal statutes. The issues will be readily determined by reviewing Defendant's records.

**ANSWER**:

Paragraph 299 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 299 of the Complaint.

300.    Numerosity: Plaintiff alleges upon information and belief, that the number of class members is so numerous that joinder of all of them is impractical. Plaintiff's beliefs are based on the fact that: (1) AAA has been involved in over a hundred thousand arbitrations, (2) AAA only forum selection clauses are found in a majority of consumer contracts in the United States including all five of the top five cell phone providers by subscription numbers; (3) within four years prior to the filing of complaint through the date of class certification.

**ANSWER**:

Paragraph 300 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 300 of the Complaint.

301.    The members of the proposed Class will be easily ascertained from the records of the Defendant when discovery commences herein.

**ANSWER**:

AAA denies the allegations in Paragraph 301 of the Complaint.

302.    The Class Representative's claims raise questions of law and fact that are common to claims of each member of the class. Specifically, the central issue raised by this action is whether Defendants violated state and federal law by engaging in monopolistic behavior that created an anti-competitive market for consumer arbitrations.

**ANSWER**:

Paragraph 302 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 302 of the Complaint.

303.   The claims of the Class Representative are not only typical of the claims of each member of the class; they are identical because each consumer was subjected to the same illegal conduct by the Defendant in creating, enforcing, and subjecting consumers to anti-competitive arbitration terms. Specifically, the central issue raised by this action is whether Defendants violated 15 U.S.C.S. § 2 et seq. in creating and maintain an illegal monopoly in the area of consumer arbitration. All purported members of the Classes make the same allegations.

**ANSWER**:

Paragraph 303 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 303 of the Complaint.

304.   The common issues involved in this lawsuit predominate over any separate issues that may exist with the individual Plaintiff.

**ANSWER**:

Paragraph 304 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 304 of the Complaint.

305.   The Class Representatives are United States residents who will fairly and adequately protect and represent the interests of each member of the Classes. Additionally, the Class Representative is fully cognizant of her responsibilities as Class Representative, and has retained experienced counsel fully capable of, and intend upon, vigorously pursuing this action.

**ANSWER**:

Paragraph 305 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 305 of the Complaint.

306.   The question of law or fact common to Class Representatives' claims and the claims of each member of the Class predominate over any question of law or fact affecting only individual members of the Class. Additionally, the amount in controversy for each Class member's claims would make individual lawsuits economically unfeasible, if not impossible. Class Representation is, therefore, clearly superior to other available methods for the fair and efficient adjudication of this controversy.

**ANSWER**:

Paragraph 306 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 304 of the Complaint.

**B.      Arizona Anti-Monopoly Subclasses**

307.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim on behalf of Arizona residents who have a contract that provides for the AAA as the only available forum for legal relief for claims.

**ANSWER**:

Paragraph 307 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 307 of the Complaint.

308.   Plaintiff seeks to bring the claims below as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

**ANSWER**:

Paragraph 308 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 308 of the Complaint.

309.   Plaintiff reserves the right to re-define a Sub-Class if necessary [collectively "the Classes"] prior to class certification.

**ANSWER**:

Paragraph 309 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 309 of the Complaint.

310.   Numerosity: The number of persons who are members of the Class, as described above, is so numerous that joinder of all members in one action is impracticable.

**ANSWER**:

Paragraph 310 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 310 of the Complaint.

311.   Predominance: Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendant complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

A.   Whether the Defendant AAA was illegally keeping the prices of its consumer arbitration services so low that they were anticompetitive and designed to create and maintain a monopoly in the area of consumer arbitration; and

B.   Whether the Defendant AAA was illegally creating a limited forum in which consumers were at a disadvantage in the selection of arbitrators, discovery, and the receipt of a fair hearing in a way that was anticompetitive in the market and designed to create and/or maintain a monopoly.

**ANSWER**:

Paragraph 311 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 311 of the Complaint.

312.   Commonality: All questions, actions, and inactions by Defendant at issue are similarly common. Such as making a determination of Defendant's anti-competitive conduct was unfair and deceptive and in violation of state and federal statutes. The issues will be readily determined by reviewing Defendant's records.

**ANSWER**:

Paragraph 312 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 312 of the Complaint.

313.   Numerosity: Plaintiff alleges, upon information and belief, that the number of class members is so numerous that joinder of all of them is impractical. Plaintiff's beliefs are based on the fact that: (1) AAA has been involved in over a hundred thousand arbitrations, (2) AAA only forum selection clauses are found in a majority of consumer contracts in the United States including all five of the top five cell phone providers by subscription numbers; (3) upon information and belief, the applicable Class period spans many years and including the previous four (4) years from the date of this complaint.

**ANSWER**:

Paragraph 313 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 313 of the Complaint.

314.   The members of the proposed Class will be easily ascertained from the records of the defendant when discovery commences herein.

**ANSWER**:

AAA denies the allegations in Paragraph 314 of the Complaint.

315.    The Class Representative's claims raise questions of law and fact that are common to claims of each member of the class. Specifically, the central issue raised by this action is whether defendants violated state and federal law by engaging in monopolistic behavior that created an anti-competitive market for consumer arbitrations.

**ANSWER**:

Paragraph 315 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 315 of the Complaint.

316.    The claims of the Class Representative are typical of the claims of each member of the class. Specifically, the central issue raised by this action is whether the defendants violated *Arizona Rev. Stat*. § 44-1403 et seq in creating and maintaining an illegal monopoly in the area of consumer arbitration. Further, the Defendants violated Article 14 Section 15 of the Arizona constitution, which bans monopolies in Arizona. All purported members of the Classes make the same allegations.

**ANSWER**:

Paragraph 316 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 316 of the Complaint.

317.    The common issues involved in this lawsuit predominate over any separate issues that may exist with the individual Plaintiff.

**ANSWER**:

- 117 -

Paragraph 317 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 317 of the Complaint.

