JUSTIN BERNICK (Pro Hac Vice)
Doo Hyun Nam (Pro Hac Vice forthcoming)
**HOGAN LOVELLS CADWALADER US LLP**
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
justin.bernick@hlc.com
dh.nam@hlc.com

JOSH GRABEL (AZ State Bar No. 018373)
ERIC BRYCE KESSLER (AZ State Bar No. 032182)
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue
Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5046
jgrabel@dickinsonwright.com
bkessler@dickinsonwright.com

***Attorneys for Defendant American Arbitration Association, Inc.***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Stephanie Stephens; Joelle Nole; and William Hilton; *Individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>American Arbitration Association, Inc.,<br><br>Defendant. | Case No.: 2:25-CV-01650-PHX-JJT<br><br>**DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>**(Oral Argument Requested)** |

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ........ **- 1 -**

**BACKGROUND** ........ **- 2 -**

**LEGAL STANDARD** ........ **- 5 -**

**ARGUMENT** ........ **- 6 -**

I. Plaintiffs Lack Evidentiary Support for Their Alleged Foreclosure Percentage. ........ - 6 -

II. Plaintiffs Lack Evidentiary Support for Their Allegation that AAA "influenced" Business to Adopt Exclusive Provisions. ........ - 9 -

III. Plaintiffs Lack Evidentiary Support for Their Allegations that Other Arbitration Rules Provide Procedures that AAA Consumer Arbitration Rules Do Not. ........ - 11 -

**CONCLUSION** ........ **- 12 -**

# TABLE OF AUTHORITIES

**Cases**

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) .......... - 5 -, - 7 -

*Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) .......... - 7 -

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) .......... - 5 -

*Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013) .......... - 7 -

*King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023) .......... - 9 -

*Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025) .......... - 5 -, - 8 -

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016) .......... - 7 -

*Superior Consulting Servs., Inc. v. Steeves-Kiss*, 786 F. App'x 648 (9th Cir. 2019) .......... - 5 -, - 9 -

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990) .......... - 5 -

*Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169 (C.D. Cal. 2002) .......... - 5 -

*Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146 (9th Cir. 2002) .......... - 5 -

# INTRODUCTION

Plaintiffs crossed the Rule 11 line when they filed the SAC containing false, misleading, and unsupported allegations that even a minimally competent pre-filing inquiry would have exposed.

***First***, the SAC alleges that a "staggering 63%" of the 123 agreements Plaintiffs reviewed required arbitration before AAA. *See, e.g.,* SAC at 3; *id.* ¶ 239. Yet when AAA requested production of the agreements underlying that survey, Plaintiffs produced only 84, and just 8—*less than 10%*—designated AAA as the sole arbitral forum. Plaintiffs also failed to disclose that 5 of those 8 "AAA-only" clauses permitted consumers to opt out of arbitration entirely and that AAA's consumer arbitration rules allow every consumer with an eligible claim to proceed in small-claims court instead—thereby misleading the Court about the options available to consumers for resolving their disputes.

***Second***, the SAC alleges that AAA "promotes," "influences," and "encourages" businesses to adopt "AAA-only" exclusivity clauses, including through drafting tools and sample arbitration clauses. *See, e.g., id.* at 2, 4, 7-8; *id.* ¶¶ 17, 58, 245, 307, 351. This allegation likewise has no evidentiary support. Plaintiffs have no evidence that AAA influenced any specific business to select AAA exclusively or reject a competing arbitral forum, and the depositions taken to date confirm that no such evidence exists.

***Third***, the SAC alleges that JAMS rules (and other AAA arbitration rules) provide procedural rights that AAA consumer arbitration rules deny, including discovery and depositions. *Id.* ¶¶ 134-137, 179-80. But a reasonable inquiry would have revealed that Plaintiffs are mischaracterizing JAMS rules and AAA's non-consumer arbitration rules.

