JUSTIN BERNICK (Pro Hac Vice)
DOO HYUN NAM (Pro Hac Vice forthcoming)
**HOGAN LOVELLS CADWALADER US LLP**
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
justin.bernick@hlc.com
dh.nam@hlc.com

JOSH GRABEL (AZ State Bar No. 018373)
ERIC BRYCE KESSLER (AZ State Bar No. 032182)
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue
Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5046
jgrabel@dickinsonwright.com
bkessler@dickinsonwright.com

***Attorneys for Defendant American Arbitration Association, Inc.***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Stephanie Stephens; Joelle Nole; and William Hilton, *Individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>American Arbitration Association, Inc.,<br><br>Defendant. | Case No.: 2:25-CV-01650-PHX-JJT<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**(Oral Argument Requested)** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
BACKGROUND ..... 3
LEGAL STANDARD ..... 5
ARGUMENT ..... 5
I. PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM ..... 5
A. AAA Is Not a Party to Any Exclusive Dealing Agreement ..... 6
B. Plaintiffs Fail to Allege Substantial Market Foreclosure ..... 8
C. Plaintiffs Fail to Allege Antitrust Standing ..... 9
D. AAA's Commercial Speech Cannot Support an Antitrust Claim ..... 10
II. PLAINTIFFS' CLAIMS ARE BARRED BY ARBITRAL IMMUNITY ..... 11
A. Arbitral Immunity Extends to Arbitration Providers ..... 12
B. Arbitral Immunity Extends to Rules and Procedures ..... 12
III. PLAINTIFFS FAIL TO STATE A CONSUMER PROTECTION CLAIM ..... 14
A. Mr. Hilton Fails to State a WVCCPA Claim ..... 14
B. Ms. Nole Fails to State a WCPA Claim ..... 15
CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
4 F. Supp. 3d 1123 (D. Ariz. 2014), *aff'd*, 836 F.3d 1171 (9th Cir. 2016) ....6

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) ....2, 5, 6, 7

*Alberti v. Morgan Stanley*,
1998 WL 438667 (S.D.N.Y. July 31, 1998), *aff'd sub nom. Alberti v. Dean Witter Reynolds Inc.*, 205 F.3d 1321 (2d Cir. 2000) ....13

*Alexander v. Am. Arb. Ass'n*,
2001 WL 868823 (N.D. Cal. July 27, 2001) ....13

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
323 F.3d 366 (6th Cir. 2003) ....10

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*,
108 F.3d 1147 (9th Cir. 1997) ....2, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....5

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) ....9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....5

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ....9

*Cancer Ctr. Assocs. for Rsch. & Excellence, Inc. v. Phila. Ins. Cos.*,
2015 WL 2235347 (E.D. Cal. May 12, 2015) ....2, 11, 13

*Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) ....11

*Cherdak v. Am. Arb. Ass'n*,
443 F. Supp. 3d 134 (D.D.C. 2020) ....13

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021) ....2, 9

*CollegeNet, Inc. v. Common Application, Inc.*,
355 F. Supp. 3d 926 (D. Or. 2018) ....7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ....................3, 16

*Cort v. Am. Arb. Ass'n*,
795 F. Supp. 970 (N.D. Cal. 1992) ....................2, 12, 13

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
150 F.4th 1056 (9th Cir. 2025) ....................6, 7

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................15

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) ....................5

*Eastman v. Quest Diagnostics, Inc.*,
724 F. App'x 556 (9th Cir. 2018) ....................2, 8

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ....................5

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................5

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023)....................3, 15

*Greenberg v. Amazon.com, Inc.*,
553 P.3d 626 (Wash. 2024)....................15

*Hu v. Regal Sec., Inc.*,
2020 WL 5820997 (D. Nev. Sept. 30, 2020) ....................13

*Jones v. General Motors Corp.*,
640 F. Supp. 2d 1124 (D. Ariz. 2009) ....................1

*Medina v. Pitches Det. Ctr. S. Facility*,
2025 WL 3678431 (9th Cir. Dec. 18, 2025) ....................14

*Montes v. Sparc Grp., LLC*,
136 F.4th 1168 (9th Cir. 2025) ....................15

*In re National Arbitration Forum Trade Practices Litigation*,
704 F. Supp. 2d 832 (D. Minn. 2010)....................14

*Ne. Tel. Co. v. Am. Tel. and Tel. Co.*,
651 F.2d 76 (2d Cir. 1981)....................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
513 F.3d 1038 (9th Cir. 2008) ....................7

*Omega Env't, Inc. v. Gilbraco, Inc.*,
127 F.3d 1157 (9th Cir. 1997) ....................6, 9

*Owens v. Am. Arb. Ass'n*,
2015 WL 8483283 (D. Minn. Dec. 9, 2015)....................3, 12, 13, 14

*Sacks v. Dietrich*,
663 F.3d 1065 (9th Cir. 2011) ....................11

*Shields v. Fred Meyer Stores*,
741 F. Supp. 3d 915 (W.D. Wash. 2024)....................15