318. The Class Representatives are United States residents who will fairly and adequately protect and represent the interests of each member of the Classes. Additionally, the Class Representative is fully cognizant of her responsibilities as Class Representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing this action.

**ANSWER**:

Paragraph 318 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 318 of the Complaint.

319. The question of law or fact common to Class Representatives' claims and the claims of each member of the Class predominate over any question of law or fact affecting only individual members of the Class. Additionally, the amount in controversy for each Class member's claims would make individual lawsuits economically unfeasible, if not impossible. Class Representation is, therefore, clearly superior to other available methods for the fair and efficient adjudication of this controversy.

**ANSWER**:

Paragraph 319 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 319 of the Complaint.

**C.    West Virginia Anti-Monopoly & UDAP Subclasses**

320. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim on behalf of West Virginia residents who have a contract that provides for the AAA as the only available forum for legal relief for claims.

**ANSWER**:

Paragraph 320 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 320 of the Complaint.

321.   Plaintiff seeks to bring the claims below as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

**ANSWER**:

Paragraph 321 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 321 of the Complaint.

322.   Plaintiff reserves the right to re-define a Sub-Class if necessary [collectively "the Classes"] prior to class certification.

**ANSWER**:

Paragraph 322 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 322 of the Complaint.

323.   Numerosity: The number of persons who are members of the Class, as described above, are so numerous that joinder of all members in one action is impracticable.

**ANSWER**:

aragraph 323 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 323 of the Complaint.

324.    Predominance: Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendant complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

A.    Whether the Defendant AAA was illegally keeping the prices of its consumer arbitration services so low that they were anticompetitive and designed to create and maintain a monopoly in the area of consumer arbitration; and

B.    Whether the Defendant AAA was illegally creating a limited forum in which consumers were at a disadvantage in the selection of arbitrators, discovery, and the receipt of a fair hearing in a way that was anticompetitive in the market and designed to create and/or maintain a monopoly.

**ANSWER**:

Paragraph 324 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 324 of the Complaint.

325.    Commonality: All questions, actions, and inactions by Defendant at issue are similarly common. Such as making a determination of Defendant's anti-competitive conduct was unfair and deceptive and in violation of state and federal statutes. The issues will be readily determined from reviewing Defendant's records.

**ANSWER**:

Paragraph 325 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 325 of the Complaint.

326.    Numerosity: Plaintiff alleges, upon information and belief, that the number of class members is so numerous that joinder of all of them is impractical. Plaintiff's beliefs

- 120 -

are based on the fact that: (1) AAA has been involved in over a hundred thousand arbitrations, (2) AAA only forum selection clauses are found in a majority of consumer contracts in the United States including all five of the top five cell phone providers by subscription numbers; (3) upon information and belief, the applicable Class period spans many years and including the previous four (4) years from the date of this complaint.

**ANSWER**:

Paragraph 326 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 326 of the Complaint.

327.   The members of the proposed Class will be easily ascertained from the records of the defendant when discovery commences herein.

**ANSWER**:

AAA denies the allegations in Paragraph 327 of the Complaint.

328.   The Class Representative's claims raise questions of law and fact that are common to claims of each member of the class. Specifically, the central issue raised by this action is whether defendants violated state and federal law by engaging in monopolistic behavior that created an anti-competitive market for consumer arbitrations.

**ANSWER**:

Paragraph 328 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 328 of the Complaint.

329.   The claims of the Class Representative are typical of the claims of each member of the class. Specifically, the central issue raised by this action is whether defendants violated *W. Va. Code* § 47-18-4 in creating and maintaining an illegal monopoly in the area of consumer arbitration. All purported members of the Classes make the same allegations.

**ANSWER**:

Paragraph 329 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 329 of the Complaint.

330.   The common issues involved in this lawsuit predominate over any separate issues that may exist with the individual Plaintiff.

**ANSWER**:

Paragraph 330 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 330 of the Complaint.

331.   The Class Representatives are United States residents who will fairly and adequately protect and represent the interests of each member of the Classes. Additionally, the Class Representative is fully cognizant of her responsibilities as Class Representative, and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing this action.

**ANSWER**:

Paragraph 331 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 331 of the Complaint.

332.   The question of law or fact common to Class Representatives' claims and the claims of each member of the Class predominate over any question of law or fact affecting only individual members of the Class. Additionally, the amount in controversy for each Class member's claims would make individual lawsuits economically unfeasible, if not impossible. Class Representation is therefore clearly superior to other available methods for the fair and efficient adjudication of this controversy.

**ANSWER**:

Paragraph 332 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 332 of the Complaint.

**D.    North Carolina Consumer Protection and Anti-Monopoly Subclasses**

333.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim on behalf of North Carolina residents who have a contract that provides for the AAA as the only available forum for legal relief for claims.

**ANSWER**:

Paragraph 333 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 333 of the Complaint.

334.   Plaintiff seeks to bring the claims below as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated.

**ANSWER**:

Paragraph 334 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 334 of the Complaint.

335.   Plaintiff reserves the right to re-define a Sub-Class if necessary [collectively "the Classes"] prior to class certification.

**ANSWER**:

Paragraph 335 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 335 of the Complaint.

- 123 -

336.   Numerosity: The number of persons who are members of the Class, as described above, are so numerous that joinder of all members in one action is impracticable.

**ANSWER**:

Paragraph 336 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 336 of the Complaint.

337.   Predominance: Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendant complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

A.    Whether the Defendant AAA was illegally keeping the prices of its consumer arbitration services so low that they were anticompetitive and designed to create and maintain a monopoly in the area of consumer arbitration; and

B.    Whether the Defendant AAA was illegally creating a limited forum in which consumers were at a disadvantage in the selection of arbitrators, discovery, and the receipt of a fair hearing in a way that was anticompetitive in the market and designed to create and/or maintain a monopoly.

**ANSWER**:

Paragraph 337 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 337 of the Complaint.