These were not peripheral defects. The above factual allegations were central to Plaintiffs' claims, and the Court credited them in denying AAA's motion to dismiss. For example, the Court only sustained Plaintiffs' antitrust claims by relying on (1) the SAC's "allegations of AAA's influence on its corporate entity customers' use of exclusivity clauses" and (2) the SAC's allegations regarding the "number of arbitration agreements containing

AAA-exclusive arbitration provisions." ECF No. 23 at 6-7. However, neither of these categories of allegations has the level of "evidentiary support" as required under Rule 11.

Rule 11 does not permit counsel to make unsupported accusations first and search for support later. Plaintiffs relied on false statistics regarding the percentage of contracts that contain "AAA-only" clauses, unsupported allegations regarding AAA's "influence" on such contracts, false comparisons with JAMS' rules, and false characterizations of AAA's rules—all of which would have been obvious to Plaintiffs' counsel had they conducted a reasonable inquiry before filing the SAC. And Plaintiffs' counsel continue to press those allegations even after their own production and the rest of the discovery record exposed their falsity. The safe-harbor period only confirmed the problem. After receiving AAA's Rule 11 letter, Plaintiffs admitted that they had produced the "wrong set" of contracts and that they had erroneously characterized AAA as the "only forum available" under certain contracts. They then offered a proposed amended complaint that fails to correct the core Rule 11 issues and instead adds roughly 75 pages of new allegations, most unrelated to the Rule 11 issues, along with tens of thousands of pages of exhibits. That filing appears designed to harass, not to cure counsel for Plaintiffs' violation of Rule 11. The Court should impose sanctions to cure the Rule 11 violation, deter future violations, and compensate AAA for the cost and burden associated with responding to the false allegations.

## BACKGROUND

The Court's motion to dismiss ruling supplies the procedural backdrop. The Court accepted Plaintiffs' allegations as true and evaluated their theory that AAA used low pricing and restrictive procedures to attract corporate customers, influenced those customers to designate AAA as the exclusive arbitration provider, and thereby foreclosed competing providers. ECF No. 23 at 2-3, 5-7. The SAC continues to advance that theory. SAC ¶¶ 58-59, 91, 233-245, 305-308.

The Court's ruling turned principally on two sets of alleged facts. First, Plaintiffs

represented that AAA was the exclusive forum in 63% of 123 (or 126[1]) surveyed consumer agreements, and an even greater percentage within certain industries. *Id.* at 3; *id.* ¶ 239. The Court relied upon this factual allegation to satisfy Plaintiffs' burden of alleging substantial foreclosure of AAA's competitors.[2] ECF No. 23 at 6–7. Second, Plaintiffs represented that AAA promoted, influenced, and encouraged businesses to adopt provisions designating AAA as the exclusive arbitration provider, including through drafting tools and sample arbitration clauses. *See, e.g.,* SAC at 2, 4, 8; *id.* ¶¶ 17, 58, 245, 307, 351. Again, the Court relied upon this factual allegation to satisfy Plaintiffs' pleading burden. ECF No. 23 at 6–7.

Although AAA's motion for reconsideration remains pending, ECF No. 25, this particular Motion does not ask the Court to revisit its motion-to-dismiss analysis. Instead, it asks whether Plaintiffs' counsel had a reasonable basis to allege—and continue to assert—the facts on which that analysis depended. In discovery, AAA requested the documents supporting Plaintiffs' allegations. Plaintiffs produced only 84 of the 123 arbitration agreements they claimed to have reviewed, and just 8 of those 84—*less than 10%*—designated AAA as the sole arbitral forum. *See* Appendix A; [3] Ex. 1, Hilton's Responses & Objections to AAA's RFP Nos. 13-15 (producing Bates-stamped documents PLAINTIFFS-000001–001547 in response to AAA's requests for the arbitration agreements Plaintiffs allegedly reviewed).[4]

Plaintiffs also produced three documents in response to AAA's request for evidence supporting their allegation that AAA influenced businesses to designate AAA as their

---

[1] Plaintiffs provide inconsistent numbers for the agreements they allegedly surveyed. *Compare* SAC ¶ 238 *with id.* at 3.