*Tele Atlas N.V. v. Navteq Corp.*,
397 F. Supp. 2d 1184 (N.D. Cal. 2005) ....................7

*United States v. Crawford*,
372 F.3d 1048 (9th Cir. 2004) ....................2

*Vogt v. Am. Arb. Ass'n*,
2019 WL 2618065 (W. Va. Cir. Ct. June 22, 2019) ....................3, 14

*Waysl, Inc. v. First Bos. Corp.*,
813 F.2d 1579 (9th Cir. 1987) ....................2, 6, 12

**Statutes**

Ariz. Rev. Stat. § 12-3014(A)....................11

W. Va. Code § 46A-6-102(7) ....................14

W. Va. Code § 46A-6-106 ....................3, 14, 15

W. Va. Code § 55-10-16(a)....................11

Wash. Rev. Code § 7.04A.140(1) ....................11

**Rules**

Fed. R. Civ. P. 11 ....................4, 5, 8

**INTRODUCTION**

Plaintiffs seek to impose antitrust and consumer protection liability on AAA for supposed exclusive forum designations in contracts between consumers and businesses, even though *AAA is not a party to those contracts*. Indeed, Plaintiffs' Second Amended Complaint ("SAC") concedes that the businesses—not AAA—"choose[] the forum language" in these contracts. SAC ¶ 306, ECF No. 51. Plaintiffs allege that the AAA "encourages" businesses to designate AAA as the exclusive arbitral forum merely by promoting its services on its website. *Id.* ¶¶ 245, 307. But as explained in AAA's motion for reconsideration of the Court's denial of its initial motion to dismiss, ECF No. 25, and as set forth below, there is no basis to hold AAA liable for contracts entered into between the plaintiffs and other businesses that are not before the Court. AAA's motion to dismiss the SAC should be granted.

Plaintiffs' First Amended Complaint ("FAC") alleged a predatory pricing theory that AAA violated the antitrust laws because its arbitrator compensation was too low. *See, e.g.*, FAC ¶ 18, ECF No. 11. Plaintiffs did not plead an exclusive dealing claim, and only restyled their claim as exclusive dealing in their opposition to AAA's initial motion to dismiss, depriving the Court of full briefing on the issue. The Court rejected the predatory pricing theory and correctly held that AAA's rules that allegedly "favor corporate entities" "demonstrate competitive behavior, not anticompetitive behavior" because they simply reflect a company competing to "increase market share" and "do not by themselves give rise to an antitrust claim." MTD Order at 5–6, ECF No. 23. The Court sustained an exclusive dealing claim based on allegations regarding AAA's online template arbitration clauses and certain third-party businesses' designation of AAA in their consumer contracts. *Id.*

The ruling's implications extend beyond this case. *Hundreds of millions* of customer contracts include arbitration provisions in the United States, and this is a *good* thing. Arbitration provides a fair and efficient way to manage customer disputes and is highly favored as a matter of public policy. *Jones v. General Motors Corp.,* 640 F. Supp. 2d 1124, 1133 (D. Ariz. 2009) (noting "liberal [] policy favoring arbitration" in Arizona (citation omitted)). Yet the Court's order would allow parties to challenge their arbitration clauses not

through an action against the *company they contracted with,* but rather through an antitrust or consumer protection claim against the *arbitral forum*—here, AAA—that had no control over, and often no advance knowledge of, the companies' decision to include a AAA-related arbitration clause in the first place.

The SAC should be dismissed for three independent reasons.

***First***, the SAC fails to state an exclusive dealing claim. In order to state a claim for exclusive dealing, a plaintiff must plead facts showing that the defendant entered into an exclusive agreement, but the SAC does not allege any such facts against AAA. *See, e.g., Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,* 836 F.3d 1171, 1183 (9th Cir. 2016) ("*Aerotec II").* Plaintiffs also fail to plead foreclosure of "a substantial share of the market." *Eastman v. Quest Diagnostics, Inc*., 724 F. App'x 556, 558–59 (9th Cir. 2018). While the Court relied on Plaintiffs' allegation of 63% foreclosure, MTD Order at 7 (citing FAC ¶ 235), AAA's pending sanctions motion explains that the 63% statistic has no evidentiary support—fewer than 10% of contracts in Plaintiffs' production designate AAA exclusively as the arbitration provider. ECF No. 62 at 1. More importantly, Plaintiffs now expressly *disclaim* that the 63% number is a "measurement[] of consumer accounts or nationwide market foreclosure."[1] Mot. to Modify Scheduling Order & for Leave to File Third Am. Compl. at 3, ECF No. 53. Plaintiffs also lack antitrust standing because their alleged injury does not flow from the challenged exclusive dealing. *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455–56 (9th Cir. 2021). Finally, imposing liability on AAA because of the promotional materials on its website raises serious First Amendment concerns. *See Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc*., 108 F.3d 1147, 1151–52 (9th Cir. 1997).