338.   Commonality: All questions, actions, and inactions by Defendant at issue are similarly common. Such as making a determination of Defendant's anti-competitive conduct was unfair and deceptive and in violation of state and federal statutes. The issues will be readily determined from reviewing Defendant's records.

**ANSWER**:

Paragraph 338 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 338 of the Complaint.

339. Numerosity: Plaintiff alleges, upon information and belief, that the number of class members is so numerous that joinder of all of them is impractical. Plaintiff's beliefs are based on the fact that: (1) AAA has been involved in over a hundred thousand arbitrations, (2) AAA only forum selection clauses are found in a majority of consumer contracts in the United States including all five of the top five cell phone providers by subscription numbers; (3) upon information and belief, the applicable Class period spans many years and including the previous four (4) years from the date of this complaint.

**ANSWER**:

Paragraph 339 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 339 of the Complaint.

340. The members of the proposed Class will be easily ascertained from the records of the defendant when discovery commences herein.

**ANSWER**:

AAA denies the allegations in Paragraph 340 of the Complaint.

341. The Class Representative's claims raise questions of law and fact that are common to claims of each member of the class. Specifically, the central issue raised by this action is whether defendants violated state and federal law by engaging in monopolistic behavior that created an anti-competitive market for consumer arbitrations.

**ANSWER**:

Paragraph 341 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 341 of the Complaint.

- 125 -

342. The claims of the Class Representative are typical of the claims of each member of the class. Specifically, the central issue raised by this action is whether Defendants violated *N.C. Code* § 75-2.1 and *N.C. Code* § 75-1.1(a) in creating and maintaining an illegal monopoly in the area of consumer arbitration. All purported members of the Classes make the same allegations.

**ANSWER**:

Paragraph 342 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 342 of the Complaint.

343. The common issues involved in this lawsuit predominate over any separate issues that may exist with the individual Plaintiff.

**ANSWER**:

Paragraph 343 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 343 of the Complaint.

344. The Class Representatives are United States residents who will fairly and adequately protect and represent the interests of each member of the Classes. Additionally, the Class Representative is fully cognizant of her responsibilities as Class Representative, and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing this action.

**ANSWER**:

Paragraph 344 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 344 of the Complaint.

345. The question of law or fact common to Class Representatives' claims and the claims of each member of the Class predominate over any question of law or fact affecting

- 126 -

only individual members of the Class. Additionally, the amount in controversy for each Class member's claims would make individual lawsuits economically unfeasible, if not impossible. Class Representation is therefore clearly superior to other available methods for the fair and efficient adjudication of this controversy.

**ANSWER**:

Paragraph 345 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 345 of the Complaint.

**E.    Washington Consumer Protection and Anti-Monopoly Subclasses**

346.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim on behalf of Washington residents who have a contract that provides for the AAA as the available forum for legal relief for claims.

**ANSWER**:

Paragraph 346 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 346 of the Complaint.

347.   Plaintiff seeks to bring the claims below as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

**ANSWER**:

Paragraph 347 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 347 of the Complaint.

348.   Plaintiff reserves the right to redefine a Sub-Class if necessary [collectively "the Classes"] prior to class certification.

**ANSWER**:

Paragraph 348 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 348 of the Complaint.

349.  Numerosity: The number of persons who are members of the Class, as described above, is so numerous that joinder of all members in one action is impracticable.

**ANSWER**:

Paragraph 349 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 349 of the Complaint.

350.  Predominance: Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of the Defendant complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

A.   Whether the Defendant AAA was illegally keeping the prices of its consumer arbitration services so low that they were anticompetitive and designed to create and maintain a monopoly in the area of consumer arbitration; and

B.   Whether the Defendant AAA was illegally creating a limited forum in which consumers were at a disadvantage in the selection of arbitrators, discovery, and the receipt of a fair hearing in a way that was anticompetitive in the market and designed to create and/or maintain a monopoly.

**ANSWER**:

Paragraph 350 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 350 of the Complaint.

- 128 -

351.   Commonality: All questions, actions, and inactions by Defendant at issue are similarly common. Such as making a determination of Defendant's anti-competitive conduct was unfair and deceptive and in violation of state and federal statutes. The issues will be readily determined from reviewing Defendant's records.

**ANSWER**:

Paragraph 351 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 351 of the Complaint.

352.   Numerosity: Plaintiff alleges, upon information and belief, that the number of class members is so numerous that joinder of all of them is impracticable. Plaintiff's beliefs are based on the fact that: (1) AAA has been involved in over a hundred thousand arbitrations, (2) AAA only forum selection clauses are found in a majority of consumer contracts in the United States including all five of the top five cell phone providers by subscription numbers; (3) upon information and belief, the applicable Class period spans many years and including the previous four (4) years from the date of this complaint.

**ANSWER**:

Paragraph 352 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 352 of the Complaint.

353.   The members of the proposed Class will be easily ascertained from the records of the defendant when discovery commences herein.

**ANSWER**:

AAA denies the allegations in Paragraph 353 of the Complaint.

354.   The Class Representative's claims raise questions of law and facts that are common to claims of each member of the class. Specifically, the central issue raised by this action is whether defendants violated state and federal law by engaging in monopolistic behavior that created an anti-competitive market for consumer arbitrations.

- 129 -

**ANSWER**:

Paragraph 354 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 354 of the Complaint.

355.   The claims of the Class Representative are typical of the claims of each member of the class. Specifically, the central issue raised by this action is whether defendants violated *Washington Code* § 19.86.040 and *Washington Code* § 19.86.020 in creating and maintaining an illegal monopoly in the area of consumer arbitration. All purported members of the Classes make the same allegations.

**ANSWER**:

Paragraph 355 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 355 of the Complaint

356.   The common issues involved in this lawsuit predominate over any separate issues that may exist with the individual Plaintiff.

**ANSWER**:

Paragraph 356 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 356 of the Complaint.

357.   The Class Representatives are United States residents who will fairly and adequately protect and represent the interests of each member of the Classes. Additionally, the Class Representative is fully cognizant of her responsibilities as Class Representative, and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing this action.