[2] Although the Court relied on those figures as evidence of substantial market foreclosure, Plaintiffs now insist that the figures were never intended as "measurements of consumer accounts or nationwide market foreclosure." ECF No. 53 at 3. In short, they disavow the very inference on which the Court relied in sustaining their claims.

[3] For ease of reference, Appendix A reproduces the relevant language from the 84 consumer arbitration agreements Plaintiffs produced in response to AAA's discovery requests. AAA can provide the underlying agreements at the Court's request.

[4] AAA served substantially similar RFPs on each named Plaintiff, and each Plaintiff provided a substantially identical response.

exclusive arbitration provider. Ex. 1, Hilton's Responses & Objections to AAA's RFP No. 54 (producing PLAINTIFFS-001272, PLAINTIFFS-001274, and PLAINTIFFS-001290 as purported support for their allegation of "anticompetitive conduct."). But none of them support that allegation. *See* Ex. 2, PLAINTIFFS-001272; Ex. 3, PLAINTIFFS-001274; Ex. 4, PLAINTIFFS-001290. Plaintiffs further admit they have no evidence of any agreement between AAA and a third party requiring that third party to use AAA exclusively. Ex. 1, Hilton's Responses & Objections to AAA's RFP No. 61.

Moreover, Plaintiffs have conducted several depositions, none of which has shown that AAA caused a third-party company to designate AAA exclusively or to remove a competing provider. For example, Adam Shoneck, AAA's Vice President of Consumer Division, testified that AAA does "not take a position whether . . . it should be written into the contract." ECF No. 54-2 at 762 (Ex. 53, Shoneck Dep. 70:15-21). Likewise, Svetlana Gitman, AAA's Senior Vice President of Business Development testified that businesses typically select a provider before contacting AAA, and that AAA does not discourage them from using competitors such as JAMS or NAM. ECF No. 54-2 at 950-952, 1011-1012 (Ex. 55, Gitman Dep. 71:6-15, 72:19-73:19, 132:20-133:8).

AAA gave Plaintiffs every opportunity to withdraw their unsupported allegations. On October 12, 2026, AAA served its Rule 11 letter, triggering the 21-day safe-harbor period. ECF No. 53-1 at 3 (Ex. A). The very next day, Plaintiffs conceded that they had produced the "wrong set" of the contracts they claim to have reviewed. *Id.* at 60-61 (Ex. B). On October 29, 2026, Plaintiffs provided a proposed third amended complaint ("TAC") that purported to correct the challenged allegations but failed to address the core issues raised in AAA's Rule 11 letter. *Id.* at 191-197 (Ex. V). Instead, the proposed amended complaint added roughly 75 pages of allegations beyond the operative complaint and tens of thousands of pages of exhibits—the vast majority of which do not bear on the Rule 11 issues. *Id.* Plaintiffs' accompanying production fared no better. Plaintiffs produced what they claimed was the "right" set of contracts, but that production contained 417 contracts—not the 123 or 126 contracts Plaintiffs allegedly reviewed—leaving AAA and the Court unable to identify which

documents, if any, support Plaintiffs' allegations. Worse, Plaintiffs revealed that their supposed methodology consisted of starting at the beginning "of the alphabet and went to C"—yet the SAC represents to the Court that Plaintiffs reviewed contracts from Wells Fargo, HSBC Bank, and other issuers well outside that range. *Id.* at 74 (Ex. F); *see* SAC ¶ 332. On November 2, 2026, AAA explained to Plaintiffs that the proposed third amended complaint failed to cure the Rule 11 violations. *Id.* at 191-197 (Ex. V). Plaintiffs filed the proposed third amended complaint anyway. *See* ECF No. 53.

AAA does not ask the Court to resolve any factual dispute between Plaintiffs and AAA, but instead to hold Plaintiffs to their burden of showing that their "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b).