***Second***, Plaintiffs' claims are barred by arbitral immunity. Courts uniformly hold that arbitral immunity protects arbitration providers like AAA, and the rules and administrative processes related to the arbitration. *Cort v. Am. Arb. Ass'n*, 795 F. Supp. 970, 971 (N.D. Cal. 1992); *Cancer Ctr. Assocs. for Rsch. & Excellence, Inc. v. Phila. Ins. Cos*., 2015 WL

[1]The Court may consider Plaintiffs' concessions in their filings in this case as judicial admission. *See United States v. Crawford*, 372 F.3d 1048, 1055 (9th Cir. 2004).

2235347, at *1–3 (E.D. Cal. May 12, 2015). Courts have rejected the precise effort Plaintiffs make here to separate a provider's "administrative" functions from the arbitral process. *Owens v. Am. Arb. Ass'n*, 2015 WL 8483283, at *2 (D. Minn. Dec. 9, 2015).

***Third***, Plaintiffs' state consumer protection claims also fail. Mr. Hilton's West Virginia claim fails because, among other things, AAA is not a creditor. *See Vogt v. Am. Arb. Ass'n*, 2019 WL 2618065, at *5 (W. Va. Cir. Ct. June 22, 2019); W. Va. Code § 46A-6-106. Ms. Nole's unfairness claim under Washington law likewise fails because any alleged injury was reasonably avoidable. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858–59 (W.D. Wash. 2023). Her deception theory fares no better because AAA's statements are subjective assessments, not factual promises. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Nor can Ms. Nole establish causation as she used AAA because her contracts required it—not because of anything AAA said.

Because Plaintiffs have failed to state a claim across three complaints, the Court should dismiss the SAC with prejudice. Given the potential for significant disruption to customer arbitrations nationwide, AAA respectfully requests oral argument on this Motion.

**BACKGROUND**

AAA is a nonprofit provider of alternative dispute resolution services. SAC ¶¶ 6, 35. AAA publishes its arbitration rules and procedures for the general public, including for consumer arbitrations. *Id.* ¶¶ 37, 109, 144. The fee schedules that accompany the rules set forth various administrative fees (*e.g.,* filing, case management, and hearing fees), as well as arbitrator compensation, which is currently $300 per hour for consumer cases. *Id.* ¶¶ 144-145, 148-152.

Plaintiffs are three consumers who entered into contracts with credit reporting, banking, and credit card companies that designate AAA as the arbitration provider. *Id.* ¶¶ 352-353, 361, 372. AAA is not a party to any of those agreements; instead, the business "chooses the forum language." *Id.* ¶ 306.

Plaintiffs assert antitrust and consumer protection claims based on AAA's alleged "promotion and maintenance of exclusive forum designations." *Id.* ¶ 17. The SAC alleges that

AAA "encourage[s]" companies to designate AAA as the exclusive provider of arbitration services simply by publishing various resources on its website, including sample clauses and an AI clause-drafting tool. *Id.* ¶¶ 245, 307. While Plaintiffs' SAC contains numerous other allegations complaining about AAA's rules and procedures, and adds new allegations about AAA's finances—which Plaintiffs allege (incorrectly) favor businesses over consumers—the Court has appropriately concluded that such allegations "demonstrate competitive behavior, not anticompetitive behavior" because they simply reflect a company competing to "increase market share" and "do not by themselves give rise to an antitrust claim." MTD Order at 5–6.

Nevertheless, the Court denied AAA's motion to dismiss the FAC, sustaining an exclusive dealing theory (that Plaintiffs did not initially plead) based on the premise that "AAA heavily influences the corporate entities to include exclusivity provisions in their arbitration agreements." MTD Order at 7. The Court relied upon AAA's clause drafting tool to support the "heavily influences" theory. However, AAA filed a motion for sanctions against counsel for Plaintiffs under Rule 11 which, among other things, explained that neither of AAA's clause-drafting tools *generates consumer arbitration clauses.* ECF No. 62 at 10. Moreover, the Court only found the substantial foreclosure necessary to sustain Plaintiffs' exclusive dealing theory because Plaintiffs alleged that 63% of arbitration agreements contain "AAA-exclusive arbitration provisions." MTD Order at 7 (citing FAC ¶ 235). However, as also explained in AAA's motion for sanctions, Plaintiffs have no evidentiary basis for that alleged 63% statistic, SAC ¶¶ 233-239, because the materials Plaintiffs purportedly relied upon designate AAA as the sole arbitral forum in less than 10% of agreements, not 63%. ECF No. 62 at 1. Even more importantly, Plaintiffs have since conceded that the 63% number was never intended as "measurements of consumer accounts or nationwide market foreclosure." Pls.' Mot. to Modify Scheduling Order & for Leave to File Third Am. Compl. at 3.

AAA moved for reconsideration of the Court's order, ECF No. 25, and AAA incorporates by reference the arguments raised there into this Motion. Plaintiffs filed the SAC on October 8, 2026, which, among other changes, dismissed Eugenie Balogun as a plaintiff and her North Carolina claims. Plaintiffs have proposed further amendments to their

complaint on October 29, 2026, but those amendments do nothing to either address AAA's Rule 11 concerns or cure the pleading defects in the SAC. AAA now moves to dismiss the SAC in its entirety.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not accept as true "allegations that are merely, conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Supreme Court has also cautioned that non-meritorious antitrust claims should be "weeded out" at the pleading stage where the burdens of discovery can be massive. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 546 (2007) ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.").