**ANSWER**:

Paragraph 357 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 357 of the Complaint.

358.   The question of law or fact common to Class Representatives' claims and the claims of each member of the Class predominate over any question of law or fact affecting only individual members of the Class. Additionally, the amount in controversy for each Class member's claims would make individual lawsuits economically unfeasible, if not impossible. Class Representation is, therefore, clearly superior to other available methods for the fair and efficient adjudication of this controversy.

**ANSWER**:

Paragraph 358 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 358 of the Complaint.

**CLASS CLAIMS FOR RELIEF**
**COUNT I**
**Violations of the Sherman and Clayton Antitrust Actions National Class**

359.   Plaintiffs incorporate herein by reference all preceding paragraphs of the Class Action Complaint as if set forth fully herein verbatim.

**ANSWER**:

Paragraph 359 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA asserts and incorporates by reference its responses to all preceding Paragraphs of the Complaint.

360.   AAA possesses monopoly power of the consumer arbitration market in the United States of America in violation of 15 U.S.C. § 2 *et seq*.

**ANSWER**:

AAA denies the allegations in Paragraph 360 of the Complaint.

361.    At all times relevant, the AAA has held a monopoly power in the market of consumer arbitrations in the United States.

**ANSWER**:

AAA denies the allegations in Paragraph 361 of the Complaint.

362.    AAA willfully acquired or maintained that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident in violation of 15 U.S.C. § 2 *et seq*.

**ANSWER**:

AAA denies the allegations in Paragraph 362 of the Complaint.

363.    The AAA has willfully maintained its monopoly power through its course of anticompetitive and exclusionary conduct, including AAA's cut-rate pricing practices, which stifle price competition and tend to create an artificial price floor, and AAA's practice of putting a cap on arbitration compensation in consumer cases and using rules that provide consumers with fewer rights to discovery and adjudicate their claims.

**ANSWER**:

AAA denies the allegations in Paragraph 363 of the Complaint

364.    Although each of these acts is anticompetitive in its own right, these interrelated and independent actions have had a cumulative and synergistic effect that has harmed competition and the competitive process.

**ANSWER**:

AAA denies the allegations in Paragraph 364 of the Complaint.

365.    There is no valid procompetitive justification for AAA's anticompetitive and exclusionary conduct in the consumer arbitration market.

**ANSWER**:

AAA denies the allegations in Paragraph 365 of the Complaint.

366.    AAA acted with the intent to prevent competitors from entering the consumer arbitration market and was not merely the consequence of shutting out competition.

**ANSWER**:

AAA denies the allegations in Paragraph 366 of the Complaint.

367.    The AAA, which currently holds greater than 90% of the market share within the alternate dispute resolution services (hereinafter "ADR") market space consumer arbitrations, has engaged in anticompetitive behavior to acquire and maintain power over rival ADR providers within the market sector for this service.

**ANSWER**:

AAA denies the allegations in Paragraph 367 of the Complaint.

368.    The Defendant, based on its extensive control of the market, is a monopoly.

**ANSWER**:

AAA denies the allegations in Paragraph 368 of the Complaint.

369.    Indeed, as alleged previously in this complaint, the AAA has engaged in numerous anti-competitive practices to "willfully acquire [and] maintain that power" within the ADR provider market space. *Cavalier Tel., LLC v. Verizon Va., Inc.*, 330 F.3d 176.

**ANSWER**:

AAA denies the allegations in Paragraph 369 of the Complaint.

370.    As a result of the Defendant's conduct, consumers are not provided with a neutral forum with rules and arbitrator compensation that is the norm for neutral private arbitration services both in comparison to AAA's other legal rules, including Employment, Labor, Health, etc., and in comparison, to other arbitral forums like JAMS.

**ANSWER**:

AAA denies the allegations in Paragraph 370 of the Complaint.

371.   As a result of the Defendant's conduct, consumers, such as the Plaintiffs, are not provided with any other ADR form in their consumer agreements, which would allow them to submit their claims in a forum where their rights may be better protected, thus creating a more competitive marketplace for neutral ADR services.

**ANSWER**:

AAA denies the allegations in Paragraph 371 of the Complaint.

372.   As a result of the Defendant's conduct, other businesses that may want to provide neutral ADR services are unable to because of the Defendant's predatory pricing of consumer arbitrations and its restrictive consumer arbitration rules. Other potential market entrants cannot compete with the AAA and maintain a neutral arbitral forum.

**ANSWER**:

AAA denies the allegations in Paragraph 372 of the Complaint.

373.   Upon best knowledge and belief, the AAA has established itself and maintains its status as the dominant player and market share leader in the realm of ADR as a service through a pattern of systemic anti-competitive behavior that includes but is not limited to providing a substandard service to its users at a rock-bottom price thereby forcing AAA's competitors out of the ADR market space.

**ANSWER**:

AAA denies the allegations in Paragraph 373 of the Complaint.

374.   The AAA is a monopoly in consumer arbitration and is exercising its control of the market in the United States, to dominate the market and profit off the backs of consumers who have no say in the choice of forum when acquiring services through an adhesion contract.[18]

**ANSWER**:

AAA denies the allegations in Paragraph 374.

[18] It is worth noting that none of the cell phone providers, for example, that the Plaintiff looked at provided a contract which did not have arbitration, and none gave consumers any choice in the forum. All selected only the AAA as the ADR forum. [***PLAINTIFF'S ORIGNIAL FOOTNOTE AS APPEARS IN THE COMPLAINT***]

- 134 -

375. AAA's anticompetitive and exclusionary conduct constitutes unlawful monopoly maintenance, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

**ANSWER**:

AAA denies the allegations in Paragraph 375 of the Complaint.

376. AAA's anticompetitive and exclusionary conduct in the online marketplace services market has no valid pro-competitive justification.

**ANSWER**:

AAA denies the allegations in Paragraph 376 of the Complaint.