## LEGAL STANDARD

When "the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). "'[T]he mere existence of one non-frivolous claim' in a complaint does not immunize it from Rule 11 sanctions." *Id.* at 677 (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362-65 (9th Cir. 1990)). Nor would counsel's subjective good-faith belief provide a safe harbor; Rule 11 sanctions are governed by an objective standard of reasonableness. *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025).

Moreover, a complaint that is "factually misleading" provides a sufficient basis for Rule 11 sanctions. *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 786 F. App'x 648, 651 (9th Cir. 2019) (citing *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002)); *see also Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 177-78 (C.D. Cal. 2002) (omission of facts known to counsel that would make the truth of allegations an "impossibility" sufficient to support Rule 11 sanctions).

## ARGUMENT

Plaintiffs' counsel violated Rule 11's prohibition against making false or misleading factual assertions without a reasonable pre-filing inquiry or evidentiary support. They first pleaded particular facts that they knew (or should have known) were false and obtained a favorable ruling because the Court was required to accept those allegations. Now, they continue to maintain those allegations despite the fact that discovery has provided no basis for them. As shown below, Plaintiffs inflated an "AAA-only" rate of at most 3.57% into a purported 63% foreclosure figure; accused AAA of influencing businesses to adopt exclusive clauses without evidentiary support for the notion that AAA influenced a single business; fabricated differences in arbitration procedures between JAMS and AAA; and falsely alleged that AAA's arbitration rules uniquely restrict discovery.

AAA served Plaintiffs with notice of this motion as required under Rule 11(c)(2), yet Plaintiffs refused to correct the false record they created. Plaintiffs' continued refusal to correct or withdraw those allegations warrants sanctions.

### I. Plaintiffs Lack Evidentiary Support for Their Alleged Foreclosure Percentage.

Plaintiffs' central foreclosure allegation—that AAA was "the only forum available" in a "staggering 63%" of the consumer agreements counsel purportedly reviewed—was false, materially misleading, and unsupported by any evidence.[5] SAC at 3; *id.* ¶ 239. Plaintiffs

---

[5] Rather than withdraw the allegation, Plaintiffs affirmatively endorses it in their proposed TAC. *See* ECF No. 53-2 ¶ 265 ("The original complaint reported that its survey of 126 consumer agreements across several industries found AAA named alone in 63% …. As a smaller sample it was very close [to Plaintiffs' new weighted estimates]."). But the weighted analysis (of credit-card issuer agreements) cannot support that inference. Among other issues, by Plaintiffs' own account, the analysis does "not establish which clause governed a case, that the case involved a [credit] card, or that designation caused forum selection." ECF No. 56-3 at 1399 (Ex. 101). The results illustrate those limitations. For example, for Comenity agreements identifying AAA and NAM as arbitration providers, the analysis nevertheless attributes 32% of cases to JAMS. *Id.* at 1398. Conversely, for issuers whose agreements name a provider *other than* AAA, the analysis nevertheless attributes 50% of cases to AAA. *Id.* Put simply, on its face, Plaintiffs' new "analysis" provides no support for the 63% statistic that Plaintiffs maintain in the complaint in violation of Rule 11. It is unsurprising that Plaintiffs

presented that figure as an established fact, repeatedly invoked it to support their market-foreclosure theory, and persuaded the Court to credit it in finding an adequately pleaded exclusive-dealing claim. Here, both Rule 11 prongs are satisfied. The 63% allegation was objectively baseless, and Plaintiffs' own production confirms that counsel did not conduct a reasonable inquiry before pleading it. *Christian*, 286 F.3d at 1127.