## ARGUMENT

### I. Plaintiffs Fail to State an Antitrust Claim

Plaintiffs' monopolization claims under Section 2 of the Sherman Act (Count I) and analogous state laws (Counts II, III, IV, and VI) fail. Those state laws are interpreted pursuant to federal law. *See* SAC ¶ 12. "For [Section 2] liability to attach, a defendant must (1) possess monopoly power and (2) use that power to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Aerotec II*, 836 F.3d at 1183. To satisfy the second element, a plaintiff "must show that the defendant acquired or maintained its monopoly through anticompetitive conduct." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) (quotation marks and citation omitted). "Anticompetitive conduct consists of acts that tend to impair the opportunities of rivals and do not further competition on the merits or do so in an unnecessarily restrictive way." *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022) (citation modified). Plaintiffs' antitrust claims fail for at least four

independent reasons.[2] *First*, Plaintiffs fail to allege any exclusive dealing agreement involving AAA. *Second*, Plaintiffs fail to allege foreclosure. *Third*, Plaintiffs fail to plead antitrust standing. *Fourth*, Plaintiffs' reliance on AAA's commercial speech raises significant First Amendment concerns.

**A. AAA Is Not a Party to Any Exclusive Dealing Agreement**

Plaintiffs' antitrust case rests on an exclusive dealing claim. Exclusive contracts are not inherently unlawful because they "have recognized economic benefits and pro-competitive effects and generally pose little threat to competition." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 4 F. Supp. 3d 1123, 1135 (D. Ariz. 2014) ("*Aerotec I*") (quotation marks and citation omitted), *aff'd*, 836 F.3d 1171 (9th Cir. 2016); *see also Omega Env't, Inc. v. Gilbraco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) (same). To potentially rise to the level of anticompetitive conduct, exclusive dealing must involve *both* "an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor *and* foreclosed competition." *Aerotec II*, 836 F.3d at 1180 (quotation marks and citation omitted); *see also id.* ("The agreements [at issue] are the starting point for [the Court's] analysis. . . . . [Plaintiff] cannot sustain its burden by offering broad allegations and complaints that are unhinged from any specific agreement."); *see also CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1072–73 (9th Cir. 2025) ("The foundation of any exclusive dealing claim is an agreement to deal exclusively.") (quotation marks and citation omitted).

Antitrust claims against defendants who are not parties to an exclusive contract fail as a matter of law because "an exclusive dealing claim cannot succeed without evidence of exclusive dealing." *Aerotec II*, 836 F.3d at 1181. Plaintiffs have not cited, and AAA has not found, a single case in which any court has sustained an exclusive dealing claim against a defendant where the defendant was not a party to the agreement. In contrast, the cases

---

[2] As noted in the AAA's Motion to Dismiss papers, AAA denies that it possesses "monopoly power" in any market and disagrees that Plaintiffs adequately allege otherwise. MTD Order at 3–5.

sustaining exclusive dealing claims involve defendants who participated directly in an exclusive dealing arrangement.[3] The Court's prior conclusion that exclusive dealing liability may attach where a defendant supposedly "heavily influences" businesses to enter into exclusive agreements—even if plausibly alleged here—lacks support under the antitrust laws.

The SAC concedes that the exclusive forum designations on which Plaintiffs rely are in agreements between Plaintiffs and third-party businesses, and that the business "chooses the forum language in the underlying contract." SAC ¶ 306. This fact should end the analysis. *Aerotec II*, 836 F.3d at 1180–81; *CoStar*, 150 F.4th at 1072–73. Plaintiffs attempt to avoid this result by alleging that AAA "encourage[s]" exclusive AAA designations by, for example, offering sample arbitration clauses and an AI clause-drafting tool on its website. SAC ¶¶ 245, 307. But "encourag[ing]" a business to select one's services is the essence of competition, not exclusive dealing, and the SAC does not—and cannot—allege any agreement by which AAA *required* any business to designate AAA exclusively. No such agreement exists. Moreover, as explained in AAA's Motion for Sanctions, Plaintiffs lacked any evidentiary basis to allege that AAA even influenced businesses to designate AAA exclusively because the clause-drafting tools—which this Court relied upon in denying AAA's initial motion to dismiss—simply do not generate consumer clauses. *See* ECF No. 62 at 9–11.

Even if the "heavily influences" standard was the correct legal standard to evaluate exclusive dealing—and it is not—there are no facts alleged in the SAC showing that the arbitration provisions in the named Plaintiffs' contracts were influenced by the AAA at all, much less "heavily influenced." Plaintiffs allege no facts showing that Stephanie Stephens' agreement with CreditWorks was "influenced" by AAA, that William Hilton's agreements with First Electronic Bank and the Bank of Missouri were "influenced" by AAA, or that Joelle

[3] *See, e.g., CoStar Group,* 150 F.4th at 1072–73 (reversing dismissal of Section 2 exclusive dealing counterclaims related to Plaintiff's broker contracts); *Newcal Indus., Inc. v. Ikon Off. Sol.,* 513 F.3d 1038, 1051 (9th Cir. 2008); (reversing dismissal of Section 2 exclusive dealing claims in contracts entered into by Defendant); *CollegeNet, Inc. v. Common Application, Inc.,* 355 F. Supp. 3d 926, 951–53 (D. Or. 2018) (sustaining exclusive dealing claims related to contracts entered into by Defendant); *Tele Atlas N.V. v. Navteq Corp.,* 397 F. Supp. 2d 1184, 1188–90 (N.D. Cal. 2005) (same).