377. As a result of Defendant's conduct, the Plaintiffs and all others similarly situated have suffered financial harm, lost potential amounts on verdicts by the lack of access to alternative forums with fair rules, wasted time, left without market choices, and endured frustration, annoyance, inconvenience, confusion, and other forms of harm.

**ANSWER**:

AAA denies the allegations in Paragraph 377 of the Complaint.

## COUNT II
### Violation of the Arizona Antitrust Act Arizona Subclass

378. Plaintiff, Stephanie Stephens, incorporates herein by reference all preceding paragraphs of the Class Action Complaint as if set forth fully herein verbatim.

**ANSWER**:

Paragraph 378 of the Complaint contains legal assertions to which no response is required. To the extent a response is required, AAA asserts and incorporates by reference its responses to all preceding Paragraphs of the Complaint.

379. *Arizona Code* § 44-1403 states that "The establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce, any part of which is within this state, by any person for the purpose of excluding competition or controlling, fixing or maintaining prices is unlawful."

**ANSWER**:

Paragraph 379 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 379 of the Complaint.

380. Plaintiff incorporates by reference into this Count the Arizona State Constitution Article 14 Section 15, which is included for context on what the prohibition in Arizona Code § 44-1403 means. Specifically, it states, "Monopolies and trusts shall never be allowed in this state and no incorporated company, co-partnership or association of persons in this state shall directly or indirectly combine or make any contract, with any incorporated company, foreign or domestic, through their stockholders or the trustees or assigns of such stockholders or with any co-partnership or association of persons, or, in any manner whatever, to fix the prices, limit the production, or regulate the transportation of any product or commodity. The legislature shall enact laws for the enforcement of this section by adequate penalties, and in the case of incorporated companies, if necessary for that purpose, may, as a penalty declare a forfeiture of their franchises."

**ANSWER**:

Paragraph 380 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 380 of the Complaint.

381.   The AAA operates within the State of Arizona.

**ANSWER**:

AAA admits that it operates within the state of Arizona.

382.   The AAA has a direct effect on Arizona residents affected by arbitration clauses that arise out of the contracts made within the State of Arizona.

**ANSWER**:

AAA denies the allegations in Paragraph 382 of the Complaint.

383.   The Defendant willfully acquired this position as the market share leader through anticompetitive business practices in various territories throughout the United States, including the State of Arizona.

**ANSWER**:

AAA denies the allegations in Paragraph 383 of the Complaint.

384.   AAA's anticompetitive and exclusionary conduct in the online market-place services market does not have a valid procompetitive justification.

**ANSWER**:

AAA denies the allegations in Paragraph 384 of the Complaint.

385.   As a result of Defendant's conduct, the Plaintiff and all others similarly situated have suffered financial harm, lost potential amounts on verdicts by the lack of access to alternative forums with fair rules, wasted time, left with-out market choices, and endured frustration, annoyance, inconvenience, con-fusion, and other forms of harm.

**ANSWER**:

AAA denies the allegations in Paragraph 385 of the Complaint.

## COUNT III
**Violation of the Arizona Constitution**
**Arizona Subclass**

- 137 -

386.    Plaintiff, Stephanie Stephens, incorporates herein by reference all preceding paragraphs of the Class Action Complaint as if set forth fully herein verbatim.

**ANSWER**:

Paragraph 386 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA asserts and incorporates by reference its responses to all preceding Paragraphs of the Complaint.

387.    Article 14 Section 15 of the Arizona State Constitution titled "Monopolies and Trusts" states "Monopolies and trusts shall never be allowed in this state and no incorporated company, co-partnership or association of persons in this state shall directly or indirectly combine or make any contract, with any incorporated company, foreign or domestic, through their stockholders or the trustees or assigns of such stockholders or with any co-partnership or association of persons, or, in any manner whatever, to fix the prices, limit the production, or regulate the transportation of any product or commodity. The legislature shall enact laws for the enforcement of this section by adequate penalties, and in the case of incorporated companies, if necessary for that purpose, may, as a penalty declare a forfeiture of their franchises."

**ANSWER**:

Paragraph 387 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 387 of the Complaint.

388.    Pursuant to *Arizona Code* § 44-1403 the Arizona legislature has empowered consumers to enforce Article 14 Section 15 of the Arizona State Constitution as it applies to their rights being harmed by monopolies and trusts in Arizona.

**ANSWER**:

- 138 -

Paragraph 388 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 388 of the Complaint.

389.    Defendant violated the Plaintiff and that of all other similarly situated's constitutional rights by operating a monopoly in the State of Arizona in violation of Article 14 Section 15 of the Arizona Constitution.

**ANSWER**:

AAA denies the allegations in Paragraph 389 of the Complaint.

390.    The AAA has a direct effect on Arizona residents affected by arbitration clauses that arise out of the contracts made within the State of Arizona.

**ANSWER**:

AAA denies the allegations in Paragraph 390 of the Complaint.

391.    The Defendant willfully acquired this position as the market share leader through anticompetitive business practices in various territories throughout the United States, including the State of Arizona.

**ANSWER**:

AAA denies the allegations in Paragraph 391 of the Complaint.

392.    AAA's anticompetitive and exclusionary conduct in the online market-place services market does not have a valid pro-competitive justification.

**ANSWER**:

AAA denies the allegations in Paragraph 392 of the Complaint.

393.   As a result of Defendant's conduct, the Plaintiff and all others similarly situated have suffered financial harm, lost potential amounts on verdicts by the lack of access to alternative forums with fair rules, wasted time, left without market choices, and endured frustration, annoyance, inconvenience, confusion, and other forms of harm.

**ANSWER**:

AAA denies the allegations in Paragraph 393 of the Complaint.

### <u>COUNT IV</u>
**Violation of the West Virginia Antitrust Act**
**West Virginia Subclass**

394.   Plaintiff, William Hilton, incorporates herein by reference all preceding paragraphs of the Class Action Complaint as if set forth fully herein verbatim.