When AAA requested the 123 (or 126) arbitration agreements Plaintiffs claimed to have reviewed, Plaintiffs produced only 84. *See* Appendix A. Those 84 agreements demonstrate that the pleaded 63% figure is false. *Id.* Seventy-four of the 84 agreements—*88%*—provide consumers with *multiple* arbitral forum options. *Id.* Only 8 of the 84 agreements—*less than 10%*—designate AAA alone, and even that figure overstates Plaintiffs' case because five of those eight allow consumers to opt out of arbitration altogether.[6] *Id.* Thus, Plaintiffs' own production shows that only three agreements—3.57%—even arguably compelled consumers to arbitrate exclusively before AAA.

Even that 3.57% figure is inflated. AAA's Consumer Rules preserve access to small-claims court for *all* consumers with eligible claims, regardless of what businesses' consumer clauses state. *See* AAA Consumer: Arbitration Rules and Mediation Procedures R-9*, available at* https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf [hereinafter AAA Consumer Rules] ("Either party may choose to take their own claims directly to small claims court without first filing with the AAA."). Indeed, Principle 5 of the AAA's Due Process Protocol is titled "Small Claims," and states that "Consumer ADR Agreements should make it clear that all parties retain the right to seek relief in a small claims

---

concede that the statistics do not measure market foreclosure, ECF No. 53 at 3, and thus have no relevance to the exclusive-dealing claim at issue.

[6] Plaintiffs now admit that "[m]ost of the reviewed agreements that name AAA alone" provide an opt-out right, yet continue characterize those agreements as AAA-only. TAC ¶ 278. The Ninth Circuit has repeatedly recognized that arbitration opt-out provisions afford a meaningful choice, even when they require written notice by mail within a specified period, such as 30 days. *See, e.g., Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210–11 (9th Cir. 2016); *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013); *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002).

court for disputes or claims within the scope of its jurisdiction." *See* AAA Consumer Due Process Protocol at 2, *available at* *t*https://www.adr.org/media/x3mdzarl/consumer_due_process_protocol.pdf. Plaintiffs nevertheless counted agreements as "AAA-only" even when AAA's rules preserve small-claims court for every consumer or that five of the eight agreements designating AAA alone still permit consumers to opt out of arbitration entirely. No reasonable attorney confronting these contrary facts could have found Plaintiffs' inflated 63% foreclosure allegation "well-founded." *Lake*, 130 F.4th at 1069–70.

Plaintiffs' exclusivity allegations suffer from other infirmities as well. For example, Plaintiffs skewed their sample by excluding readily available agreements that contradicted their claimed exclusivity rate. Most glaringly, they omitted *fifty-six* agreements from JP Morgan Chase and American Express—two of the country's largest credit card issuers—even though those agreements appeared in the same CFPB database Plaintiffs purported to use and every one of those agreements offered *multiple* arbitral-forum options.[7] By omitting this substantial body of contrary data and presenting their cherry-picked sample as representative, Plaintiffs materially inflated the foreclosure rate and misled the Court about the prevalence of AAA-exclusive provisions.[8] A survey built on that selective omission is "unreliable on its

---

[7] Based on Plaintiffs' filing of their initial Complaint on May 15, 2025, AAA reviewed the "Archived Q1-2024 agreements" collection. *See* CFPB *Credit Card Agreement Archive,* CFPB, *available at* https://www.consumerfinance.gov/credit-cards/agreements/archive/ (last visited Oct. 12, 2026).

[8] Plaintiffs' latest filing only compounds the problem. They now offer a purported list of credit card issuers—which now include JP Morgan Chase and American Express—whose contracts they claim to have reviewed for the operative complaint. ECF No. 56-4 at 95 (Ex. 112). But that list cannot be reconciled with Plaintiffs' own prior representation that they only reviewed issuers whose names begin with the letters A through C, ECF No. 53-1 at 74 (Ex. F), or with the list in their operative complaint, SAC ¶ 233. Nor have Plaintiffs ever produced the purportedly "correct" set of 123 (or 126) contracts that would allow AAA or the Court to verify the accuracy of their allegations—Plaintiffs instead produced 417 contracts, obscuring which contracts they actually reviewed. Finally, Plaintiffs' own position suggests the 63% figure may have included contracts permitting courts to choose the forum absent party agreement, despite characterizing AAA as "the only forum available to consumers" in such agreements. Ex. 5 at 1 (stating Comenity agreements "have AAA and NAM but require the

face," and counsel violated Rule 11 by relying on it. *King v. Whitmer*, 71 F.4th 511, 523 (6th Cir. 2023); *see also Superior Consulting Servs.,* 786 F. App'x at 651 (affirming Rule 11 sanctions based on a "factually misleading" complaint).