Nole's credit card agreement was "influenced" by the AAA. The SAC does not allege that those businesses used AAA's sample clauses or drafting tools, discussed their forum choices with AAA, or maintained an account or credit relationship with AAA. Plaintiffs' failure to allege facts showing that any of the agreements at issue in this case were "heavily influenced" by AAA requires dismissal, even under this incorrect legal standard.

Importantly, the Court's prior order acknowledges that without the alleged "heavy influence" by AAA (e.g., AAA's debunked AI clause-drafting tool), the other complained-of conduct—including AAA's "low pricing"—"demonstrate[s] competitive behavior, not anticompetitive behavior" and would not be enough to sustain Plaintiffs' antitrust claims. MTD Order at 5. AAA strongly agrees its policies and practices reflect competition on the merits, work in support of its nonprofit mission, and are not violative of any antitrust laws. Stripped of its false "exclusive dealing" gloss, AAA's conduct reflects nothing more than competition, which the antitrust laws *encourage*—not punish. Plaintiffs' complaint fails to consider controlling Ninth Circuit exclusive dealing precedent and relies upon a "heavily influenced" standard with no support in the law that threatens to upend consumer arbitrations nationwide. Plaintiffs' antitrust claims should be dismissed.

### B. Plaintiffs Fail to Allege Substantial Market Foreclosure

Plaintiffs' antitrust claims also fail because they do not plausibly allege substantial market foreclosure. They must "plead facts sufficient to support the inference that the exclusive dealing arrangements have some appreciable impact on the market." *Eastman*, 724 F. App'x at 558–59 (affirming dismissal where plaintiffs "failed to plausibly demonstrate foreclosure of a substantial share of the market" resulting from the challenged conduct). The Court previously accepted Plaintiffs' contract survey as data "going to the number of arbitration agreements containing AAA-exclusive arbitration provisions in substantial, representative consumer market segments." MTD Order at 7. Plaintiffs have since abandoned that premise and now represent that their figures were never intended as "measurements of consumer accounts or nationwide market foreclosure." Mot. to Modify Scheduling Order & for Leave to File Third Am. Compl. at 3. Moreover, as explained in AAA's Rule 11 motion,

Plaintiffs have no evidentiary basis for the 63% statistic, and the data they produced that they supposedly relied upon to calculate that statistic in fact reveals that less than 10% of the contracts designate AAA as the exclusive arbitral forum, below any plausible level necessary to support an inference of foreclosure across the alleged relevant market. ECF No. 62 at 6–7. The figure also fails to account for alternatives, including opt-out rights and the fact that the AAA Consumer Arbitration Rules permit consumers to proceed in small-claims court where possible. *See id.* at 7–8 & n.6; *Omega Env't*, 127 F.3d at 1163 (rejecting an "exclusive" dealing claim where competitors had alternative ways to reach customers).

**C. Plaintiffs Fail to Allege Antitrust Standing**

Plaintiffs' antitrust claims independently fail for lack of antitrust standing, which is distinct from the Article III requirements addressed in the Court's prior order. MTD Order at 8–10. The Ninth Circuit evaluates antitrust standing under five factors: (1) whether the plaintiff has suffered an "antitrust injury"; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity of apportioning damages. *City of Oakland*, 20 F.4th at 455–56. Here, Plaintiffs fail to plausibly allege antitrust injury and their asserted harm is speculative.

Antitrust injury must "flow[] from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) ("*ARCO*") (antitrust injury must be attributable to "an anticompetitive aspect of the practice under scrutiny"). To show antitrust injury, the Ninth Circuit accordingly requires "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *City of Oakland*, 20 F.4th at 456. Plaintiffs must therefore connect their own injury to the alleged restraint on competition—not merely to dissatisfaction with AAA's services.

Plaintiffs cannot do so here. Plaintiffs' exclusive dealing theory rests on forum designations in contracts between consumers and non-party businesses—not AAA. SAC ¶ 306. Yet, Plaintiffs' injury apparently arose not from those forum designations, but from

"arbitration results in the AAA [that] favor corporate entities and disfavor consumers," as purportedly shown by differing consumer success rates in AAA and JAMS arbitrations. MTD Order at 7–10. The practices allegedly responsible for those results—AAA's allegedly low arbitrator compensation, biased arbitrator roster, and business-friendly rules—are the very practices the Court concluded "demonstrate competitive behavior, not anticompetitive behavior." *Id.* at 5–6. Thus, harm allegedly caused by those *competitive* practices cannot show antitrust injury flowing from *anticompetitive* conduct.