**ANSWER**:

Paragraph 394 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA asserts and incorporates by reference its responses to all preceding Paragraphs of the Complaint.

395.   *W. Va. Code* § 47-18-4 states that "[t]he establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce, any part of which is within this State, by any persons for the purpose of excluding competition or controlling, fixing or maintaining prices is unlawful."

**ANSWER**:

Paragraph 395 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 395 of the Complaint.

396.   The AAA operates within the State of West Virginia.

**ANSWER**:

AAA admits that it handles arbitration cases involving parties located in the State of West Virginia.

397.   The AAA has a direct effect upon West Virginia residents affected by arbitration clauses that arise out of the contracts made within the State of West Virginia.

**ANSWER**:

AAA denies the allegations in Paragraph 397 of the Complaint.

398.   The Defendant willfully acquired this position as the market share leader through anticompetitive business practices in various territories throughout the United States, including the state of West Virginia.

**ANSWER**:

AAA denies the allegations in Paragraph 398 of the Complaint.

399.   AAA's anticompetitive and exclusionary conduct in the online market-place services market does not have a valid pro-competitive justification and unfairly limited the Plaintiff's options to a forum where he would not find justice.

**ANSWER**:

AAA denies the allegations in Paragraph 399 of the Complaint.

400.   As a result of Defendant's conduct, the Plaintiffs have been harmed financially, lost potential amounts on verdicts, wasted time, left without market choices, been frustrated, annoyed, inconvenienced, confused, and otherwise harmed.

**ANSWER**:

AAA denies the allegations in Paragraph 400 of the Complaint.

## COUNT V
### Violation of the West Virginia Unfair and Deceptive Acts and Practices Act
### West Virginia Subclass

401. Plaintiff, William Hilton, incorporates herein by reference all preceding paragraphs of the Class Action Complaint as if set forth fully herein verbatim.

**ANSWER**:

Paragraph 401 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA asserts and incorporates by reference its responses to all preceding Paragraphs of the Complaint.

402. *W. Va. Code* § 46a-6-104 states that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

**ANSWER**:

Paragraph 402 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 402 of the Complaint.

403. The AAA operates within the State of West Virginia.

**ANSWER**:

AAA admits that it handles arbitration cases involving parties located in the State of West Virginia.

404. The AAA has a direct effect upon West Virginia residents affected by arbitration clauses that arise out of the contracts made within the State of West Virginia.

**ANSWER**:

AAA denies the allegations in Paragraph 404 of the Complaint.

405.   The Defendant, willfully acquired this position as the market share leader through anticompetitive business practices in various territories throughout the United States, including the state of West Virginia.

**ANSWER**:

AAA denies the allegations in Paragraph 405 of the Complaint.

406.   All West Virginia resident Plaintiffs and putative class members are persons and for purposes of protection under *W. Va. Code* § 46a-6-104.

**ANSWER**:

Paragraph 406 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 406 of the Complaint.

407.   Defendant's use of restrictive rules in consumer arbitration arbitrations, arbitrator compensation way below market rates, lack of arbitrator strikes, and the employment of predominantly corporate defense counsel as arbitrators is an unfair method of competition and unfair business practice pursuant to *W. Va. Code* § 46a-6-104.

**ANSWER**:

AAA denies the allegations in Paragraph 407 of the Complaint.

408.   As a result of the defendant's actions in a second-tier system that limits Plaintiffs' rights and choices in the market to an unfair forum where they have an 88% chance of losing their arbitration.

**ANSWER**:

AAA denies the allegations in Paragraph 408 of the Complaint.

409.   AAA's anticompetitive and exclusionary conduct in the online marketplace services market does not have a valid pro-competitive justification.

**ANSWER**:

AAA denies the allegations in Paragraph 409 of the Complaint.

410.   Further, Plaintiffs have suffered out-of-pocket damages in the form of lost opportunities in defending their rights as a result of the Defendant's anticompetitive behavior.

**ANSWER**:

AAA denies the allegations in Paragraph 410 of the Complaint.

411.   Plaintiff was forced to make a lower settlement demand and accept lower settlement amounts because his only other option was to seek justice in the AAA where he had only a 11% chance of winning at trial, may not get a trial based on the new rules, and had a higher chance of an award being entered against him than him receiving and award.

**ANSWER**:

AAA denies the allegations in Paragraph 411 of the Complaint.

412.   AAA's anticompetitive and exclusionary conduct in the online marketplace services market does not have a valid pro-competitive justification and unfairly limited the Plaintiff's options to a forum where he would not find justice.

**ANSWER**:

AAA denies the allegations in Paragraph 412 of the Complaint.

413.   AAA's anticompetitive and exclusionary conduct in the online marketplace services market does not have a valid pro-competitive justification.

**ANSWER**:

AAA denies the allegations in Paragraph 413 of the Complaint.

414. As a result of Defendant's conduct, the Plaintiffs have been harmed financially, lost potential amounts on verdicts, wasted time, left without market choices, been frustrated, annoyed, inconvenienced, confused, and otherwise harmed.

**ANSWER**:

AAA denies the allegations in Paragraph 414 of the Complaint.

## COUNT VI
### Violation of the Washington Antitrust Act
### Washington Subclass

415. Plaintiff, Joelle Nole, incorporates herein by reference all preceding paragraphs of the Class Action Complaint as if set forth fully herein verbatim.

**ANSWER**:

Paragraph 415 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA asserts and incorporates by reference its responses to all preceding Paragraphs of the Complaint.

416. *Washington Code* § 19.86.040 states, "It shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other per-son or persons to monopolize any part of trade or commerce."

**ANSWER**:

Paragraph 416 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 416 of the Complaint.

417. The AAA operates within the State of Washington.

**ANSWER**:

AAA admits that it operates within the State of Washington.

418.    The AAA directly affects Washington residents affected by arbitration clauses that arise out of contracts made within the State of Washington.

**ANSWER**:

AAA denies the allegations in Paragraph 418 of the Complaint.