**II. Plaintiffs Lack Evidentiary Support for Their Allegation that AAA "influenced" Businesses to Adopt Exclusive Provisions.**

Plaintiffs allege that AAA promoted, influenced, and encouraged businesses to adopt provisions designating AAA as the exclusive arbitration provider, including through drafting tools and sample arbitration clauses. *See, e.g.,* SAC at 2, 4, 8; *id.* ¶¶ 17, 58, 245, 307, 351. The Court relied upon that factual allegation at the pleading stage to sustain Plaintiffs' antitrust claims. But Rule 11(b)(3) required Plaintiffs to have evidentiary support for this allegation, and there is none.

Plaintiffs identify no evidence whatsoever that AAA promoted, influenced, or encouraged any specific business to adopt exclusive arbitration provisions in consumer contracts *at all*, much less that it encouraged "AAA-only" provisions.[9] There is no reasonable basis to allege that AAA discouraged companies from designating JAMS, NAM, or small-claims court, or encouraged any company to remove a competing arbitration provider. The

parties to agree, and if they can't, the judge picks. That's a AAA only clause because nobody has ever heard of NAM."); *see* SAC at 3.

[9] Plaintiffs' case continues to rest on the unsupported premise that AAA encourages businesses to designate it as their exclusive arbitration provider. *See* ECF No. 53-2 at 11; *id.* ¶ 17. The new complaint allegations do not fill that evidentiary gap. Plaintiffs point to AAA's review of businesses' terms and conditions for compliance with its Due Process Protocol, *id.* ¶¶ 366–374, but that review has nothing to do with exclusivity. *See id.* ¶¶ 374, 376. Nor does the article cited by Plaintiffs—containing an exemplar clause—say anything at all about businesses designating AAA exclusively. *See id.* ¶¶ 357, 359. Instead, the article describes the due process protections AAA requires in *every* consumer clause regardless of who else might be designated as an arbitration provider. ECF No. 54-2 at 677–690 (Ex. 52). Nowhere does the article suggest a company should exclude competing providers to obtain "the benefits of the AAA's process." *Id.* at 690. Finally, Plaintiffs point to AAA's business-development unit and its efforts to grow revenue. *See* ECF No. 53-2 ¶¶ 361–62, 492–99. But marketing services, tracking customers, and setting revenue goals are ordinary business activities. None of those activities suggests that AAA asked any business to designate AAA as its exclusive arbitration provider or to remove a competing provider from its arbitration clause.

three documents Plaintiffs produced on this issue do not support their allegations at all. *See* Ex. 2, PLAINTIFFS-001272; Ex. 3, PLAINTIFFS-001274; Ex. 4, PLAINTIFFS-001290. Plaintiffs also admit they have no evidence of any agreement requiring a third party's exclusive use of AAA. Ex. 1, Hilton's Responses & Objections to AAA's RFP No. 61. Furthermore, the depositions conducted to date have confirmed that AAA plays no role in such exclusivity. The deposition testimony confirmed that AAA neither drafts consumer clauses nor encourages businesses to designate AAA exclusively as their arbitration provider. ECF No. 54-2 at 762 (Ex. 53, Shoneck Dep. 70:15-21); ECF No. 54-2 at 950-952, 1011-1012 (Ex. 55, Gitman Dep. 71:6-15, 72:19-73:19, 132:20-133:8).