Plaintiffs' asserted harm is also speculative. They disclaim any challenge to AAA's handling of their own arbitrations, SAC ¶ 8, and allege no facts showing that any Plaintiff would have obtained a better outcome before JAMS or another provider. Aggregate post-hearing success rates across thousands of unrelated disputes do not establish that any *particular* Plaintiff lost money because another arbitration provider was unavailable. Differences in those rates may instead reflect the merits of the claims or some businesses' tendency to settle weaker cases before hearing.

### D. AAA's Commercial Speech Cannot Support an Antitrust Claim

Because AAA is not a party to any exclusive agreement, Plaintiffs' antitrust claims depend on AAA's commercial speech—the sample (non-consumer) clauses, drafting tools, and promotional materials that AAA posts on its website, which Plaintiffs allege encourage businesses to designate AAA. SAC ¶¶ 245, 307, 315. But treating that commercial speech as the lynchpin of an antitrust violation brings Plaintiffs' theory into direct conflict with the First Amendment.

"An antitrust claim premised primarily on advertising or speech must overcome a presumption that such advertising or speech had a *de minimis* effect on competition." *See, e.g., Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 370 (6th Cir. 2003); *see also Am. Pro. Testing Serv.*, 108 F.3d at 1152 ("To prove that [Defendant's] false and misleading advertising constituted exclusionary conduct, the disparagement must overcome a presumption that the effect on competition of the fliers was de minimis." (citation omitted)). The SAC alleges no facts overcoming that

presumption. Nor does alleged monopoly status alone eliminate First Amendment protection: a "monopolist is not forbidden to publicize its product unless the extent of this activity is so unwarranted by competitive exigencies as to constitute an entry barrier." *Ne. Tel. Co. v. Am. Tel. and Tel. Co.*, 651 F.2d 76, 93 (2d Cir. 1981) (citation omitted).

Further, Plaintiffs' theory has no limiting principle. To avoid running afoul of the First Amendment, restrictions on the commercial speech of even an alleged monopolist must be no more "extensive than is necessary" to protect a substantial government interest. *See Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). Taken to its logical conclusion, Plaintiffs' theory would require that AAA refrain from posting any arbitration materials on its website—including its consumer arbitration rules and other sample arbitration clauses—to avoid antitrust liability, because doing so might have the effect of "encourag[ing]" third parties drafting arbitration contracts to select AAA. SAC ¶ 307. This restriction on speech—and on competition—is untethered to any substantial government interest and is significantly overbroad, especially considering that other arbitration providers engage in the exact same commercial speech.

## II. Plaintiffs' Claims Are Barred by Arbitral Immunity

State legislatures, including each of the states in which Plaintiffs reside (Arizona, Washington, and West Virginia), adopted statutes conferring broad immunity on both arbitrators and arbitration providers like AAA. *See* Ariz. Rev. Stat. § 12-3014(A) ("An arbitrator *or an arbitration organization* acting in that capacity is immune from civil liability to the same extent as a judge of a court of this state acting in a judicial capacity.") (emphasis added); Wash. Rev. Code § 7.04A.140(1) (same); W. Va. Code § 55-10-16(a) (same). Under these statutes, arbitral immunity insulates *both* individual arbitrators and arbitration providers from liability for actions related to the arbitration process. *See, e.g.*, *Sacks v. Dietrich*, 663 F.3d 1065, 1069–70 (9th Cir. 2011). It also immunizes the rules and administrative procedures that enable arbitration to proceed. *See, e.g.*, *Cancer Ctr. Assocs.*, 2015 WL 2235347, at *1–3.

The SAC attempts to plead around these authorities by disclaiming any claim for "the conduct of the AAA in the handling or mishandling of any arbitration," SAC ¶ 8, and by

recasting its challenge as one to AAA's "institutional commercial conduct," *id.* ¶ 351. But labels do not control. The conduct Plaintiffs attack—AAA's rules, its arbitrator compensation, its arbitrator-selection procedures, and the disclosures it provides to parties at filing and appointment—is by definition the administration of arbitration. Limiting immunity as Plaintiffs propose would kneecap arbitral immunity by opening arbitration providers up to "reprisals by dissatisfied litigants" in federal courts for any perceived wrong in an arbitration against the arbitration provider, which would defeat the very purpose of arbitration. *Waysl, Inc. v. First Bos. Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987).

**A. Arbitral Immunity Extends to Arbitration Providers**

This Court previously held that "arbitral immunity does not apply to Plaintiffs' claims" because the conduct is "distinct from that of the individual decision maker in an individual arbitration." MTD Order at 8. AAA respectfully submits that this conclusion is one courts have rejected as "a false distinction and one that has no support in the caselaw." *Owens*, 2015 WL 8483283, at *2. It is black letter law that arbitral immunity applies to both individual arbitrators and arbitration providers. *See, e.g.*, *Cort*, 795 F. Supp. at 971 ("It has been uniformly accepted that such immunity extends to arbitration associations such as the AAA as well." (citation omitted)). Indeed, "[e]xtension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusory. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring organization." *Id.* at 972 (citation omitted).