419.    The Defendant willfully acquired this position as the market share leader through anticompetitive business practices in various territories throughout the United States, including the state of Washington.

**ANSWER**:

AAA denies the allegations in Paragraph 419 of the Complaint.

420.    As recently as 2021 and 2024, the Washington State legislature made the following findings regarding its antitrust/monopoly laws:

**Findings-2024 c 256:** "The legislature finds that:
(1)    Strong penalties for antitrust violations are critical to protecting consumers;
(2)    Strong penalties for antitrust violations ensure accountability, deter violations, and provide a level playing field and a fair marketplace for businesses;
(3)    As of June 6, 2024, Washington does not provide strong enough penalties to adequately deter unlawful anticompetitive business practices;
(4)    Washington's penalty for antitrust violations has also not kept pace with inflation;
(5)    Washington's civil penalties for antitrust violations are much lower than the harm antitrust violations may cause;
(6)    Washington's weak penalties place Washington consumers and businesses at greater risk; and
(7)    Washingtonians deserve strong antitrust penalties to ensure entities that unlawfully engage in anticompetitive behavior are held accountable." [ 2024 c 256 s 1.]

**Short title-2024 c 256:** "This act shall be known and cited as the antitrust penalties improvement act." [ 2024 c 256 s 3.]

**Findings-2021 c 228:** "The legislature finds that:

(1)    Strong consumer protection and antitrust penalties are critical to protecting consumers and ensuring a fair marketplace;

(2)    Strong penalties ensure accountability, deter violations, and ensure a level playing field for businesses;

(3)    Washington currently does not provide strong penalties for violations of the state's consumer protection act, which prohibits unfair or deceptive acts or practices and unfair methods of competition;

(4)    Washington's penalty for unfair or deceptive acts or practices has not kept pace with inflation, and has not increased since 1970;

(5)    Washington's penalty for unfair methods of competition has also not kept pace with inflation, and has not increased since 1983;

(6)    Consequently, Washington has one of the lowest consumer protection penalties in the United States;

(7)    Twenty-four state legislatures representing more than 200 million Americans have passed enhanced penalties for violations that target or impact certain vulnerable populations, but Washington does not have an enhanced penalty;

(8)    Many Washingtonians are hurting financially due to the impacts of the global pandemic; (9)    Washington's weak penalties place Washington consumers at greater risk; and

(3)    Washingtonians deserve strong consumer protections to ensure entities that illegally, unfairly, and deceptively go after their hard-earned dollars are held accountable." [ 2021 c 228 s 1.]

RCW    19.86.140,    Washington    State    Legislature,    available    at https://app.leg.wa.gov/RCW/default.aspx?cite=19.86.140 (accessed Aug. 29, 2024) (emphasis in original).

**ANSWER**:

Paragraph 420 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 420 of the Complaint.

421.    Washington State legislature encourages the Court to look to Federal Court decisions and final orders of the Federal Trade Commission in dealing with matters that involve monopolies and restraints of trade. See RCW § 19.86.920.

**ANSWER**:

Paragraph 421 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 421 of the Complaint.

422.    AAA's anticompetitive and exclusionary conduct in the online marketplace services market does not have a valid pro-competitive justification.

**ANSWER**:

AAA denies the allegations in Paragraph 422 of the Complaint.

423.    As a result of Defendant's conduct, the Plaintiffs have been harmed financially, lost potential amounts on verdicts, wasted time, left without market choices, been frustrated, annoyed, inconvenienced, confused, and otherwise harmed.

**ANSWER**:

AAA denies the allegations in Paragraph 423 of the Complaint.

**COUNT VII**
**Violation of Washington's Unfair and Deceptive Acts and Practices Law**
**Washington Subclass**

424.    Plaintiff, Joelle Nole, incorporates herein by reference all preceding paragraphs of the Class Action Complaint as if set forth fully herein verbatim.

**ANSWER**:

Paragraph 424 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA asserts and incorporates by reference its responses to all preceding Paragraphs of the Complaint.

425.    *Washington Code* § 19.86.020 states that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

**ANSWER**:

Paragraph 425 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 425 of the Complaint.

426.    All Washington resident Plaintiffs and putative class members are persons and for purposes of protection under Washington § 19.86.020.

**ANSWER**:

Paragraph 426 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 426 of the Complaint.

427.    Defendant's use of restrictive rules in consumer arbitration, arbitrator compensation way below market rates, lack of arbitrator strikes, and the employment of predominantly corporate defense counsel as arbitrators is an unfair method of competition and unfair business practice pursuant to Washington § 19.86.020.

**ANSWER**:

AAA denies the allegations in Paragraph 427 of the Complaint.

- 149 -

428. As a result of the defendant's actions in a second-tier system that limits Plaintiffs' rights and choices in the market to an unfair forum where they have a 58% chance of losing their arbitration.

**ANSWER**:

AAA denies the allegations in Paragraph 428 of the Complaint.

429. Further, Plaintiffs have suffered out-of-pocket damages in the form of lost opportunities to defend their rights as a result of the Defendant's anticompetitive behavior.

**ANSWER**:

AAA denies the allegations in Paragraph 429 of the Complaint.

430. AAA's anticompetitive and exclusionary conduct in the online marketplace services market does not have a valid pro-competitive justification.

**ANSWER**:

AAA denies the allegations in Paragraph 430 of the Complaint.

431. As a result of Defendant's conduct, Plaintiffs have been financially harmed, annoyed, inconvenienced, left with no options in the market, and otherwise harmed.

**ANSWER**:

AAA denies the allegations in Paragraph 431 of the Complaint.

## COUNT VIII
**Violation of North Carolina's Unfair and Deceptive Acts and Practices Law**
**North Carolina Subclass**

432. Plaintiff, Eugenie Balogun, incorporates herein by reference all preceding paragraphs of the Class Action Complaint as if set forth fully herein verbatim.

**ANSWER**:

Paragraph 432 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA asserts and incorporates by reference its responses to all preceding Paragraphs of the Complaint.