Worse, Plaintiffs allege that businesses use AAA's clause-drafting tools to draft consumer arbitration clauses, but the tools themselves affirmatively contradict that allegation. Those free, publicly available tools do not generate *consumer* arbitration clauses. AAA's website expressly warns, "Does not include Consumer Clauses," offers no option to create one, and contains no consumer-clause template Plaintiffs can identify. *See Alternative Dispute Resolution Clause Builder Tool*, Am. Arb. Ass'n., https://www.clausebuilder.org/ (last visited Oct. 12, 2026); *see also AAA Clause Drafting,* Am. Arb. Ass'n., https://www.adr.org/clause-drafting/ (last visited Oct. 12, 2026) ("ClauseBuilder AI does not include Employment or Consumer Clauses."). A basic pre-filing review would have exposed that false allegation.[10] Plaintiffs either failed to examine the cited materials or examined them and pleaded the opposite of what they showed. Even after AAA identified these false allegations, Plaintiffs failed to correct the record. The conduct of Plaintiffs' counsel fails to comport with Rule 11's reasonable-inquiry requirement and the error is not harmless—the Court relied upon those

---

[10] Plaintiffs still identify no evidence that AAA's clause-drafting tools generated consumer arbitration clauses for businesses. They now allege that AAA did not always disclose that limitation and removed the consumer-clause option only recently. *See* ECF No. 53-2 at 377–383. But the absence of a disclaimer does not establish that the tools offered that functionality, and Plaintiffs' own exhibits contradict their premise: the archived pages offered neither an option to generate a consumer clause nor a standard consumer clause. *See* ECF No. 54-2 at 1767 (no consumer-clause option); *id.* at 1781–82, 1787, 1792 (no standard consumer clauses).

allegations in sustaining Plaintiffs' claims and forcing AAA to incur the substantial burden and expense of defending a baseless action. Sanctions are the appropriate remedy to cure the Rule 11 violation, deter future violations, and compensate AAA for the cost and burden associated with responding to the false allegations.

## III. Plaintiffs Lack Evidentiary Support for Their Allegations that Other Arbitration Rules Provide Procedures that AAA Consumer Arbitration Rules Do Not.

Plaintiffs support their argument that AAA's consumer rules are unfair primarily by comparing those procedures to JAMS and AAA's non-consumer rules. For example, the SAC alleges that JAMS permits discovery and depositions while AAA does not. SAC ¶¶ 134–137. But Plaintiffs cite the JAMS *Comprehensive* Arbitration Rules, which generally govern disputes exceeding *$250,000*, rather than the JAMS Streamlined Rules that apply by default to small consumer matters. *See id.* ¶ 137; JAMS Comprehensive Arbitration Rules & Procedures, Rule 1, *available at* https://www.jamsadr.com/rules-comprehensive-arbitration. Indeed, Plaintiffs identified no evidence that their alleged disputes with businesses would have proceeded under the JAMS Comprehensive Arbitration Rules had they selected JAMS instead of AAA. *See* Ex. 1, Hilton's Responses & Objections to AAA's RFP No. 60. Like AAA's Consumer Rules, JAMS Streamlined Rules leave information exchange to the arbitrator's discretion and provide no affirmative right to take depositions.[11] *Compare* JAMS Streamlined Arbitration Rules & Procedures, Rule 13, *available at* https://www.jamsadr.com/rules-streamlined-arbitration *with* AAA Consumer Rules, R-20. Plaintiffs' false allegations to the contrary violate Rule 11.

Plaintiffs also allege that "AAA has elected to make only its Consumer Rules far outside industry norms of arbitration rules" and that, in "employment, construction, labor, etc.," AAA "allows . . . access to discovery and depositions in most arbitrations." SAC ¶¶

---

[11] Plaintiffs' proposed TAC continues to suggest that information exchange under JAMS's Streamlined Rules differs significantly from that under AAA's Consumer Rules. *See* ECF No. 53-2 ¶ 148 ("JAMS started from a different place."); *see also id.* ¶ 690. Yet the Streamlined Rules likewise do not guarantee depositions, interrogatories, or requests for admission that Plaintiffs fault AAA's rules for not providing as a matter of right. *See id.* ¶ 145.