**B. Arbitral Immunity Extends to Rules and Procedures**

The Court also previously declined to apply arbitral immunity because Plaintiffs seek relief "related to lack of choice of the arbitral forum." MTD Order at 8. But AAA respectfully submits that the requested relief would necessarily reach conduct protected by arbitral immunity. Plaintiffs themselves identify AAA's rules and policies—including its Consumer Arbitration Rules, arbitrator compensation, and arbitrator-selection procedures—as

mechanisms through which AAA allegedly encourages exclusive forum designations. Put simply, Plaintiffs challenge the very rules and procedures that arbitral immunity protects.

As multiple courts in the Ninth Circuit have held, the rules that govern consumer arbitrations—including the compensation and selection of arbitrators—are *directly* tied to the decisional process and are clearly within the scope of arbitral immunity. *See, e.g.*, *Cancer Ctr. Assocs.*, 2015 WL 2235347, at *1–3 (noting that arbitral immunity extends to "instances where the organization has engaged in tasks such as selecting an arbitrator, scheduling a hearing, giving notice of a hearing, and billing for services." (quotation marks and citation omitted)); *Cort*, 795 F. Supp. at 972 (dismissing claims against AAA because immunity extends to "activities in choosing arbitrators"); *Alexander v. Am. Arb. Ass'n*, 2001 WL 868823, at *4 (N.D. Cal. July 27, 2001) (dismissing claims because "immunity protects any violations made by the AAA of its own internal rules."). This immunity also extends to arbitration-related materials posted on AAA's website. *See Cherdak v. Am. Arb. Ass'n*, 443 F. Supp. 3d 134, 157–59 (D.D.C. 2020) (rejecting an attempt to recast a challenge to AAA's review of arbitration clauses for due process compliance as a false-advertising claim).

Plaintiffs' allegations concerning drawdown accounts and investment returns do not take the AAA's conduct outside the arbitral process. SAC ¶¶ 273-308. Arbitral immunity "protects all acts within the scope of the arbitral process"; the exception concerns "bias and corruption" so pervasive that the forum's actions cannot "fairly be said" to fall within that process. *Owens*, 2015 WL 8483283, at *2. Generalized allegations of institutional incentives and adverse outcomes do not establish improper motive as to an arbitration provider. *See Hu v. Regal Sec., Inc.*, 2020 WL 5820997, at *8–9 (D. Nev. Sept. 30, 2020) (rejecting FINRA's alleged bias toward the securities industry that funded and repeatedly used the forum); *Alberti v. Morgan Stanley*, 1998 WL 438667, at *6 (S.D.N.Y. July 31, 1998), *aff'd sub nom. Alberti v. Dean Witter Reynolds Inc.*, 205 F.3d 1321 (2d Cir. 2000) (rejecting the New York Stock Exchange's alleged bias toward Morgan Stanley because of the size, volume and stature of its dealings on the Exchange and explaining that "allegations of bias must be specific; the appearance of bias is insufficient[.]").

The SAC's reliance on *In re National Arbitration Forum Trade Practices Litigation*, 704 F. Supp. 2d 832 (D. Minn. 2010) ("*NAF*") is also misplaced. *See* SAC ¶¶ 345-346. The same court that decided *NAF* later confined it to its unusual facts. As *Owens* explained, the *NAF* plaintiffs alleged that the proceedings "were not arbitrations at all" because NAF "would regularly defer to credit-card companies as to the appropriate decision in a given case, rather than having arbitrators make that decision." *Owens*, 2015 WL 8483283, at *2. Plaintiffs allege nothing comparable. They do not allege that the AAA dictated outcomes or conducted sham arbitrations. It is unsurprising that Plaintiffs expressly disclaim that "AAA's conduct is the National Arbitration Forum's." SAC ¶ 346. Their institutional-incentive allegations therefore do not bring this case within the narrow exception to arbitral immunity.

## III. Plaintiffs Fail to State a Consumer Protection Claim

Mr. Hilton's claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA") (Count V) and Ms. Nole's claim under the Washington Consumer Protection Act ("WCPA") (Count VII) fail under each statute's express requirements.

### A. Mr. Hilton Fails to State a WVCCPA Claim

Mr. Hilton's WVCCPA claim fails because the challenged conduct falls within none of the statute's prescribed categories. *See* W. Va. Code § 46A-6-102(7). The WVCCPA requires a creditor to induce a consumer to enter a consumer credit sale, loan, or lease. *Vogt*, 2019 WL 2618065, at *5. Mr. Hilton alleges neither that AAA is a creditor nor that it induced or participated in his agreements with First Electronic Bank or The Bank of Missouri—agreements where he could have opted out of the respective bank's arbitration provisions. *See* SAC ¶¶ 358-361, 473; ECF No. 56-4 at 59 (Ex. 109) (First Electronic Bank providing "[y]ou may reject this [arbitration] provision, in which case only a court may be used to resolve any dispute or claim."); *id.* at 71 (The Bank of Missouri providing the same).[4] Nor does he allege compliance with the pre-suit written-notice and opportunity-to-cure requirements of W. Va.