433. N.C. Code § 75-1.1(a) states that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

**ANSWER**:

Paragraph 433 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA states that the statute referenced in this Paragraph speaks for itself and denies any characterization or description that is inconsistent therewith or taken out of context. AAA denies the remaining allegations in Paragraph 433 of the Complaint.

434. All North Carolina resident Plaintiffs and putative class members are persons, and for purposes of protection under N.C. Code § 75-1.1.

**ANSWER**:

Paragraph 434 of the Complaint contains legal assertions as to which no response is required. To the extent a response is required, AAA denies the allegations in Paragraph 434 of the Complaint.

435. Defendant's use of restrictive rules in consumer arbitration, arbitrator compensation way below market rates, lack of arbitrator strikes, and the employment of predominantly corporate defense counsel as arbitrators is an unfair method of competition and unfair business practice pursuant to N.C. Code § 75-1.1.

**ANSWER**:

AAA denies the allegations in Paragraph 435 of the Complaint.

- 151 -

436.   As a result of the defendant's actions in a second-tier system that limits Plaintiffs' rights and choices in the market to an unfair forum where they have a 76% chance of losing their arbitration.

**ANSWER**:

AAA denies the allegations in Paragraph 436 of the Complaint.

437.   AAA's anticompetitive and exclusionary conduct in the online market-place services market does not have a valid pro-competitive justification.

**ANSWER**:

AAA denies the allegations in Paragraph 437 of the Complaint.

438.   Further, Plaintiffs have suffered out-of-pocket damages in the form of lost opportunities in defending their rights as a result of the Defendant's anti-competitive behavior.

**ANSWER**:

AAA denies the allegations in Paragraph 438 of the Complaint.

439.   As a result of Defendant's conduct, Plaintiffs have been financially harmed, annoyed, inconvenienced, left with no options in the market, and otherwise harmed.

**ANSWER**:

AAA denies the allegations in Paragraph 439 of the Complaint.

440.   Plaintiffs have been individually injured and suffered resulting damages, but in the context of this class action have decided to forego their individual damages to pursue class damages that were incurred by each member of the classes as a result of deprivation of a meaningful arbitral forum as to the classes.

**ANSWER**:

AAA denies the allegations in Paragraph 440 of the Complaint.

## GENERAL DENIAL

AAA denies all allegations in the Complaint unless AAA has expressly admitted those allegations herein.  Where an allegation in the Complaint is directed at a party that is not affiliated with AAA, then except as otherwise expressly stated, AAA denies the allegations set forth in the Complaint on the basis that it denies the knowledge or information sufficient to form a belief concerning the truth of such allegations.

## AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise bear, AAA asserts the following avoidances and defenses to Plaintiffs' claims.  Federal Rule of Civil Procedure 8 sets forth the avoidances and defenses that must be affirmatively stated in a pleading. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: [identified affirmative defenses].").  To the extent necessary, AAA alleges Plaintiffs' claims are barred because the acts Plaintiffs allege AAA undertook are insulated from civil suit by Arbitral Immunity.  AAA reserves

the right to assert additional avoidances and defenses as they become known during discovery and based on the record as it develops, up to and including the time of trial.

1.      Plaintiffs fail to state a claim for which relief can be granted, for all of the reasons AAA has outlined in its Motion to Dismiss [Dkt. No. 14], Reply to Response to Motion to Dismiss [Dkt. No. 22], and its Motion for Reconsideration [Dkt. No. 25].

2.      Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, because AAA is insulated from civil suit by the doctrine of Arbitral Immunity.

3.      Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, because Plaintiffs have not suffered any injury in fact and/or any injury cognizable under the antitrust laws.

4.      Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, because they lack antitrust and/or Article III standing to bring this action against AAA, including but not limited to standing under the Sherman Act and state laws, and because they cannot meet the antitrust standing requirements set forth in *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983).

5.      Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, because Plaintiffs failed to mitigate any damages they may have suffered.

6.      Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, due to the ratification of, and consent to, the conduct of AAA.

7.      Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, due to the inapplicability of the state and federal statutes at issue.

8.      Plaintiffs' claims, and the claims of any putative class members, are barred by the applicable statutes of limitations for each potential claim.

9.      Plaintiffs' claims all "arise out of contract," as that term is used in Arizona, and they all elected to bring their claims in court in Arizona.  As a result, AAA is entitled to recover its reasonable attorneys' fees and costs for responding to this litigation pursuant to A.R.S. §§ 12-341.01 and 12-341.  AAA is also entitled to recover its reasonable fees and costs for responding to this litigation on any other applicable statutory or contractual basis that would allow recovery by any other party and apply to any of Plaintiffs' claims, be they the named Plaintiffs or any of the alleged putative class of Plaintiffs.

10.      AAA reserves the right to assert other defenses as this action proceeds up to and including the time of trial.

### **PRAYER FOR RELIEF**

WHEREFORE, AAA respectfully requests that judgment be entered in favor of AAA and against Plaintiffs, dismissing the Complaint in its entirety with prejudice. AAA further requests that this Court award AAA (i) its reasonable attorneys' fees and costs for defending this lawsuit, pursuant to A.R.S. §§ 12-341.01 and 12-341, and any other

- 155 -

applicable statute or contractual provision; its costs and disbursements, and (ii) such other and further relief as the Court deems proper.

RESPECTFULLY SUBMITTED this 28ᵗʰ day of April 2026.

HOGAN LOVELLS US LLP

/s/ Justin W. Bernick
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Tel: (202) 637-5600
Fax: (202) 637-5910
justin.bernick@hoganlovells.com

**Attorney for Defendant American Arbitration Association, Inc.**

DICKINSON WRIGHT PLLC

/s/ Josh Grabel
Josh Grabel
DICKINSON WRIGHT PLLC
1850 North Central Avenue
Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5046
jgrabel@dickinsonwright.com

**Attorney for Defendant American Arbitration Association, Inc.**