179-80.[12] AAA's publicly available rules directly refute both allegations. Across its Employment, Commercial, and Construction Rules, AAA consistently leaves information exchange to the arbitrator's discretion and does not guarantee depositions. For example, AAA's Employment Rules place information exchange within the arbitrator's discretion rather than providing categorical "access to discovery" or depositions. *See* AAA Employment/Workplace: Arbitration Rules and Mediation Procedures R-21, *available at* https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-mediation-procedures.pdf. The same is true for AAA commercial arbitrations and AAA construction arbitrations. *See* AAA Commercial: Arbitration Rules and Mediation Procedures R-23 *available at* https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf; AAA Construction: Industry Arbitration Rules and Mediation Procedures, R-24, *available at* https://www.adr.org/media/kydkdsn1/construction-industry-arbitration-rules-and-mediation-procedures-2024.pdf. Like AAA's Consumer Rules, AAA's Employment, Commercial, and Construction Rules all vest information exchange in the arbitrator's discretion; none creates an automatic right to discovery or guarantees depositions. The fact that AAA's Rules, at all levels, give discretion related to discovery *to the arbitrator* is consistently applied, and directly contrary to the allegation made by Plaintiffs in the SAC. There is no evidentiary basis for Plaintiffs' false allegations to the contrary, and Rule 11 sanctions are warranted.

## CONCLUSION

For the foregoing reasons, AAA respectfully requests that the Court grant this Rule 11 motion and impose sanctions against Plaintiffs' counsel Susan Mary Rotkis, David A. Chami,

---

[12] Plaintiffs' proposed TAC continues to allege "information exchange" under AAA's Consumer Rules "are outside the industry norm for arbitration," that AAA's Consumer Rules is out of the norm in comparison to "AAA's other legal rules," and that "AAA has a unique set of rules for consumers that is drastically more restrictive in what it allows than the rules for other types of arbitrations." ECF No. 53-2 ¶¶ 112, 400-401, 697. Plaintiffs further allege "AAA ran/runs its employment and consumer programs under different procedural frameworks during the historical period." *Id.* ¶ 231.

Benjamin Sheridan, and Jed Nolan. In particular, AAA asks the Court to (1) dismiss Plaintiffs' claims with prejudice; (2) strike the SAC and the allegations lacking evidentiary support; (3) award AAA its reasonable attorney's fees and costs; and (4) grant further relief that the Court deems appropriate to remedy and deter future violations under Rule 11(c)(4).

RESPECTFULLY SUBMITTED this 9th day of November, 2026.

**HOGAN LOVELLS CADWALADER US LLP**

Justin W. Bernick
Doo Hyun Nam
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Tel: (202) 637-5600
Fax: (202) 637-5910
justin.bernick@hlc.com
dh.nam@hlc.com
***Attorneys for Defendant American Arbitration Association, Inc.***

**DICKINSON WRIGHT PLLC**

*<u>/s/ Joshua Grabel</u>*
Joshua Grabel
Eric Kessler
DICKINSON WRIGHT PLLC
1850 North Central Avenue
Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5046
jgrabel@dickinsonwright.com
Telephone: (602) 285-5072
bkessler@dickinsonwright.com
***Attorneys for Defendant American Arbitration Association, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 was served on November 9, 2026 on counsel of record for Plaintiffs via the ECF system:

**Benjamin Matthew Sheridan**: ben@kleinsheridan.com
**David Ali Chami**: Dchami@consumerjustice.com
**Jed R Nolan**: jed@kleinsheridan.com
**Susan Mary Rotkis**: srotkis@consumerjustice.com

Date: November 9, 2026 *_/s/ Joshua Grabel_*