[4]The Court may consider Mr. Hilton's agreements with First Electronic Bank and The Bank of Missouri for motion to dismiss because Plaintiffs incorporate them by reference. *See Medina v. Pitches Det. Ctr. S. Facility*, 2025 WL 3678431, at *2 (9th Cir. Dec. 18, 2025).

Code § 46A-6-106. He alleges only that he seeks relief "upon satisfaction of § 46A-6-106," not that he gave the required notice. SAC ¶ 484.

**B. Ms. Nole Fails to State a WCPA Claim**

Ms. Nole's WCPA claim also fails. The statute requires "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to [a person's] business or property; and (5) causation." *Montes v. Sparc Grp., LLC*, 136 F.4th 1168, 1170 n.3 (9th Cir. 2025) (citing *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 637 (Wash. 2024)). Ms. Nole fails to plausibly allege both an unfair or deceptive practice and causation.

First, the SAC does not plausibly allege unfairness. A practice is unfair if it causes or is likely to cause substantial consumer injury that is neither reasonably avoidable nor outweighed by countervailing benefits to consumers or competition. *Greenberg*, 553 P.3d at 641; *see also Shields v. Fred Meyer Stores*, 741 F. Supp. 3d 915, 930–31 (W.D. Wash. 2024) (citing *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013)). Injury is reasonably avoidable when consumers can anticipate and avoid or knowingly and reasonably mitigate it afterward. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012) (quotations and citation omitted). Applying that principle, *Gray v. Amazon.com, Inc.* dismissed a WCPA claim because consumers could anticipate and avoid the alleged injury by reviewing the applicable terms before entering the agreement. 653 F. Supp. 3d 847, 859 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454, at *1 (9th Cir. May 16, 2024).

AAA's consumer arbitration rules and its consumer arbitration fee schedule are publicly available, and Ms. Nole voluntarily entered a contract incorporating them. The Court previously rejected reasonable avoidability because Plaintiffs alleged "a lack of choice in arbitral forum and adhesion contracts presented on a take-it-or-leave-it basis." MTD Order at 11. But *Gray* likewise involved standardized consumer terms and held the injury reasonably avoidable because consumers could review those terms before agreeing. 653 F. Supp. 3d at 859. The SAC alleges no facts distinguishing Ms. Nole's circumstances on that ground.

Second, the SAC identifies no actionable deceptive statement. The Court previously found a tension between AAA's promotion of a "fundamentally fair process" and allegations of biased arbitrators and lower consumer success rates than at JAMS. MTD Order at 10–11. But differing success rates, even if accepted as true, do not establish that AAA's statements about procedural fairness are deceptive. A lower consumer success rate could reflect differences in the merits of the claims; conversely, a process would not be fair merely because it awarded consumers and businesses equal shares of victories. Neither Plaintiffs nor the Court identifies a success rate that would make AAA's fairness statements true or false. More fundamentally, those statements express AAA's subjective assessment of its services, not the "detailed or specific factual assertions that are necessary" to support an actionable misrepresentation. *See Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246.

Ms. Nole's deception theory independently fails for lack of causation. She does not allege that she saw, read, or relied on AAA's fairness statements. Instead, she alleges that she filed with AAA because her contracts required it—not because of any alleged deception. SAC ¶¶ 361, 372–373, 503.

## CONCLUSION

AAA respectfully requests dismissal of all claims with prejudice. The Court's prior order sustained claims based on AAA's website materials despite the fact that AAA is not a party to the alleged exclusive dealing agreements. Plaintiffs' pleading failures previously prevented full briefing on exclusive dealing and the First Amendment, and the Court's arbitral immunity and consumer protection rulings conflict with controlling law. AAA requests oral argument on this Motion given the ruling's potential impact on AAA and hundreds of millions of arbitration contracts.

RESPECTFULLY SUBMITTED this 12th day of November, 2026.

**HOGAN LOVELLS CADWALADER US LLP**

Justin W. Bernick
Doo Hyun Nam
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, N.W.

Washington, DC 20004-1109
Tel: (202) 637-5600
Fax: (202) 637-5910
justin.bernick@hlc.com
dh.nam@hlc.com
***Attorneys for Defendant American Arbitration Association, Inc.***

**DICKINSON WRIGHT PLLC**

*/s/ Joshua Grabel*
Joshua Grabel
Eric Kessler
DICKINSON WRIGHT PLLC
1850 North Central Avenue
Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5046
jgrabel@dickinsonwright.com
Telephone: (602) 285-5072
bkessler@dickinsonwright.com
***Attorneys for Defendant American Arbitration Association, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT was served on November 12, 2026 on counsel of record for Plaintiffs via the ECF system:

**Benjamin Matthew Sheridan**: ben@kleinsheridan.com
**David Ali Chami**: Dchami@consumerjustice.com
**Jed R Nolan**: jed@kleinsheridan.com
**Susan Mary Rotkis**: srotkis@consumerjustice.com

Date: November 12, 2026 *_/s/ Joshua Grabel_*